UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RANDOLPH L. MOORE,

     Petitioner,

     v.

WILLIAM GITTERE, et al.,

     Respondents.

Case No. 2:13-cv-00655-JCM-DJA

ORDER

I.     SUMMARY

This action is a petition for writ of habeas corpus under 28 U.S.C. § 2254 by Randolph L. Moore, a Nevada prisoner sentenced to death. The case is fully briefed and before the Court for adjudication of the merits of the claims remaining in Moore's second amended habeas petition. The Court will deny Moore's petition. The Court will grant Moore a certificate of appealability regarding certain of his claims.[1]

II.    BACKGROUND

In October 1985, a jury in Nevada's Eighth Judicial District Court (Clark County) found Moore guilty of several felonies, including two counts of first-degree murder with use of a deadly weapon, involving the murders of his friend Dale Flanagan's grandparents, Carl and Colleen Gordon. ECF No. 16-1 at 25–33. The Gordons were found dead on November 6, 1984. Carl, fifty-eight years old, had been shot seven times in the back and chest, and Colleen, fifty-seven years old, had been shot three times in

---

[1] The length and complexity of this order does not necessarily reflect the strength of any of Moore's claims; rather, it reflects the procedural history of this case and the number of claims Moore asserts. Depending on how the subclaims are counted, Moore asserts approximately 175 distinct claims that must be separately considered with respect to their procedural history and/or merits.

the head. *See Flanagan v. State* (*Flanagan I*), 104 Nev. 105, 107, 754 P.2d 836, 837 (1988); *Moore v. State*, 104 Nev. 113, 114, 754 P.2d 841, 841 (1988) ("The underlying facts of this case have been adequately set forth in our opinion in [*Flanagan I*]."). The State's theory was that Moore, Flanagan and four others went to the Gordons' residence and killed them so that Flanagan could obtain insurance proceeds and inheritance. *See Flanagan I*, 104 Nev. at 107, 754 P.2d at 837. Moore and Flanagan were sentenced to death. *See* ECF No. 88-17.

Moore and Flanagan appealed (ECF No. 16-2 (Moore's opening brief)),[2] and on May 18, 1988, the Nevada Supreme Court affirmed their convictions, but reversed their death sentences on account of prosecutorial misconduct and remanded for a new penalty hearing. *Flanagan I*, 104 Nev. 105, 754 P.2d 836 (1988); *Moore*, 104 Nev. 113, 754 P.2d 841 (1988).

The second penalty hearing resulted in reimposition of the death sentences. *See* ECF No. 16-3 at 34, 36–38. Moore and Flanagan again appealed (ECF No. 16-4 (Moore's opening brief)),[3] and on April 30, 1991, the Nevada Supreme Court affirmed. *Flanagan v State* (*Flanagan II*), 107 Nev. 243, 810 P.2d 759 (1991).[4]

On March 23, 1992, the United States Supreme Court granted certiorari, vacated Moore's and Flanagan's judgments of conviction, and remanded to the Nevada Supreme Court for reconsideration in light of *Dawson v. Delaware*, 503 U.S. 159 (1992) (holding that admission of a defendant's beliefs and associations at sentencing violates the First Amendment, where it has no relevance to sentencing). *Moore v. Nevada*, 503 U.S. 930 (1992); *Flanagan v. Nevada*, 503 U.S. 931 (1992). On remand, the Nevada Supreme Court ruled unconstitutional the admission of evidence regarding Moore's and Flanagan's

---

[2] Moore's opening brief on this appeal is referred to as his "1987 brief." This appeal is referred to as Moore's "first direct appeal."

[3] Moore's opening brief on this appeal is referred to as his "1990 brief." This appeal is referred to as the "direct appeal following the second penalty hearing."

[4] On July 3, 1991, Moore filed a post-conviction petition for writ of habeas corpus in the state district court. ECF No. 16-6 at 2–8. That petition was never finally ruled upon, however, because while it was pending the United States Supreme Court vacated Moore's judgment of conviction.

evident beliefs in the occult and participation in a "coven," and remanded the case to the state district court for a third penalty hearing. *Flanagan v. State* (*Flanagan III*), 109 Nev. 50, 846 P.2d 1053 (1993).

In May 1995, Moore and Flanagan filed petitions for a writ of habeas corpus and related motions, requesting a new guilt-phase trial and seeking to preclude imposition of the death penalty. *See* ECF No. 94-8; *see also* ECF Nos. 16-9, 93-38, 94-7, 94-20.[5] The state district court denied those petitions and motions, and the Nevada Supreme Court denied a petition for writ of mandamus. *See* ECF Nos. 16-9, 94-20. Moore filed a notice of appeal. ECF No. 16-9 at 35–36. However, the state district court ruled that the notice of appeal violated state law. ECF No. 95-6.

The third penalty hearing was held in June 1995; Moore and Flanagan were again sentenced to death. *See* ECF No.16-9 at 27–28. Moore's new judgment of conviction was entered on July 11, 1995. ECF No. 16-9 at 30–33.

Moore and Flanagan appealed. ECF No. 16-10 (Moore's opening brief).[6] The Nevada Supreme Court affirmed on December 20, 1996. *Flanagan v. State* (*Flanagan IV*), 112 Nev. 1409, 930 P.2d 691 (1996). The United States Supreme Court denied certiorari on April 20, 1998. *Moore v. Nevada*, 523 U.S. 1083 (1998). The Nevada Supreme Court's remittitur was issued on May 22, 1998. ECF No. 16-12 at 2.

On June 2, 1998, Moore filed a post-conviction petition for writ of habeas corpus in the state district court. ECF No. 16-12 at 4–13.[7] Moore filed a supplemental petition, with counsel, on May 2, 2003. ECF Nos. 16-13, 16-14, 16-15. On January 23, 2006, the state district court granted Moore relief from the death penalty under *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004) (holding it impermissible to base aggravating circumstances on felonies on which felony murder theory predicated). ECF No. 104-16.

---

[5] Those proceedings are referred to as "1995 pre-penalty-phase habeas petition and motions."

[6] Moore's opening brief on this appeal is referred to as his "1995 brief." This appeal is referred to as the "direct appeal following the third penalty hearing."

[7] This post-conviction proceeding is referred to as Moore's "first state habeas action."

1
2
3
4
5
6
7
8
9
10
11
12

The state district court filed separate orders denying Moore relief on other claims. ECF Nos. 104-6, 105-1. Moore appealed and the State cross-appealed. ECF Nos. 17-1, 17-2, 17-3 (Moore's opening brief).[8] Moore filed a supplemental brief on February 8, 2007. ECF No. 17-4 at 117–25.[9] On April 23, 2008, the Nevada Supreme Court reversed the grant of penalty-phase relief and remanded for the state district court to determine whether the jury's consideration of erroneous aggravating circumstances was harmless beyond a reasonable doubt. ECF No. 17-7 at 2–23.[10] On remand, after supplemental briefing (ECF Nos. 17-7 at 45–50; 17-8 at 2–25), the state district court filed an order on January 15, 2010, denying Moore's petition. ECF No.17-13 at 2–13. Moore appealed. ECF No. 2-4 (Moore's opening brief).[11] The Nevada Supreme Court affirmed on August 1, 2012. ECF No. 18 at 2–21. The Nevada Supreme Court denied motions for rehearing and limited remand on September 19, 2012. ECF No. 18 at 36–38.

13
14
15
16
17
18

Moore then initiated this federal habeas corpus action by filing a *pro se* petition for writ of habeas corpus on April 18, 2013. ECF No. 1. After the Court appointed counsel (ECF No. 6), Moore filed an amended habeas petition on August 7, 2013. ECF No. 15. Shortly thereafter, Moore filed a motion for a stay, to allow him to further exhaust claims in state court. ECF No. 23. The Court granted that motion, and this action was stayed on November 21, 2013. ECF No. 31.

19
20
21

Moore initiated a second post-conviction habeas corpus action in the state district court on September 19, 2013.[12] ECF No. 60-2. The state district court denied the petition as procedurally barred on August 27, 2014. ECF No. 112-4. Moore appealed. ECF No.

22
23
24
25
26
27
28

[8] Moore's opening brief on this appeal is referred to as his "2006 brief." This appeal is referred to as Moore's "first appeal in his first state habeas action."
[9] This brief is referred to as Moore's "2007 Supplemental Brief."
[10] The United States Supreme Court denied certiorari on October 6, 2008. *Moore v. Nevada*, 555 U.S. 912 (2008).
[11] Moore's opening brief on this appeal is referred to as his "2010 brief." This appeal is referred to as Moore's "second appeal in his first state habeas action."
[12] This post-conviction proceeding is referred to as Moore's "second state habeas action."

60-1 (Moore's opening brief).[13] The Nevada Supreme Court affirmed on May 17, 2018. *Moore v. State*, 134 Nev. 262, 417 P.3d 356 (2018). The United States Supreme Court denied Moore's petition for a writ of certiorari. *Moore v. Nevada,* 139 S.Ct. 603 (2018).

Moore then filed a motion to vacate the stay of this action. ECF No. 48. The Court granted that motion and lifted the stay on February 5, 2019. ECF No. 51. Moore filed a second amended habeas petition—his operative petition—on July 15, 2019. ECF No. 59. Moore's second amended petition asserts the following claims of violations of his federal constitutional rights:[14]

Claim 1: Counsel was ineffective during Moore's penalty phase.

Claim 2: Trial counsel was ineffective during the guilt phase.

Claim 3: The trial court should have severed the trial.

Claim 4: The trial court allowed inadmissible coconspirator statements.

Claim 5: The trial court prevented Moore from confronting Johnny Ray Luckett.

Claim 6: The State suppressed exculpatory evidence and impeachment evidence related to Angela Saldana.

Claim 7: Prosecutorial misconduct: witness payments.

Claim 8: Prosecutorial misconduct: witness intimidation.

Claim 9: Prosecutorial misconduct: arguments.

Claim 10: Prosecutorial misconduct: Fifth Amendment.

Claim 11: Prosecutorial misconduct and trial error: co-defendant sentences.

Claim 12: Prosecutorial misconduct: intentional, severe, and pervasive.

Claim 13: The court improperly admitted irrelevant evidence that Moore practiced Satanism and was in a gang.

Claim 14: The third penalty phase court lacked jurisdiction.

---

[13] Moore's opening brief on this appeal is referred to as his "2015 brief." This appeal is referred to as Moore's "appeal in his second state habeas action."

[14] The claims are characterized here as in the table of contents of Moore's second amended petition. Most of these claims have multiple distinct subparts, which are identified and addressed in the discussions of the claims, *infra*.

Claim 15: A juror who did not adequately understand English sat on Moore's jury.

Claim 16: The trial court improperly inquired into penalty jurors' religious beliefs.

Claim 17: The trial court erroneously informed potential jurors that they must "equally consider" the death penalty along with other available sentences.

Claim 18: The trial court failed to conduct sufficient inquiry into juror misconduct during the penalty phase.

Claim 19: The trial court and Moore's trial counsel failed to remove a biased juror from Moore's penalty trial.

Claim 20: Moore's trial counsel failed to properly rehabilitate a juror.

Claim 21: Moore lacked notice of aggravators.

Claim 22: The great risk of death aggravator is invalid.

Claim 23: Reweighing aggravators was improper.

Claim 24: The *Kazalyn* instruction was unconstitutional.

Claim 25: Jury instructions: commutation instruction.

Claim 26: Jury instructions: anti-sympathy instruction.

Claim 27: Jury instructions: outweighing instruction.

Claim 28: Jury instructions: weighing equation.

Claim 29: Jury instructions: reasonable doubt.

Claim 30: Jury instructions: implied malice.

Claim 31: Jury instructions: equal and exact justice.

Claim 32: Jury instructions: guilt or innocence of another person instruction.

Claim 33: Jury instructions: prior consistent statements and limiting instructions.

Claim 34: Jury instructions: aiding and abetting.

Claim 35: Ineffective assistance of counsel: direct appeal.

Claim 36: Lethal injection violates the constitution.

Claim 37: Elected judges and fair appellate review.

Claim 38: Gruesome photographs.

Claim 39: Moore was not tried by an impartial tribunal.

Claim 40: Trial counsel and the trial court failed to ensure Moore was tried in a fair venue.

Claim 41: Absence during critical stages and unrecorded bench conferences.

Claim 42: Black jurors were systematically excluded from Moore's jury.

Claim 43: Death penalty is cruel and unusual.

Claim 44: Nevada's clemency scheme is unconstitutional.

Claim 45: Death penalty is arbitrary and capricious.

Claim 46: The multiplicity of proceedings and time elapsed have deprived Moore of the opportunity for a fair trial and constitutes cruel and unusual punishment.

Claim 47: Cumulative error.

Claim 48: Robbery could not support felony murder in this case.

Claim 49: Penalty phase counsel suffered from a conflict of interest.

Claim 50: The State failed to provide adequate notice of its theories of first-degree murder.

Claim 51: Jury instructions: conspiracy.

Claim 52: Court required objections to be off the record.

Claim 53: The pecuniary gain aggravating circumstance is unconstitutional in this case.

ECF No. 59.

Respondents filed a motion to dismiss. ECF No. 71. The Court granted the motion to dismiss in part and denied it in part. ECF No. 139. the Court dismissed the following claims, as barred by the statute of limitations: the claim in Claim 2 that trial counsel was ineffective for failing to object to the State's failure to provide adequate notice of its theories of first-degree murder (that being the claim of ineffective assistance of trial counsel relative to Claim 50); the claim in Claim 2 that trial counsel was ineffective for failing to request an instruction on after-thought robbery (that being the claim of ineffective assistance of trial counsel relative to Claim 48); and Claims 48, 50 and 52. In all other respects, the Court denied the motion to dismiss. The order was without prejudice to Respondents asserting in their answer the defenses of procedural default,

1 | ripeness, and/or cognizability, and the statute of limitations defense in response to

2 | Claims 27 and 53. Moore filed a motion for reconsideration (ECF No. 140), and the Court

3 | denied that motion on April 12, 2021. ECF No. 143.

4 |     Respondents filed an answer on September 8, 2022. ECF No. 158. Moore filed a

5 | reply on May 19, 2023. ECF No. 166. Respondents filed a response to the reply on

6 | October 24, 2023. ECF No. 180.

7 |     Along with his reply, on May 19, 2023, Moore filed a motion for leave to conduct

8 | discovery and a motion for an evidentiary hearing. ECF Nos. 168, 170. Those motions

9 | are fully briefed. *See* ECF Nos. 177, 178, 182, 183.

10 | III.    DISCUSSION

11 |     A.    Standard of Review for Claims Adjudicated in State Court

12 |     28 U.S.C. § 2254(d) sets forth the standard of review under the Antiterrorism and

13 | Effective Death Penalty Act (AEDPA), which is generally applicable to habeas claims

14 | adjudicated on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

22 | 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme

23 | Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies

24 | a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the

25 | state court confronts a set of facts that are materially indistinguishable from a decision of

26 | [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

27 | Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v.*

28 | *Taylor*, 529 U.S. 362, 405–06 (2000)) (internal quotation marks omitted). A state court

decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 75 (quoting *Williams*, 529 U.S. at 413) (internal quotation marks omitted). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409). The analysis under section 2254(d) looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (AEDPA standard is "a difficult to meet … and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)) (internal quotation marks omitted)).

B.    Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the following statute of limitations applies to federal habeas corpus petitions:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A–D).

The petitioner is entitled to statutory tolling of the AEDPA limitations period while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The AEDPA statute of limitations is also subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

In this case, the AEDPA statute of limitations began to run when the United States Supreme Court denied Moore's petition for writ of certiorari on April 20, 1998. *See Moore v. Nevada*, 523 U.S. 1083 (1998); 28 U.S.C. §244(d)(1)(A). The statute was tolled, under 28 U.S.C. § 2244(d)(2), from June 2, 1998, to October 15, 2012, while Moore's first state habeas action was pending. *See* ECF No. 16-12; 113-3. 43 days ran against the limitations period from April 20, 1998, to June 2, 1998, and the remaining 322 days of the limitations period began running on October 15, 2012, and ran out on September 2, 2013. This means that Moore's original *pro se* petition in this action, filed April 18, 2013 (ECF No. 1) and his first amended habeas petition, filed August 7, 2013 (ECF No. 15) were timely filed, but that his second amended habeas petition, filed July 15, 2019 (ECF No. 59) was filed long after the expiration of the limitations period. This much is undisputed. *See* ECF No. 71 at 23; ECF No. 121 at 8; *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (pendency of federal habeas corpus action does not toll AEDPA limitations period).

Therefore, for the most part, the timeliness of Moore's claims turns upon whether the claims in his second amended petition relate back to the filing of his original petition or his first amended petition. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order," but "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650, 664.

C.    Exhaustion and Procedural Default

A federal court will not grant a state prisoner's petition for habeas relief unless the petitioner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose*, 455 U.S. at 520).

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate the state-law procedural bar of an unexhausted claim, and to treat such a claim as technically exhausted but subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). In light of the procedural history of this case, in particular, the rulings in Moore's second state habeas action, the Court determines that any claims not yet presented in state court would be ruled procedurally barred in state court if Moore were to return to state court to attempt to exhaust those claims. Therefore, the anticipatory default doctrine applies to any claims not yet presented in state court, and the Court considers those claims to be technically exhausted, but subject to the procedural default doctrine. *See* ECF No. 59 at 42 (Moore argues: "Insofar as any claims have not been fairly presented, or not fully presented, those claims are exhausted … because those claims would now be procedurally defaulted in state court, and thus exhausted …."); *see also* Opposition to Motion to Dismiss, ECF No. 121 at 29 (Respondents argue: "At this point, if Moore sought relief from the Nevada courts, his claims would be procedurally defaulted, and thus they would be technically exhausted.").

Turning to the procedural default doctrine, a federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested—or, in the case of a technically exhausted claim, would rest—on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

The Nevada Supreme Court ruled Moore's second state habeas action, in its entirety, procedurally barred:

> Moore filed the postconviction petition at issue in this case on September 19, 2013, more than one year after remittitur issued from his direct appeal. Thus, the petition was untimely filed. *See* NRS 34.726(1). The petition was also successive because Moore had previously sought postconviction relief. *See* NRS 34.810(1)(b); NRS 34.810(2). Accordingly, the petition was procedurally barred absent a demonstration of good cause and prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b), (2), (3).

*Moore*, 134 Nev. at 263, 417 P.3d at 359.

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011).

In the order on Respondents' motion to dismiss, the Court ruled that Nev. Rev. Stat. §§ 34.726 and 34.800 are adequate to support application of the procedural default

13

doctrine in this case. ECF No. 139 at 20–21. The Court does not revisit that ruling here.

In the order on the motion to dismiss The Court stated:

> Beyond the question of the adequacy of Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. §§ 34.726, 34.800, and 34.810, the Court will not, in this order, address the remainder of the issues raised by the parties concerning the alleged procedural default of Moore's claims. The question of prejudice, in the cause and prejudice analysis regarding any alleged procedural defaults in this case, is intertwined with the question of the merits of the particular claims, such that those issues will be better addressed in conjunction with the merits, after Respondents file an answer and Moore a reply. Furthermore, it appears that, following the Court's ruling in this order regarding the question of the exhaustion of Moore's claims, further briefing of the procedural default issues in the parties' answer, reply, and response to reply, will be beneficial. The Court will, therefore, decline to address the procedural default issues raised by this motion—other than the question of the adequacy of Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. §§ 34.726, 34.800, and 34.810. The Court will deny Respondents' motion to dismiss, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting their procedural default defense in their answer.
>
> The parties' further briefing regarding the alleged procedural default of Moore's claims—in Respondents' answer, Moore's reply, and Respondents' response to the reply—should, as to each claim allegedly procedurally defaulted, explain if, when, and where that claim, or a similar or related claim, was asserted in state court, and explain whether the claim was ruled procedurally barred in state court, so as to result in the procedural default of the claim in this action. This analysis should be set forth—in a clear, understandable manner—for each separate claim allegedly procedurally defaulted. The parties' further briefing must, of course, also address the merits of each of Moore's remaining claims.

*Id.* at 21.

With respect to the question of the independence of the procedural bars under Nev. Rev. Stat. §§ 34.726 and 34.800 applied by the Nevada Supreme Court to bar consideration of claims in Moore's second state habeas action, Moore argues that the Nevada Supreme Court's ruling was ambiguous because the court did not specify which claims were barred for which reasons. *See, e.g.*, ECF No. 166 at 224–28. The Court rejects this argument. The Nevada Supreme Court ruled that "*the petition was untimely filed,*" and therefore barred by Nev. Rev. Stat. § 34.726, plainly referring to the entire petition. *Moore*, 134 Nev. at 263, 417 P.3d 359 (emphasis added). The court also applied the laches bar of Nev. Rev. Stat. § 34.800 to the entire petition. *Id*. There was no ambiguity.

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel.

D.    28 U.S.C. § 2254(e)(2), *Ramirez*

Federal habeas review under 28 U.S.C. § 2254(d)(1) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180–81 (district court erred in considering evidence introduced for first time in federal court). 28 U.S.C. § 2254(e)(2) provides that if a habeas petitioner:

> … has failed to develop the factual basis of a claim in State court proceedings, no evidentiary hearing will be held in federal court unless the petitioner shows that—
>
> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)

In *Shinn v. Ramirez*, 596 U.S. 366 (2022), the United States Supreme Court reinforced that when reviewing a federal habeas petition, the federal court may not consider evidence beyond the state court record unless the requirements of 28 U.S.C. § 2254(e)(2) are met. *Ramirez*, 596 U.S. at 382. The *Ramirez* Court also held that, with respect to procedurally defaulted claims, not adjudicated on their merits in state court, the federal habeas court may not hold an evidentiary hearing or otherwise consider new evidence regarding the question of cause and prejudice relative to a procedural default, unless the requirements of § 2254(e)(2) are met. *Id*. at 382–91.

Moore supports Claims 1a, 1b, 1c, 2b, and 15 with new evidence—evidence not presented in state court in support of those claims until Moore's procedurally barred second state habeas action. *See* discussions at Parts III.G.1.a., III.G.1.b., III.G.1.c., III.G.2.b, and III.G.15, *infra*. Moore does not make any showing that such new evidence meets the standard imposed by § 2254(e)(2). That new evidence is therefore inadmissible under § 2254(e)(2) and *Ramirez*.

Moore's new evidence is not made admissible under § 2254(e)(2) by Moore's proffer of it in support of his second state habeas petition. The state courts ruled the claims in that petition procedurally barred. In *McLaughlin v. Oliver*, 95 F.4th 1239 (9th Cir. 2024), the Ninth Circuit Court of Appeals stated:

> Here, the Nevada Supreme Court squarely held that McLaughlin's successive petition, with its new evidence, "was procedurally barred," and the court therefore declined to consider any of that evidence. McLaughlin's failure to present that evidence to the state courts "in compliance with state procedural rules" counts as a "fail[ure] to develop the factual basis of a claim in State court proceedings" under § 2254(e)(2), as construed in *Shinn* [*Ramirez*], 596 U.S. at 375–76, 142 S.Ct. 1718 (citation omitted).

*McLaughlin*, 95 F.4th at 1249. In Moore's second state habeas action, the Nevada Supreme Court, for the most part, considered his new evidence only to determine whether he could overcome the procedural bars. *Moore*, 134 Nev. at 263, 266–67, 417 P.3d at 359, 361. The Nevada Supreme Court ruled that Moore's claims were procedurally barred, and that Moore did not make the showing required under state law

to overcome the procedural bars. *Id*. The Nevada Supreme Court did not consider Moore's new evidence with respect to the merits of Moore's claims. *See id*. [15]

Therefore, applying 28 U.S.C. § 2254(e)(2) and *Ramirez*, this Court does not consider evidence proffered by Moore in state court only in his second state habeas action in addressing any of his claims (other than Claim 6).

E.    Moore's Motions for Discovery and for an Evidentiary Hearing

In his motion for an evidentiary hearing, Moore requests an evidentiary hearing on Claims 1, 2, 6, 13 and 15. ECF No. 170 at 15–18. In his motion for leave to conduct discovery, Moore requests leave to conduct discovery regarding Claim 6. ECF No. 168.

In making these motions Moore does not distinguish among the many subclaims in the claims on which he seeks such factual development. As examples, Claim 6, the claim on which Moore requests both discovery and an evidentiary hearing, includes subclaims asserting a *Brady*[16] claim, a *Napue*[17] claim, and a claim of ineffective assistance of trial counsel,[18] and Claims 1 and 2, which are claims of ineffective assistance of trial counsel in the penalty phase and guilt phase, include multiple factually distinct subclaims. *See* discussions at Parts III.G.1, III.G.2. and III.G.6. *infra*. But Moore's argument for an evidentiary hearing regarding those claims is conclusory, with no distinction among the many subclaims of the numbered claims on which he requests discovery. *See* ECF No. 170 at 15–16. Moore's motion is faulty—vague and ambiguous—in this regard.

Furthermore, Moore's motion for leave to conduct discovery regarding Claim 6 is wildly overbroad.[19] Moore provides no argument or evidence demonstrating that any of

---

[15] The exception is Moore's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), in Claim 6; the Nevada Supreme Court's analysis of the procedural bar of that claim involved analysis of the claim itself and, therefore, was not independent of federal law. *See* Part III.G.6., in*fra*.

[16] *Brady v. Maryland*, 373 U.S. 83 (1963).

[17] *Napue v. Illinois*, 360 U.S. 264 (1959).

[18] The Court resolves the *Brady* claim on its merits applying the AEDPA standard, and the Court resolves the *Napue* claim and the claim of ineffective assistance of trial counsel on procedural default grounds. *See* Part III.G.6., *infra*.

[19] Claim 6 includes claims that the State suppressed exculpatory evidence and impeachment evidence related to witness Angela Saldana, that the State presented false

his specific proposed discovery requests would turn up evidence to support his claims the prosecution violated the rules of *Brady* and *Napue*. Rather, it appears that his proposed discovery would be a search of every conceivable source for evidence that may or may not exist.

But even putting aside these shortcomings of his motions, the factual development Moore seeks is barred by 28 U.S.C. § 2254(e)(2), *Ramirez*, and *Shoop v. Twyford*, 596 U.S. 811 (2022). Moore's motions for discovery and an evidentiary hearing are an

---

testimony of Saldana, and that his trial counsel was ineffective for not discovering the exculpatory and impeachment evidence and for not adequately cross-examining Saldana. ECF No. 59 at 206–33; *see also id.* at 169. In his motion for leave to conduct discovery Moore seeks discovery from the Clark County District Attorney's Office (CCDA) of: information regarding Robert Peoples, including "all information from Peoples's informant file, any case files regarding Peoples, or victim witness files," and information regarding his "parole status;" information related to Beecher Avants, "who worked at the Clark County District Attorney's office and was involved in this case;" "information related to the stabbing of Larry Wilch," a crime allegedly committed by Peoples; "information related to Angela Saldana, including information from her secret witness file, any investigation or prosecution files about her, any kind of informant file, or anything within [Dan] Seaton's or Avants's file about her;" information related to Becky Lompre, who "appeared to have worked both at Metro [the Las Vegas Metropolitan Police Department (LVMPD)] and the district attorney's office;" information related to Dan Seaton, one of the prosecutors in Moore's case, "specifically his file in this case and his personnel file;" information related to Mel Harmon, another of the prosecutors in Moore's case, "specifically his file in this case and his personnel file;" information related to all communications between the CCDA and the LVMPD regarding this case; and "any information in the possession of the [CCDA] regarding the homicides of Carl and Colleen Gordon." ECF No. 168 at 10–14. Moore seeks from the Federal Bureau of Investigation (FBI) information about Avants. *Id.* at 14. From the LVMPD, Moore seeks: "the entire investigative file related to the homicides of Carl and Colleen Gordon;" information regarding Peoples, including "all information from Peoples's informant file, any case files regarding Peoples, or victim witness files;" information related to Avants, "who worked at [the LVMPD] before working at the [CCDA];" information related to "the stabbing of Larry Wilch;" information related to Saldana, "including information from her secret witness file, any investigation or prosecution files about her, or any kind of informant file;" information related to Officer Raymond Berni, who "served as Saldana's unofficial and secret police liaison during the investigation into Moore and the Gordon homicides," including his personnel file; "information in Becky Lompre's file;" information in "the file" of Detective Bob Hilliard, who "knew of Saldana's role, and was later fired for corruption;" information in the "files" of Detectives Michael Geary and Burt Levos, "the lead investigators in this case;" information related to all communications between the LVMPD and the CCDA regarding this case; and "any information possessed by Metro regarding Moore himself." *Id.* at 14–17.

attempt to develop evidentiary support for his claims that he failed to develop in state court. As is discussed in the preceding section (Part III.D., *supra*), the *Ramirez* Court held that when reviewing a federal habeas petition, the federal court may not consider evidence beyond the factual record presented to the state courts, *either with respect to the question of procedural default of a claim or with respect to the merits of a claim*, unless the requirements § 2254(e)(2) are met. *Ramirez*, 596 U.S. at 382–91. In *Shoop*, the Court reiterated that holding. *Shoop*, 596 U.S. at 823 ("[T]his Court has already held that, if § 2254(e)(2) applies and the prisoner cannot meet the statute's standards for admitting new merits evidence, it serves no purpose to develop such evidence just to assess cause and prejudice." (citing *Ramirez*, 596 U.S. at 389)); *see also Kemp v. Ryan*, 638 F.3d 1245 (9th Cir. 2011). The *Shoop* Court went on to hold that discovery is precluded where the discovery seeks to develop evidence that, under the holding of *Ramirez*, could not be considered in support of a claim. *Shoop*, 596 U.S. at 822–23.

Moore failed to develop in state court the evidence he seeks to develop here, and he does not make a showing under § 2254(e)(2) to allow him to undertake that evidentiary development in this federal habeas action. In his reply in support of his motion for leave to conduct discovery, Moore argues that "[t]he restrictions found in … § 2254(e) do not apply when this Court assesses whether a petitioner can establish good cause and prejudice to overcome procedural default." ECF No. 182 at 4; *see also, generally, id*. at 4–7. But that argument is squarely foreclosed by *Ramirez* and *Shoop*.

The *Shoop* Court explained the restrictions imposed by § 2254(e)(2):

> If a prisoner "failed to develop the factual basis of a claim in State court proceedings," a federal court may admit new evidence, but only in two quite limited situations. § 2254(e)(2). Either the claim must rely on a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or it must rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(A). And even if a prisoner can satisfy one of those two exceptions, he must also show that the desired evidence would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the charged crime. § 2254(e)(2)(B).

*Id*. at 819. Moore makes no attempt to meet the requirements of § 2254(e)(2).

The Court denies Moore's motion for an evidentiary hearing and his motion for leave to conduct discovery.

F.      Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Where a state court previously adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05 ("The standards created by *Strickland* and § 2254(d) are both highly deferential … and when the two apply in tandem, review is 'doubly' so." (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (double deference required with respect to state court adjudications of *Strickland* claims).

G.    Analysis of Claims

1.    Claim 1

In Claim 1, Moore claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel in the penalty phase of his trial. ECF No. 59 at 45–127. Moore claims that his trial counsel was ineffective for failing to investigate and present evidence regarding his background, for failing to utilize experts, and for failing to impeach prosecution witnesses John Lucas III, Tom Akers, Angela Saldana, and Wayne Wittig. *Id*.[20] [21]

a.    Alleged Failure to Investigate and Present Evidence Regarding Moore's Background

In the first part of Claim 1, Moore claims his trial counsel was ineffective for not investigating his background and for not presenting evidence about his background to mitigate his sentence. ECF No. 59 at 45–114. In support of this claim, Moore relies upon declarations of family, friends, and acquaintances that were not presented in state court

---

[20] Also, in Claim 1, Moore asserts, by reference to other claims, claims of ineffective assistance of trial counsel in the penalty phase. ECF No. 59 at 64–65. These are ineffective-assistance-of-trial-counsel analogs of substantive claims made elsewhere in Moore's second amended petition. These ineffective assistance of counsel claims, and the substantive claims related to them, are the following: failure to object to the admission of Luckett's prior testimony, related claim is Claim 5; failure to object to the admissibility of statements procured through improper payment, related claim is Claim 7; failure to object to prosecutorial misconduct in arguments, related claim is Claim 9; failure to object to other prosecutorial misconduct, related claim is Claim 12; failure to make objections with regard to the jury, related claims are Claims, 15, 16, 17, 18, 19; failure to object to lack of notice regarding aggravating circumstances, related claim is Claim 21; failure to object to erroneous instructions about commutation, anti-sympathy, the weighing equation, and reasonable doubt, related claims are Claims 25, 26, 27 and 28; failure to object to Nevada's unconstitutional death penalty scheme, related claims are Claims 36, 42 and 43; failure to object to Moore's case being adjudicated by elected judges, related claim is Claim 37; failure to object to biased judge, related claim is Claim 39; failure to object to Moore's absence from critical proceedings, related claim is Claim 41; failure to object to Nevada's clemency procedure, related claim is Claim 44; and failure to object to the multiplicity of proceedings and passage of time, related claim is Claim 46. These claims of ineffective assistance of trial counsel are addressed, *infra*, in conjunction with the related substantive claims.

[21] Moore moves for an evidentiary hearing regarding Claim 1. ECF No. 170. The Court denies that motion. *See* discussion at Part III.E., *supra*.

in an action that was not procedurally barred. This evidence was presented in state court only in Moore's procedurally barred second state habeas action. It is therefore inadmissible in support of this claim in this action under section 2254(e)(2) and *Ramirez*. *See* Part III.D., *supra*.[22]

In his first state habeas action, Moore made a similar claim, but only in a conclusory manner, without reference to any supporting evidence. ECF No. 16-15 at 40, 47–49. And, on his second appeal in that case, Moore simply parroted the claim as it was presented in his petition, again without reference to any supporting evidence. *See* ECF No. 2-4 at 25–

---

[22] This includes: Declaration of Darla Newell-Mathews, ECF No. 16-1 at 35–38; Declaration of Wendy Mazaros, ECF No. 16-6 at 10–12; Declaration of John Lucas III, ECF No 19-2 at 45–48; Declaration of Jon Wall, ECF No. 19-2 at 50–51; Declaration of Kenneth L. Smith, ECF No. 19-2 at 53–59; Declaration of Lisa Luckett-McDonough, ECF No. 19-2 at 61–63; Declaration of Thomas Akers, ECF No. 19-2 at 65–68; Report of Dr. Jonathan J. Lipman, ECF No. 19-2 at 70–99; Declaration of Sheri Lyn McKenzie, ECF No. 19-3 at 9–19; Declaration of Lori Hauxwell, ECF No. 19-3 at 21–26; Declaration of Angela Saldana-Ficklin, ECF No. 19-3 at 28–30; Declaration of Cheryl Bigelow, ECF No. 19-3 at 32–36; Declaration of Felicia Burke, ECF No. 19-3 at 38–39; Declaration of Kathryn Creasy, ECF No. 19-3 at 41–43; Declaration of Kevin Troy Darling, ECF No. 19-3 at 47–49; Declaration of Roy McDowell, ECF No. 19-3 at 51–55; Declaration of Tracy Saal-Moore, ECF No. 19-3 at 57–58; Declaration of Joseph Nesbitt-Eisnach, ECF No. 19-3 at 60–63; Declaration of Bertha Fisher, ECF No. 19-3 at 65–67; Declaration of Randy Huston, ECF No. 19-3 at 69–70; Declaration of Tony Parsons, ECF No. 19-3 at 72–74; Declaration of Alfonso R. Cota, ECF No. 19-3 at 76–80; Declaration of Constance Russell, ECF No. 19-5 at 12–15; Declaration of Connie Russell, ECF No. 19-5 at 17–18; Declaration of Sherri Wilson, ECF No. 19-5 at 20–22; Declaration of David Schieck, ECF No. 19-5 at 24–26; Declaration of JoNell Thomas, ECF No. 19-5 at 36–40; Declaration of Michelle Gray-Thayer, ECF No. 19-13 at 55–58; Declaration of Debora Samples-Nadeau, ECF No. 19-14 at 2–4; Declaration of Lindy Moore, ECF No. 20-4 at 37–47; Declaration of Randy Pike, ECF No. 20-11 at 2–5; Declaration of Tammy Huskey-Smith re John Middleton, ECF No. 20-11 at 13–16; Declaration of Tammy Huskey-Smith re Robert Martin, ECF No. 20-11 at 18–20; Declaration of Janice Faust, ECF No. 20-11 at 25–27; Declaration of Amy Hanley-Peoples, ECF No. 20-11 at 35–37; Declaration of Arthur "Art" Bonczyk, ECF No. 20-11 at 39–41; Declaration of Johnny Ray Luckett, ECF No. 20-11 at 43–45; Declaration of Herbert Duzant re Rusty Havens, ECF No. 20-11 at 47–48; Declaration of Tena Francis re Evelyn Maguire and Wayne Wittig, ECF No. 20-12 at 2–3; Declaration of Tena Francis re Thea Wittig and Wayne Wittig, ECF No. 20-12 at 8–9; Declaration of Tena Francis re Greg Hilliard, ECF No. 20-12 at 11–12; Declaration of Keith Lobaugh, ECF No. 20-12 at 14–15; Declaration of Tammy Huskey-Smith re Epiphany "Eppy" Lopez, ECF No. 20-12 at 17–19; Declaration of Herbert Duzant re Robert Handfuss, ECF No. 20-13 at 2–5; Declaration of Tammy Huskey-Smith re Amanda "Mandy" Ryder, ECF No. 21 at 2–5; Report of Dr. Jonathan H. Mack, ECF No. 21-2 at 38–83.

27; *see also* ECF No. ECF No. 16-15 at 47–49. The Nevada Supreme Court affirmed the denial of relief on the claim, ruling that the evidence he presented was "insufficiently persuasive":

> Moore contends that counsel failed to adequately investigate and present mitigation evidence concerning his childhood, mental health, and mental state at the time of the murders. However, the evidence he argues should have been presented is insufficiently persuasive to lead us to conclude that even had counsel introduced it at the penalty hearing, the outcome of the proceeding would have been different.

ECF No. 18 at 12. The Nevada Supreme Court's ruling was reasonable given the evidence that Moore presented—or, perhaps more accurately, failed to present—in support of the claim.

Subsequently, after Moore initiated this federal habeas action, had counsel appointed, and filed his first amended petition, he initiated his second state habeas action, and again asserted the claim that his trial counsel was ineffective for failing to investigate, develop, and present mitigation evidence in the penalty phase of his trial. ECF No. 60-2 at 28–96. This time, Moore supported his claim with the evidence he now presents in this action. *See id*. The state district court denied the petition, ruling it procedurally barred. ECF No. 112-4. Moore appealed, and the Nevada Supreme Court affirmed on May 17, 2018. *Moore*, 134 Nev. 262, 417 P.3d 356. The Nevada Supreme Court ruled the claim procedurally barred and ruled that Moore did not make the showing required under state law to overcome the procedural bars. *Moore*, 134 Nev. at 263, 266–67, 417 P.3d at 359, 361.

Moore and the respondents argue about whether the Nevada Supreme Court's ruling that Moore did not overcome the state-law procedural bars was reasonable. *See* ECF No. 158 at 33–36; ECF No. 166 at 32–55; ECF No. 180 at 14–23. But that argument is inapposite. This federal habeas court does not review the state court's application of state-law procedural rules. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (as amended)

23

("Federal habeas courts lack jurisdiction … to review state court applications of state procedural rules."); *Trieu v. Fix*, 764 F. App'x 624, 624–25 (9th Cir. Mar. 25, 2019) (federal court could not "review the legitimacy" of state court's application of "procedural bar against successive or piecemeal litigation").

This claim is subject to the procedural default doctrine, and the question is whether Moore can overcome the procedural default. He cannot; most of the evidence he presents in his attempt to do so is inadmissible under section 2254(e)(2) and *Ramirez*. *See* Part III.D., *supra*. Taking into consideration only admissible evidence, Moore makes no showing what mitigation evidence his trial counsel could have, but did not, investigate, develop, and present. Moore does not show that his trial counsel acted unreasonably in not investigating, developing, and presenting any such evidence, and he does not show that he was prejudiced. Moore does not show that his state post-conviction counsel was ineffective for not asserting the claim, as now presented, in his first state habeas action, and he does not overcome the procedural default of the claim under *Martinez*. The claim is denied as procedurally defaulted.

b.    Alleged Failure to Utilize Experts

Next, Moore claims that his trial counsel was ineffective for failing to utilize experts in the penalty phase of his trial. ECF No. 59 at 114–19. Moore bases this claim on a July 15, 2013, report of Dr. Jonathan J. Lipman (ECF No. 19-2 at 70–99) and an August 5, 2013, report of Dr. Jonathan H. Mack (ECF No. 21-2 at 38–83). *See id*.

In his first state habeas action, Moore made a similar claim, but only in a conclusory manner, unsupported by evidence. See ECF No. 16-15 at 40, 46–47, 49. On the second appeal in that case, Moore stated the claim as follows:

> Trial counsel at the third trial unreasonably failed to provide relevant information to the mental health professional relating to facts of the offense and Mr. Moore's background. Trial counsel unreasonably and prejudicially failed to retain and present experts to review, synopsize, and explain Mr. Moore's social history and to provide a context within which the jury could evaluate the mitigation presented. Employing an expert with qualifications in family dynamics and child abuse would have resulted in a complete investigation into Mr. Moore's family history, mental illness, and psychological disorders. Moreover, the presentation of such an expert

24

> would have permitted the jury to understand the mitigating social dynamics and influences that shaped Mr. Moore's life and behavior and would have provided a context for understanding and assimilating the penalty phase witnesses' testimony.

ECF No. 2-4 at 27. Moore's claim in that case was not supported by any evidence.[23] The Nevada Supreme Court affirmed the denial of relief on the claim, ruling that the evidence he argued should have been presented at trial was "insufficiently persuasive." ECF No. 18 at 12. That ruling was reasonable.

In his second state habeas action, Moore again asserted the claim that his trial counsel was ineffective for failing to utilize experts in the penalty phase of his trial. ECF No. 60-2 at 69–73. This time, Moore supported the claim with the evidence presented in support of the claim in this action, that being the reports of Drs. Lipman and Mack. *See id.* The state district court denied the petition, ruling that it procedurally barred. ECF No. 112-4. Moore appealed, and the Nevada Supreme Court affirmed. *Moore*, 134 Nev. 262, 417 P.3d 356. The Nevada Supreme Court ruled that the claim was procedurally barred, and that Moore did not make the showing required under state law to overcome the procedural bars. *Moore*, 134 Nev. at 263, 266–67, 417 P.3d at 359, 361.

This claim is therefore subject to the procedural default doctrine, and Moore does not make a showing of cause and prejudice under *Martinez* to overcome the procedural default. The evidence he presents—reports of Drs. Lipman and Mack—is inadmissible under section 2254(e)(2) and *Ramirez. See* Part III.D., *supra*. Moore presents no admissible evidence to show what expert testimony could have been offered to mitigate his sentence. Moore does not show that his trial counsel acted unreasonably, that he was prejudiced, or that his state post-conviction counsel was ineffective for not asserting this claim in his first state habeas action. This claim is denied as procedurally defaulted.

c.    Alleged Failure to Investigate and Impeach Witnesses

In the next part of Claim 1, Moore claims that his trial counsel was ineffective for not investigating four witnesses who testified against him in the penalty phase of his

---

[23] Moore could not have presented the reports of Drs. Lipman and Mack; those reports were written some fifteen years after he initiated his first state habeas action and some three years after he filed his opening brief on the second appeal in that action.

trial—John Lucas, Tom Akers, Angela Saldana, and Wayne Wittig—and for not

impeaching the testimony of those witnesses. ECF No. 59 at 119–27.

With regard to Lucas, Moore claims that his trial counsel was ineffective for failing

to investigate and use as impeachment evidence two criminal cases against Lucas

involving felony sex offenses, in which Lucas entered guilty plea agreements and

received probation. ECF No. 59 at 119–20.

Moore asserted a claim regarding his trial counsel's handling of Lucas in his first

state habeas action. *See* ECF No. 16-15 at 43–44. On his second appeal in that case,

Moore stated the claim as follows:

> Trial counsel failed to properly impeach John Lucas. During his
> testimony, Mr. Lucas testified that he had received a "snitch jacket"
> because he testified against his friends and that he spent the last seven
> months of his sentence in protective custody. This testimony created the
> misleading impression that Mr. Moore and Mr. Flanagan had somehow
> threatened Mr. Lucas. In fact, Mr. Lucas was in protective custody because
> he had committed an offense of lewdness with a minor. His probation for
> that offense was revoked after he was convicted of a gross misdemeanor
> offense of soliciting a minor for crimes against nature. *Id.* The district court
> concluded that defense counsel should have elicited this testimony during
> cross-examination, but could not do so unless they could produce prison
> records. Effective defense counsel would have subpoenaed the necessary
> conviction and prison records.

ECF No. 2-4 at 23–24. (citations to record on appeal omitted). But that claim was

different from the claim asserted in this case. There, Moore asserted that his counsel was

ineffective for failing to impeach Lucas's testimony to the extent it created an impression

that Moore and Flanagan threatened him; in this case, Moore asserts that his counsel

was ineffective for failing to impeach Lucas's testimony with evidence suggesting Lucas

received special treatment in his criminal cases because he testified against Moore.

It was not until his second state habeas action that Moore asserted the claim

regarding his trial counsel's handling of Lucas that he asserts in this case. ECF No. 60-2

at 74. Moore supported that claim in his second state habeas action with the evidence he

presents in support of the claim in this case. *See id*. But that claim in his second state

habeas action was ruled procedurally barred, and the evidence Moore presents in an

attempt to overcome the procedural default is inadmissible under section 2254(e)(2) and *Ramirez*. *See* Part III.D., *supra*.[24]

Taking into consideration only admissible evidence, Moore does not show how his trial counsel could have impeached Lucas's testimony based upon his criminal prosecutions or how he was prejudiced by his trial counsel not doing so, and he does not show that his state post-conviction counsel was ineffective for not asserting this claim in his first state habeas action. This claim is denied as procedurally defaulted.

Moore also claims that his trial counsel was ineffective in the penalty phase of his trial for failing to investigate Tom Akers, Angela Saldana and Wayne Wittig, and impeach their testimony. ECF No. 59 at 119–27. In his first state habeas action, Moore made such a claim regarding Saldana, but only in a conclusory manner, unsupported by evidence. *See* ECF No. 16-15 at 38. Moore did not in state court assert these claims regarding his trial counsel's failure to impeach Akers, Saldana, and Wittig in the manner he asserts them in this case, until he initiated his procedurally barred second state habeas action in 2013. Therefore, these claims are subject to the procedural default doctrine. Moore does not make a showing of cause and prejudice under *Martinez* to overcome the procedural default of these claims. Much of the evidence he presents in an attempt to do so is inadmissible under section 2254(e)(2) and *Ramirez*.[25] *See* Part III.D., *supra*. Moore does not make a showing how trial counsel could have impeached the testimony of Akers, Saldana, or Wittig, or how he was prejudiced by trial counsel not doing so, and he does

---

[24] This includes: Declaration of John Lucas III, ECF No 19-2 at 45–48; Declaration of Roy McDowell, ECF No. 19-3 at 51–55; Declaration of Tony Parsons, ECF No. 19-3 at 72–74; and records from criminal prosecutions of Lucas, ECF No. 19-15 and ECF No. 20.

[25] This includes: Declaration of Wendy Mazaros, ECF No. 16-6 at 10–12; Declaration of Thomas Akers, ECF No. 19-2 at 65–68; Declaration of Sheri Lyn McKenzie, ECF No. 19-3 at 9–19; Declaration of Angela Saldana-Ficklin, ECF No. 19-3 at 28–30; Declaration of Michelle Gray-Thayer, ECF No. 19-13 at 55–58; Declaration of Debora Samples-Nadeau, ECF No. 19-14 at 2–4; Records from Criminal Prosecution of Saldana, ECF No. 20-1; Declaration of Randy Pike, ECF No. 20-11 at 2–5; Declaration of Amy Hanley-Peoples, ECF No. 20-11 at 35–37; Declaration of Johnny Ray Luckett, ECF No. 20-11 at 43–45; Declaration of Tena S. Francis re Evelyn Maguire and Wayne Wittig, ECF No. 20-12 at 2–3; Declaration of Tena S. Francis re Thea Wittig and Wayne Wittig, ECF No. 20-12 at 8–9.

not show that his state post-conviction counsel was ineffective for not asserting these claims. These claims are denied as procedurally defaulted.

### 2.    Claim 2

In Claim 2, Moore claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel in the guilt phase of his trial. ECF No. 59 at 128–89. Claim 2 has several distinct subparts.[26] [27]

### a.    Claims of Ineffective Assistance of Trial Counsel in Guilt Phase Summarily Rejected by Nevada Supreme Court

In Claim 2, Moore makes several claims of ineffective assistance of his trial counsel that were asserted in state court and denied by the Nevada Supreme Court with little or no discussion. These are claims that Moore's trial counsel was ineffective for not preventing, and not making appropriate motions with respect to, introduction of evidence by Moore's co-defendants in support of their coercion and duress defenses (ECF No. 59 at 135, 136–47);[28] for not preventing, and not making appropriate motions with respect to, hearsay testimony (*id*. at 135, 147–50); for not objecting to, and not making appropriate motions with respect to, comments made by the prosecution in the presence

---

[26] Several of the claims in Claim 2 are ineffective-assistance-of-trial-counsel analogs of substantive claims made elsewhere in Moore's second amended petition. These guilt phase ineffective assistance of trial counsel claims, and the substantive claims related to them, are the following: failure to object to prosecutorial misconduct (ECF No. 59 at 135, 168–73), related claims are Claims 6, 7, 9, 10, 11 and 12; failures with respect to jury instructions (*id*. at 135, 173–74), related claims are Claims 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 48, 50 and 51; failure to seek change of venue (*id*. at 135, 175–76), related claim is Claim 40; failure to object to requirement that counsel make objections outside presence of jury (*id*. at 135, 162–66), related claim is Claim 52; failure to object to Moore's absence from critical proceedings and the trial court's failure to record those proceedings (*id*. at 135, 183–84), related claim is Claim 41; failure to obtain discovery regarding Saldana (*id*. at 178–79), related claim is Claim 6; failure to adequately raise and support particular motions and objections (*id*. at 188–89), related claims are Claims 3, 4, 5, 36, 37, 39, 42, 43, 45, 50. These claims of ineffective assistance of trial counsel are addressed, *infra*, in conjunction with the related substantive claims.

[27] Moore moves for an evidentiary hearing regarding Claim 2. ECF No. 170. The Court denies that motion. *See* discussion at Part III.E., *supra*.

[28] In Claim 35, Moore asserts a claim of ineffective assistance of his appellate counsel on this ground. ECF No. 59 at 408–10.

of the jury indicating that the trial judge had previously found the existence of a

conspiracy and found certain statements to be admissible as being in furtherance of the

conspiracy (*id*. at 150–52);[29] for eliciting damaging testimony about Moore (*id*. at 132,

135, 152–56); for not developing a theory of defense (*id*. at 135, 156–57); for participating

in joint defense strategy discussions with Moore's co-defendants' counsel and for relying

upon their work (*id*. at 133, 135, 157–59, 177–78); for not objecting to prosecutorial

Interference with the defense and judicial restrictions on defense resources (*id*. at 135,

176–77); and for not filing unspecified motions (*id*. at 171–72).

Moore asserted these claims on his first appeal in his first state habeas action.

ECF No. 17-1 at 28; ECF No. 17-2 at 2, 7–24. The Nevada Supreme Court ruled:

> We have carefully considered Moore's arguments and submissions in support of these claims and conclude that, even if counsel's performance was deficient for any of the reasons listed above, Moore failed to demonstrate that the result of his trial would have been different. To the extent these claims implicated evidentiary matters, we conclude that Moore also failed to show prejudice in light of the overwhelming evidence of guilt. Therefore, we conclude that the district court did not err in denying these claims. [Footnote: To the extent Moore contends that appellate counsel were ineffective for not raising any of these matters on direct appeal, we conclude that he failed to demonstrate that they had a reasonable probability of success. *See* [*Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996)].

ECF No. 17-7 at 10; *see also id* at 9–10 (specifying the claims rejected in this ruling).

Affording the state court the deference required when applying the AEDPA

standard, this Court determines that the Nevada Supreme Court's rulings on these claims

were not contrary to, or an unreasonable application of, Supreme Court precedent, and

were not based on an unreasonable determination of the facts in light of the evidence.

The Court denies these claims.

---

[29] In Claim 35, Moore asserts a claim of ineffective assistance of his appellate counsel on this ground. ECF No. 59 at 410–11.

b.     Failure to Investigate

Next, Moore claims that his trial counsel was ineffective for not sufficiently investigating his case for purposes of the guilt phase of trial. ECF No. 59 at 135, 159–67. He claims that his trial counsel failed to investigate witnesses Rusty Havens, John Lucas, and Angela Saldana (*id*. at 159–61), and failed to investigate, develop, and present evidence demonstrating defects in the prosecution's forensic evidence (*id*. at 161–67).

Moore asserted versions of these claims—with significantly less supporting evidence—in his first state habeas action. ECF No. 16-15 at 22–23, 26–28, 38. On the first appeal in that action, the Nevada Supreme Court summarily affirmed the lower court's denial of relief on the claims. ECF No. 17-7 at 10. Affording the state court the deference required under the AEDPA, this Court determines that this ruling was not contrary to, or an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence.

Moore's current iteration of these claims is supported by more evidence and is fundamentally different from the claims as presented in his first state habeas action. Moore presented these claims in his second state habeas action as they now appear in this case, but that action was ruled procedurally barred. *Moore,* 134 Nev. 262, 417 P.3d 356. So, as presented in this federal habeas action, these claims are subject to the procedural default doctrine. And the Court determines that Moore cannot overcome the procedural default under *Martinez*, as much of the evidence he presents is inadmissible under section 2254(e)(2) and *Ramirez*. *See* Part III.D., *supra*.[30]

Viewing Moore's claim as this Court must following *Ramirez*, Moore makes no showing that further investigation of witnesses Havens, Lucas, and Saldana, or regarding the prosecution's forensic evidence, could reasonably have changed the outcome of his trial. Moore does not show that his post-conviction counsel in his first state habeas action was ineffective for not asserting these claims as now presented, and he does not

---

[30] This includes: Declaration of John Lucas III, ECF No 19-2 at 45–48; Declaration of Herbert Duzant re Rusty Havens, ECF No. 20-11 at 47–48; Report of Jerry Chisum, ECF No. 20-12 at 21–24.

overcome the procedural default of the claims under *Martinez*. These claims are denied as procedurally defaulted.

c.      Provision of Prejudicial Information to Prosecutors and Co-Defendants

Moore's next argument in Claim 2 is as follows:

> Trial counsel unreasonably told prosecutors and counsel for antagonistic defendants about derogatory and prejudicial information concerning Moore. Counsel filed a motion for appointment of a psychiatrist to examine Moore. ECF No. 18-4 at 135. He asserted that Moore was involved with white and black magic and claimed that this information was relevant to proving that Moore could not distinguish right from wrong at the time of the alleged homicide. *Id*. Counsel sent copies of his motion to co-defendants' counsel and to the prosecutors. *Id*.

> Reasonably effective counsel would have known that the insanity defense could not be established based upon this simple allegation. Moreover, effective counsel would have filed a request for psychiatric examination without derogatory information about his client or would have filed such a motion ex parte and under seal, as permitted by NEV. REV. STAT. § 7.135.

> … [S]ignificant evidence was introduced and extensive argument was made during trial concerning this evidence, all of which was to Moore's extreme detriment. Accordingly, Moore was prejudiced by his counsel's actions.

ECF No. 59 at 167–68; *see also id*. at 135.

Moore asserted this claim on his first appeal in his first state habeas action (ECF No. 17-2 at 18), and the Nevada Supreme Court affirmed the denial of relief on the claim, concluding that, even if counsel's performance in this regard was deficient, Moore failed to show prejudice. ECF No. 17-7 at 9–10.

This claim is without merit, and the Court finds reasonable the Nevada Supreme Court's rejection of it on the ground that Moore made no showing of prejudice. Moore makes no argument that the information in question would not have been discovered by the prosecution if counsel had not revealed it; it is inconceivable that it would not have been. The Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable

determination of the facts in light of the evidence. The Court denies habeas corpus relief on this claim.

> ### d.    Abandonment of Moore During Penalty Phase and Post-Trial

In the next part of Claim 2, Moore claims:

> Trial counsel failed to file a motion for a new trial and did not join in the motions filed by counsel for Moore's co-defendants. 11/4/85 TT; 11/13/85 TT. [31] Reasonably competent counsel would have recognized the numerous errors that occurred during the guilt phase of the trial and would have filed a motion for a new trial in order to protect his client's rights. ECF No. 19-1 at 42. Likewise, effective counsel would not have filed a motion to withdraw as counsel before the penalty hearing was conducted. *Cf. Id*. at 36 (trial counsel's motion to withdraw, dated 10/15/85) with ECF No. 16-1 at 32 (penalty phase verdict, dated 10/17/85). In essence, trial counsel abandoned Moore at the end of trial with[out] attending to the remaining issues.

ECF No. 59 at 184.

Moore asserted this claim on the first appeal in his first state habeas action. ECF No. 17-3 at 9. The Nevada Supreme Court ruled:

> … Moore contends that the district court improperly denied his claim that counsel was ineffective for not filing a motion for a new trial. However, Moore failed to identify what grounds should have been raised in a motion for a new trial. [Footnote, citing *Hargrove v. State*, 100 Nev. 4989, 502, 686 P.2d 222, 225 (1984).] Nor has he shown that if a motion for a new trial had been filed, it had any probability of success. Therefore, we conclude that the district court properly denied this claim.

ECF No. 17-7 at 17–18. This ruling was reasonable. Moore did not in state court, and he does not here, specify the arguments he believes his counsel should have made in a motion for new trial, and he does not show that any such arguments would have been meritorious or successful. As for Moore's claim that his counsel was ineffective for filing a motion to withdraw before the penalty hearing—which claim was rejected without discussion by the Nevada Supreme Court—Moore does not show that he was prejudiced;

---

[31] Moore cites trial transcripts, "11/4/85 TT and 11/13/85 TT." The Court is unaware of trial transcripts dated November 4 or November 13, 1985. Moore did not clarify this citation in his reply to Respondents' answer, which was filed after Respondents filed the trial record. *See* ECF Nos. 72, 166. The Court assumes that the point of this citation is simply to show that Moore's counsel did not join in any motion for new trial.

he was granted a new penalty hearing, twice. *See Moore*, 104 Nev. 113, 754 P.2d 841 (1988); *Flanagan III*, 109 Nev. 50, 846 P.2d 1053 (1993). Applying the AEDPA standard of review, the Court denies relief on these claims.

e.    Trial Counsel's Inexperience, Incompetence, and Hearing Loss, Generally

Moore claims that "[t]he trial judge appointed Moore's counsel without any inquiry into counsel's competency to act as lead counsel and sole counsel, without any inquiry into counsel's hearing loss." ECF No. 59 at 185, *see also*, *generally*, *id*. at 185–86.

In this part of Claim 2, Moore reiterates arguments—that trial counsel generally was not qualified to represent a capital murder defendant—that he makes with more specificity elsewhere in his second amended petition. *See*, *e.g.*, *id*. at 129–31, 188. Counsel's alleged lack of qualification to represent a defendant in a capital case does not, by itself, establish ineffective assistance of counsel under *Strickland.* The Court treats these arguments as support for Moore's specific claims of ineffective assistance of counsel, and not as a stand-alone claim.

The same goes for counsel's alleged hearing loss. Counsel's hearing loss, by itself, does not make for a *Strickland* claim. Petitioner must show that counsel's hearing loss caused counsel to perform unreasonably in some specific manner and that Moore was prejudiced, *see Strickland*, and Moore does not do that.

In Claim 35, Moore claims that his appellate counsel was ineffective for not asserting, on his direct appeal, a claim that his trial counsel's hearing loss made him ineffective. ECF No. 59 at 407–08. On Moore's first appeal in his first state habeas action, he asserted that his appellate counsel was ineffective for failing to raise an issue concerning the trial court's failure to conduct a hearing concerning trial counsel's apparent hearing loss. ECF No. 17-3 at 17. The Nevada Supreme Court addressed and rejected the claim:

> … Moore argues that the district court erroneously denied his claim that counsel … was incompetent due to his partial hearing loss.… [A]lthough the trial transcript shows that counsel experienced hearing

33

difficulties throughout the trial, counsel asked for clarification in those instances. We conclude that Moore failed to demonstrate that counsel was ineffective on these grounds and that the district court did not err in denying these claims. [Footnote: To the extent Moore contends that his appellate counsel were ineffective for not raising this matter on direct appeal, we conclude that he failed to demonstrate that it had a reasonable probability of success. *See* [*Kirksey*, 112 Nev. at 998, 923 P.2d at 1114].]

ECF No. 17-7 at 10–11. Moore does not show the state court's ruling to be contrary to, or an unreasonable application of, Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence.

The Court denies relief on these claims.

### f.    Trial Court's Failure to Conduct Inquiry in Response to Moore's Motion to Dismiss Trial Counsel

Next, Moore claims that "[t]he trial court failed to conduct any inquiry in response to Moore's motion to dismiss his counsel, even though Moore made serious and substantial claims against counsel." ECF No. 59 at 187; *see also*, *generally*, *id*. at 187–88. Moore makes this claim as a subpart of Claim 2, which asserts ineffective assistance of trial counsel in the guilt phase of the trial. But the trial court's inadequate inquiry into Moore's motion to dismiss his counsel would not satisfy the requirements of *Strickland* and establish ineffective assistance of counsel in violation of the federal constitution. *See Strickland*. At any rate, Moore withdrew his motion to dismiss his counsel before the trial court ruled on it. ECF No. 76-1 at 204. This claim of ineffective assistance of trial counsel is insubstantial and is denied.

In Claim 35, Moore claims that his appellate counsel was ineffective for not asserting, on his direct appeal, a claim that the trial court erred by failing to hold a hearing regarding Moore's motion to dismiss his trial counsel. ECF No. 59 at 408. That claim is meritless for the same reasons, and it is also denied.

### g.    Cumulative Effect of Trial Counsel's Ineffective Assistance in Guilt Phase

Moore claims that he is entitled to habeas corpus relief because of the cumulative effect of the errors committed by his trial counsel in the guilt phase of his trial. ECF No.

59 at 184, 189. Moore makes no specific argument with respect to this claim. The Court

determines that Moore makes no showing of prejudice from trial counsel's alleged errors,

whether considered individually or cumulatively.

### 3.    Claim 3

In Claim 3, Moore claims that his federal constitutional rights were violated

because the trial court denied the defendants' motion to sever. ECF No. 59 at 190–97.

Moore asserted a similar claim on his initial direct appeal. ECF No. 16-2 at 17–22.

However, there, Moore made no mention of any violation of his federal constitutional

rights. *Id*. Moore's claim on his direct appeal was that the trial court abused its discretion

under Nevada statutory law, primarily NEV. REV. STAT. § 174.165 and § 48.045. In that

claim Moore did cite two federal cases, as follows:

> In determining whether to grant severance, a Court must balance the
> possibility of prejudice to the defendant against the government's interest in
> judicial economy. *United States v. Sudderth*, 681 F.2d 990 (5th Cir. 1982).
> This balancing is entrusted to the sound discretion of the trial court but a
> decision not to sever will be overruled if an abuse of discretion is found. *Id*.
> In order to demonstrate abuse, the defense must show that a denial of
> severance caused defendant to suffer compelling prejudice. *Id*.; *see also*,
> *United States v. [Marszalkowski]*, 669 F.2d 655 (11th Cir. 1982). The
> Nevada Supreme Court has held that a defendant is entitled to severance
> where evidence introduced as to one defendant will be prejudicial to a co-
> defendant. *White v. State*, 83 Nev. 292, 429 P.2d 55 (1967); *Anderson v.
> State*, 81 Nev. 477, 406 P.2d 532 (1966).

ECF No. 16-2 at 17–18. But neither *Sudderth* nor *Marszalkowski* involved a claimed

violation of a constitutional right; the issue in both cases was whether the trial court

abused its discretion. *See Sudderth*, 681 F.2d at 996; *Marszalkowski*, 669 F.2d at 659–

61. Moore's citation of *Sudderth* and *Marszalkowski* was not such as to alert the Nevada

Supreme Court "to the fact that [he was] asserting claims under the United States

Constitution." *See Duncan*, 513 U.S. at 365. Moore did not give the Nevada Supreme

Court a fair opportunity to act on his federal constitutional claims. *See O'Sullivan*, 526

U.S. at 844. This claim was not exhausted on Moore's initial direct appeal.

1    Moore presented this claim on the appeal in his second state habeas action. ECF

2    No. 60-1 at 158–59. But that action was ruled procedurally barred. *Moore*, 134 Nev. 262,

3    417 P.3d 356 (2018).

4    Therefore, this claim is procedurally defaulted. Moore makes no showing to

5    overcome the procedural default. The substantive portion of Claim 3 is denied as

6    procedurally defaulted.

7    Moore asserts a claim of ineffective assistance of his trial counsel relative to Claim

8    3; that is, he claims that his trial counsel was ineffective for not effectively advocating for

9    severance. ECF No. 59 at 192; *see also id*. at 188–89. Moore raised this claim on the first

10    appeal in his first state habeas action. ECF No. 17-3 at 26. The Nevada Supreme Court

11    rejected the claim. ECF No. 17-7 at 9–10. Moore does not show—does not attempt to

12    show in fact (*see* ECF No. 166 (Moore's reply)—that the Nevada Supreme Court's denial

13    of the claim was contrary to, or an unreasonable application of, Supreme Court

14    precedent, or was based on an unreasonable determination of the facts in light of the

15    evidence. Applying the AEDPA standard of review, the Court denies this claim of

16    ineffective assistance of trial counsel.

17    Moore also asserts a claim of ineffective assistance of his appellate counsel

18    relative to Claim 3. He does so in Claim 35, by reference to Claim 3, without any

19    explanation or argument. ECF No. 59 at 413–14. Moore made such a claim of ineffective

20    assistance of appellate counsel, relative to the question of severance, on his first appeal

21    in his first state habeas action. ECF No. 17-3 at 14–15. The Nevada Supreme Court

22    denied relief, ruling that "Moore failed to show that had counsel invoked the United States

23    Constitution when raising his claims that they would have had any greater likelihood of

24    success on direct appeal." ECF No. 17-7 at 19. This ruling was not contrary to, or an

25    unreasonable application of, Supreme Court precedent, and was based on an

26    unreasonable determination of the facts in light of the evidence. Applying the AEDPA

27    standard of review, the Court denies this claim of ineffective assistance of appellate

28    counsel.

4.    Claim 4

In Claim 4, Moore claims that his federal constitutional rights were violated in the guilt phase of his trial because the trial court admitted coconspirator hearsay statements into evidence. ECF No. 59 at 198–202. In essence, Moore claims that his federal constitutional rights were violated as a result of the trial court's erroneous application of state evidentiary rules concerning the admission of coconspirator statements as an exception to the hearsay rule. *See* ECF No. 166 at 84–86.

"A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005). "[C]laims deal[ing] with admission of evidence" are "issue[s] of state law," *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), and "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Therefore, the issue before this court is "whether the state proceedings satisfied due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991). For the admission of evidence to provide a basis for habeas relief, the evidence must have "rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67).

Moore asserted this claim on his initial direct appeal. ECF No. 16-2 at 23–27. The Nevada Supreme Court denied relief on the claim. *Moore*, 104 Nev. at 114, 754 P.2d at 841. Moore does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, Supreme Court precedent, or to be based on an unreasonable determination of the facts in light of the evidence. The evidence Moore complains of was not such as to render his trial fundamentally unfair in violation of due process. Applying the AEDPA standard of review, the Court denies this claim.

Moore asserts a related claim of ineffective assistance of trial counsel, claiming his trial counsel was ineffective in the guilt phase of his trial in challenging the admission of coconspirator hearsay statements. ECF No. 59 at 135, 147–50. Moore raised this claim—albeit obliquely—on his first appeal in his first state habeas action. *See* ECF No. 17-2 at

9. The Nevada Supreme Court rejected the claim. ECF No. 17-7 at 9–10. Moore does not show that the Nevada Supreme Court's denial of this claim was contrary to, or an unreasonable application of, Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence. The Court denies this claim of ineffective assistance of trial counsel.

Moore also asserts a claim of ineffective assistance of appellate counsel relative to Claim 4. ECF No. 59 at 202; *see also id*. at 414. Moore did not assert this claim on his first appeal in his first state habeas action. *See* ECF No. 17-3 at 15. The claim is procedurally defaulted, and Moore makes no showing to overcome the procedural default. This claim of ineffective assistance of appellate counsel relative to Claim 4 is denied as procedurally defaulted.

5.    Claim 5

In Claim 5, Moore claims his federal constitutional rights were violated in the penalty phase of his trial because the court prevented Moore from confronting Johnny Ray Luckett. ECF No. 59 at 203–05. And Moore claims that both his trial and appellate counsel were ineffective relative to this issue. *Id* at 205; *see also id*. at 64, 413.

Luckett testified in the guilt phase of the trial, and he was subjected to cross-examination. ECF Nos. 82-2, 84-1 at 3–125. There is no indication that Moore's opportunity to cross-examine Luckett was limited in any manner. Luckett did not testify at Moore's third penalty hearing; rather, the trial court ruled that, if the parties could not agree about what portions of Luckett's guilt phase testimony the jury would hear, his testimony would be read into the record, leading the parties to stipulate to what portions of his testimony would be presented. ECF No. 95-7 at 8–17. Moore's counsel stated, regarding the stipulation: "It's our position that reading the entire testimony of all those witnesses [including Luckett] is the worst of all the alternatives and therefore…." *Id*. at 12; *see also id*. at 16 (trial court, referring to Moore's decision to enter stipulation, stated that "it's a tactical decision").

There is no indication that Moore asserted this claim in any state court proceeding that was not procedurally barred. *See* ECF No. 166 at 86 (Moore acknowledges the substantive part of Claim 5 was not adjudicated on its merits in state court). The substantive part of Claim 5 is procedurally defaulted, and Moore makes no showing to overcome the procedural default. This claim is denied as procedurally defaulted.

Moore raised the ineffective assistance of counsel parts of Claim 5, both the claim of ineffective assistance of trial counsel and the claim of ineffective assistance of appellate counsel, on his second appeal in his first state habeas action. ECF No. 2-4 at 70. The Nevada Supreme Court denied relief on the ineffective assistance of trial counsel claim, ruling:

> Moore argues that counsel should have objected to the admission of … the prior testimony of several State witnesses, and unidentified hearsay evidence. His arguments lack merit on the grounds that they are irrelevant because they relate to the guilt phase of trial or are inadequately supported by facts or legal authority. *Jones v. State*, 113 Nev. 454, 468, 937 P.2d 55, 64 (1997) (summarily rejecting claim unsupported by argument or legal authority).

ECF No. 18 at 10. The Nevada Supreme Court also denied relief on the ineffective assistance of appellate counsel claim, ruling:

> Moore contends that appellate counsel should have raised nearly all of the substantive trial errors underlying his ineffective-assistance-of-trial-counsel claims discussed above. We disagree. All of the underlying trial errors would have been reviewed for plain error and because he failed to demonstrate ineffective assistance of trial counsel, appellate counsel's performance cannot be said to have been deficient for failing to raise unpreserved error. Nor does it appear that any of those underlying claims could be considered plain error.

*Id*. at 15–16. Moore does not show the Nevada Supreme Court's rulings on these claims to be contrary to, or an unreasonable application of, Supreme Court precedent, or to be based on an unreasonable determination of the facts in light of the evidence. The Court denies relief on the ineffective assistance of counsel claims relative to Claim 5.

        6.    Claim 6

In Claim 6, Moore claims that his federal constitutional rights were violated because the State suppressed exculpatory evidence and impeachment evidence related

to witness Angela Saldana, and because the State presented false testimony of Saldana. ECF No. 59 at 206–33. Moore also claims that his trial counsel was ineffective for not discovering the exculpatory and impeachment evidence and for not adequately cross-examining Saldana. *Id*. at 233; *see also id*. at 169.[32]

Moore alleges he exhausted this claim in state court in his second state habeas action. *Id*. at 38.[33] In its order on the appeal in that case, the Nevada Supreme Court ruled as follows:

Moore claims that the State violated *Brady* [303 U.S. 83 (1963)] by failing to disclose evidence that would have impeached a witness who testified at his trial, Angela Saldana. [Footnote: Moore also argues that first postconviction counsel was ineffective for failing to uncover the evidence supporting his *Brady* claim. However, he provides no explanation as to how a reasonable postconviction attorney would have uncovered the evidence, and for the reasons explained below, the *Brady* claim fails.] There are three components to a successful *Brady* claim: "the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material." *Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000). When a *Brady* claim is raised in the context of a procedurally barred postconviction petition, the petitioner has the burden of demonstrating good cause for his failure to present the claim earlier and actual prejudice. *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003). As a general rule, "[g]ood cause and prejudice parallel the second and third *Brady* components; in other words, proving that the State withheld the evidence generally establishes cause, and proving that the withheld evidence was material establishes prejudice." *Id*.

Before discussing this claim in more detail, we note that it is inadequately pleaded. Before trial, the parties knew that Saldana had been working with law enforcement and her uncle, Robert Peoples, in order to obtain information about the murders. Since then, Moore has consistently challenged Saldana's role in the case. Although he alleges in his opening brief that he has recently discovered new facts putting the claim in a different light, he fails to identify with specificity which facts this court previously considered and which facts are new. Moore actually asserts that he is under *no obligation* to "distinguish between 'new' facts and facts which were known and previously presented." He is mistaken, as he bears the burden of demonstrating that relief is warranted, which means he must explain why he is raising this claim again, or if it is new, why he did not raise it sooner. *See* Nev. Rev. Stat. § 34.810; Nev. Rev. Stat. § 34.810(1)(b). He also bears the burden of demonstrating that the district court erred, which means he must demonstrate that the State withheld material evidence and

---

[32] Moore moves for leave to conduct discovery and an evidentiary hearing regarding Claim 6. ECF Nos. 168, 170. The Court denies those motions. *See* discussion at Part III.E., *supra*.

[33] In his first amended petition, Moore alleged he exhausted Claim 6, "in part" in his first state habeas action. ECF No. 15 at 19. Moore apparently abandoned that allegation.

that he raised the claim within a reasonable time. *State v. Huebler*, 128 Nev. 192, 198 n.3, 275 P.3d 91, 95 n.3 (2012). Meeting these burdens requires being forthright: a party cannot force the district court to hold an evidentiary hearing by withholding information about a claim. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984) (recognizing that a petitioner is entitled to an evidentiary hearing regarding his claim if it is not belied by the record and, if true, would warrant relief).

Moore provided some clarity at oral argument in this court. Considering those assertions along with those raised in his opening brief, what forms the basis of his *Brady* claim is apparently the notion that rather than being a willing participant in the investigation into Moore's codefendant as previously believed, Saldana was forced to participate against her will and was fed information by Peoples, who had access to police reports. Assuming, without deciding, that Moore raised this claim within a reasonable time, we nevertheless conclude that he fails to demonstrate that relief is warranted.

Accepting Moore's assertions as true, evidence that Peoples coached and coerced Saldana's testimony constitutes favorable evidence, *see United States v. Scheer*, 168 F.3d 445, 449 (11th Cir. 1999) (holding that by "withholding information regarding the prosecutor's threatening remarks to a key prosecution witness, the government failed to divulge material impeachment evidence that was, in essence, exculpatory by virtue of its ability to cast substantial doubt on the credibility of the witness"); *see also Hunter v. State*, 29 So.3d 256, 269 (Fla. 2008) (evidence that the State threatened a witness with a life sentence if she failed to testify against the defendant satisfied the first two prongs of *Brady*), in the State's possession. [Footnote: We note that Moore summarily concludes that the State possessed this evidence because "an investigator with the Clark County District Attorney's office was very involved with Mr. Peoples in coercing Ms. Saldana," but he admits that the investigator was not involved at all stages of the alleged coercion campaign and that the investigator and the other actors involved were acting outside of their official capacities. Nevertheless, because the district court did not hold an evidentiary hearing on this claim, we will assume that the evidence was in the State's possession.] However, we conclude that the allegedly withheld evidence is not material. Moore asserts that the evidence was material because the State needed Saldana's testimony to corroborate the other witnesses' testimony pursuant to Nev. Rev. Stat. § 175.291 (requiring corroboration for accomplice testimony). But an accomplice is defined as one who is liable for the identical offense charged against the defendant, Nev. Rev. Stat. § 175.291(2), and several of the witnesses who testified against Moore are not liable for first-degree murder; further, impeaching Saldana would not have eliminated her testimony, and therefore, it still could have been used to corroborate the other witnesses.

Regardless, materiality for the purposes of *Brady* focuses on whether the withheld evidence might create a reasonable doubt in the mind of the jury, *Wearry v. Cain*, [577 U.S. 385, 392–93], 136 S. Ct. 1002, 1006, 194 L.Ed.2d 78 (2016) ("Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." (internal quotation marks omitted)); *Huebler*, 128 Nev. at 202, 275 P.3d at 98 ("Normally, evidence is material if it creates a reasonable doubt." (internal quotation marks omitted)), not whether it implicates a state statute requiring corroboration. Applying that test, Moore's claim still fails.

41

Saldana's secondhand testimony was not a crucial part of the State's case. In contrast, numerous witnesses testified that they observed Moore plan, commit, and confess to the murders, including witnesses who participated in the killings. *See generally Turner v. United States*, [582 UI.S. 313, 325–27], 137 S. Ct. 1885, 1894, 198 L.Ed.2d 443 (2017) (concluding that withheld evidence was not material when it would have required the jury to believe that two witnesses falsely confessed even though their testimony was "highly similar" to that of other witnesses). Impeaching Saldana would not have undermined this testimony. In light of this, Moore seems to acknowledge that he played a role in the crime and that the jury would have so concluded even if the allegedly withheld evidence was presented to impeach Saldana, but he argues that it might have led to a different penalty determination because it might have caused the jury to doubt the *level* of his involvement or the *motive* behind the murders. Moore fails to demonstrate that the withheld evidence would have affected the outcome of the penalty hearing as it does not affirmatively undermine the evidence presented to the jury as to Moore's involvement, the motive for the murders, or the aggravating circumstances.

> For all of these reasons, we conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

*Moore*, 134 Nev. at 263–66, 417 P.3d at 359–60 (emphasis in original).

While the Nevada Supreme Court determined that Moore's *Brady* claim was procedurally barred, the court did so by applying an analysis that mirrored the merits of the *Brady* claim itself. The Supreme Court has held that determining cause and prejudice to excuse the procedural default of a *Brady* claim "parallel[s] two of the three components of the alleged *Brady* violation itself." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Suppression of evidence constitutes cause, and a determination that the evidence was "'material' for *Brady* purposes" satisfies the prejudice portion of the test to overcome procedural default. *Id*. The Court determines, therefore, that Claim 6 is not subject to the procedural default doctrine. *See Cooper v. Neven*, 641 F.3d 322, 333 (9th Cir. 2011). Rather, because the Nevada Supreme Court, in essence, addressed the merits of the claim, this Court applies the AEDPA standard here. The Court determines that the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent, and that it was not based on an unreasonable determination of the facts in light of the evidence.

The Court disagrees with Moore's assertion that the Nevada Supreme Court applied the wrong materiality standard. The Nevada Supreme Court began its discussion

of the standard by stating: "[M]ateriality for the purposes of *Brady* focuses on whether the withheld evidence might create a reasonable doubt in the mind of the jury, *Wearry v. Cain*, [577 U.S. 385, 392–93], 136 S. Ct. 1002, 1006, 194 L.Ed.2d 78 (2016) ("Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." (internal quotation marks omitted))...." *Moore*, 134 Nev. at 265, 417 P.3d at 360.

The Nevada Supreme Court rejected Moore's argument that the State needed Saldana's testimony to corroborate the other witnesses' testimony pursuant to Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. § 175.291 (requiring corroboration for accomplice testimony). *Moore*, 134 Nev. at 265, 417 P.3d at 360. The court explained that "an accomplice is defined as one who is liable for the identical offense charged against the defendant, Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. § 175.291(2), and several of the witnesses who testified against Moore were not liable for first-degree murder." *Id*. Also the court noted that "impeaching Saldana would not have eliminated her testimony, and therefore, it still could have been used to corroborate the other witnesses." *Id*. This was a ruling on a matter of state law—construction of Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. § 175.291(2)—and it is beyond the scope of this federal court's habeas corpus review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Estelle*, 502 U.S. at 67–68; *Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995).

Affording the Nevada Supreme Court's ruling the deference required under the AEDPA, the Court determines that it is arguable by fairminded jurists that, considering the evidence of Moore's guilt presented at trial, "Saldana's secondhand testimony was not a crucial part of the State's case," and was not material. *See Moore*, 134 Nev. at 265, 417 P.3d at 360. The *Brady* claim in Claim 6 is denied.

Moore did not, in either his first or second state habeas action, assert the claim under *Napue* that the prosecution presented false testimony of Saldana. That claim is

procedurally defaulted, and Moore makes no showing that he can overcome the

procedural default. Moore's *Napue* claim in Claim 6 is denied as procedurally defaulted.

Turning to Moore's ineffective assistance of trial counsel claim in Claim 6, Moore

concludes his statement of Claim 6 as follows:

> Insofar as trial counsel, during the guilt and penalty phases, could
> have learned about the relationship between Peoples, Avants, and
> Saldana, counsel was deficient. Additionally, counsel was deficient in failing
> to cross-examine Saldana on the numerous inconsistencies, referenced
> above, in her statements. There is a reasonable probability that, had
> counsel not acted deficiently, the result would have been different. This is
> especially so of penalty-phase counsel, who failed to cross-examine
> Saldana at all.

ECF No. 59 at 233. Then, in his reply, Moore states simply:

> Assuming this Court finds that this evidence was not suppressed, it
> necessarily follows that trial counsel was ineffective for failing to learn of it.
> And, because Saldana's testimony was crucial for the State's case, trial
> counsel's deficient performance was prejudicial.

ECF No. 166 at 95.

Moore raised a claim regarding trial counsel's alleged failure to investigate

Saldana on the second appeal in his first state habeas action, but only in a conclusory

manner and without the same supporting evidence that he proffers now. *See* ECF No. 2-

4, 41–42. The Nevada Supreme Court reasonably rejected the claim as presented on

that appeal. *See* discussion at Parts III.G.1.c. and III.G.2.b., *supra.*

Moore alleges that he exhausted this ineffective assistance of trial counsel claim

on the appeal in his second state habeas action. ECF No. 59 at 38. But, in that action,

the claim was ruled procedurally barred, and it is, therefore, subject to the procedural

default doctrine in this federal habeas action. Moore does not make a showing of cause

and prejudice under *Martinez* to overcome the procedural default. The ineffective

assistance of counsel claim in Claim 6 is denied as procedurally defaulted.

       7.    Claim 7

In Claim 7, Moore claims that his federal constitutional rights were violated

because of the State's payment of money and provision of other inducements to

witnesses John Lucas, Rusty Havens and Angela Saldana. ECF No. 59 at 234–35.

Moore also claims that his trial counsel was ineffective for failing to object to the

admission of the testimony of those witnesses, and that his appellate counsel was

ineffective for not raising this issue on appeal. *Id*. at 235, 410.

Moore claims:

> Claim Seven was exhausted when Moore fairly presented it in his 2006 Opening Brief. ECF No. 17-1 at 25–26; 17-2 at 29–31. Moore also fairly presented it in his 2010 Opening Brief. ECF No. 2-4 at 41. This claim was also fairly presented in his 2015 Opening Brief. Ex. 416 at 134.

*Id*. at 38. All three of those briefs were filed in appeals from denial of post-conviction relief

in state habeas cases: Moore's "2006 Opening Brief" was filed on his first appeal in his

first state habeas action; his "2010 Opening Brief" was filed on his second appeal in his

first state habeas action; and his "2015 Opening Brief" was filed on his appeal in his

second state habeas action. Moore could not have properly raised the substantive claim

in Claim 7 in those state habeas actions. The substantive claim in Claim 7 is procedurally

defaulted, and Moore does not make any showing to overcome the procedural default.

The claim is denied on that ground.

Moore asserted the ineffective assistance of trial counsel claim related to Claim 7

on the second appeal in his first state habeas action (ECF No. 2-4 at 41–42), and the

Nevada Supreme Court ruled, as follows:

> Moore argues that counsel should have challenged three State witnesses on the ground that the State paid them or provided inducements for their testimony. However, the witnesses were cross-examined about those matters, and Moore fails to identify what else counsel should have done. And, nothing in the record supports his allegation that the witnesses received payments and benefits for specific testimony.

ECF No. 18 at 10. Moore does not show the Nevada Supreme Court's ruling to be

contrary to, or an unreasonable application of, Supreme Court precedent, or to be based

on an unreasonable determination of the facts in light of the evidence. The Court denies

relief on this claim of ineffective assistance of trial counsel.

Moore also asserted the ineffective assistance of appellate counsel claim in Claim 7 on the second appeal in his first state habeas action. ECF No. 2-4 at 41–42. The Nevada Supreme Court denied relief. ECF No. 18 at 15–16. That ruling also was reasonable. Applying the AEDPA standard, the Court denies relief on this ineffective assistance of appellate counsel claim.

### 8.     Claim 8

In Claim 8, Moore claims that his federal constitutional rights were violated because, in the third penalty hearing, the State elicited testimony of John Lucas suggesting he was intimidated because of his testimony. ECF No. 59 at 236–37.[34] Specifically, Moore points to the following testimony by Lucas:

Q:     Do you know what a snitch jacket is?

A:     Oh, yeah.

Q.     Tell the ladies and gentlemen of the jury what a snitch jacket is and particularly how it applies to you in this particular case.

A.     It's like telling on your good friends for a crime they committed. When you're in prison that's a very dangerous thing to do.

Q:     Telling on your friends for a crime they committed is a dangerous thing to do if you're going to prison?

A:     Yes.

Q:     Why[?]

A:     The other inmates don't really like that very much.

Q:     Will they retaliate?

A:     Yes. I did my last seven months locked up in the PC unit.

Q:     PC? What is that?

A:     Protective custody.

Q:     Protective custody?

A:     Yes.

---

[34] In the introductory paragraph of the claim, Moore states the claim in Claim 8 exactly as he states Claim 7 ("because of the State's payment of money and other inducements to key witnesses"). The Court assumes this is a drafting mistake.

Q:    For that very reason?

A:    Yes.

Q:    You and the prison officials were worried about your safety among the other inmates?

A:    Yes. I got word that something might happen.

ECF No. 99-1 at 82–83. Moore argues that Lucas's testimony conveyed an "implication that Moore was responsible for this." ECF No. 166 at 108.

Moore asserted a similar claim on the direct appeal following his third penalty hearing. ECF No. 16-10 at 36–38.[35] The Nevada Supreme Court rejected the claim without analysis. *Flanagan IV*, 112 Nev. at 1423, 930 P.2d at 700. The Nevada Supreme Court's ruling was reasonable. Fairminded jurists could argue that Lucas's testimony did not suggest that Moore, or Flanagan, had threatened or intimidated him, but only that other inmates in prison do not like snitches and might have harmed him. Indeed, on Moore's second appeal in his first state habeas action, in ruling on a claim of ineffective assistance of counsel, the Nevada Supreme Court determined just that:

> Moore contends that counsel should have filed a motion in limine or objected to John Lucas' testimony that Moore or Flanagan threatened him. The premise underlying this claim is belied by the record—Lucas did not testify that Moore or Flanagan threatened him. Lucas' testimony that he learned that something might happen to him because he was testifying against his friends and that inmates do not like "snitches" did not implicate Moore or Flanagan and was admissible to bolster Lucas' credibility after the defense challenged his credibility on cross-examination. *See Wesley v. State*, 112 Nev. 503, 513, 916 P.2d 793, 800 (1996).

ECF No. 18 at 9–10.[36] Moore does not show the Nevada Supreme Court's ruling on the claim that is here Claim 8 to be contrary to, or an unreasonable application of, Supreme Court precedent, or to be based on an unreasonable determination of the facts in light of the evidence. The Court denies relief on the substantive claim in Claim 8.

---

[35] It is questionable whether that claim was presented as an alleged federal constitutional violation. *See* ECF No. 16-10 at 36–38. But the parties appear to agree that it was, so the Court treats it as such. *See* ECF No. 59 at 38; ECF No. 166 at 108–09; ECF No. 180 at 52.

[36] The Court does not understand Moore to assert a claim of ineffective assistance of trial counsel related to this testimony. *See* ECF No. 59 at 45–127; *id.* at 236–37.

Moore asserts a claim of ineffective assistance of his appellate counsel relative to Claim 8. ECF No. 59 at 413–14. He does so in Claim 35 by cross-referencing Claim 8 and claiming that "[w]here counsel did raise issue on appeal, counsel was deficient in failing to adequately support those arguments." *Id*. at 413. He provides no further explanation. The Nevada Supreme Court rejected this claim on the second appeal in Moore's first state habeas action. ECF No. 18 at 15–16. That ruling was reasonable. Applying the AEDPA standard, the Court denies relief on the ineffective assistance of appellate counsel claim related to Claim 8.

### 9.    Claim 9

In Claim 9, Moore claims his federal constitutional rights were violated because the prosecutors committed misconduct in arguments to the jury. ECF No. 59 at 238–53.

#### a.    Prosecution Arguments in Guilt Phase

In the first part of Claim 9, Moore claims that the prosecutors committed misconduct in arguments to the jury in the guilt phase of his trial. ECF No. 59 at 238–45. Moore claims the prosecutors committed misconduct in opening statements by presenting argument rather than a factual statement, by invoking the prestige of their position, and "by playing upon the emotions of the jury by presenting colorful descriptions that were wholly unsupported by any testimony that would be introduced during trial." *Id*. at 238–39. Moore claims that during closing arguments the prosecutors committed misconduct by making "improper references to beliefs and activities protected by the First Amendment," *id*. at 239–40; "by exploiting the trial court's failure to sever the co-defendants and by disparaging trial counsel," *id*. at 240; "by commenting about Moore's failure to take the stand," *id*. at 241; by "using facts not in evidence," *id*. at 241–42; by expressing their personal opinions regarding facts, *id*. at 242; by expressing personal opinions regarding the law and by making misstatements of law, *id*. at 242–43; by touting their experience, *id*. at 243; by "[inflaming] the passions of the jury by providing lurid descriptions of the crime," *id*. at 244; by "characterizing crime as an adventure," *id*.; and by "[indicating] to the jury that it had promised to convict Moore," *id*.

In his second amended petition—without distinguishing among his claims of misconduct in argument in the guilt phase, misconduct in argument in the penalty phase, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel—Moore alleges that he exhausted Claim 9 in state court when he "fairly presented it in his 2006, 2010, and 2015 Opening Briefs." *Id*. at 38. But Moore could not have properly raised the substantive claims of prosecutorial misconduct in those state habeas actions.[37] In his reply, Moore changes his position, and argues that, on his first direct appeal, from the guilt phase of his trial, "the Nevada Supreme Court held that there was misconduct, but that it was harmless," and that this "was an unreasonable application of clearly established federal law." ECF No. 166 at 110–11. On that direct appeal, though, Moore's claim of prosecutorial misconduct in argument in the guilt phase was far narrower than it is in Claim 9; his claim there was only that the prosecutor "commented on the failure of some defendants, including Randolph Moore, to take the stand...." ECF No. 16-2 at 39. The Nevada Supreme Court rejected that claim. *Moore*, 104 Nev. at 114, 754 P.2d at 841. As is discussed in the following section, Part III.G.10., the Nevada Supreme Court's ruling was reasonable.

Beyond the limited claim of prosecutorial misconduct in guilt-phase argument that he asserted on his direct appeal, the substantive claims of guilt-phase prosecutorial misconduct in Claim 9 are procedurally defaulted, and Moore does not make any showing to overcome the procedural defaults; those claims are denied on that ground.

In Claim 9, Moore also asserts—in a conclusory fashion, without any analysis—related claims of ineffective assistance of trial and appellate counsel:

> To the extent that trial and/or appellate counsel should have raised these challenges to the misconduct earlier, there is a reasonable possibility that but for counsel's ineffective assistance the result would have been different.

---

[37] to the extent this claim of prosecutorial misconduct in the guilt phase can be considered raised and decided on its merits on Moore's direct appeal following the third penalty hearing—an argument Moore does not make—the Nevada Supreme Court's ruling denying relief on the claim (*Flanagan IV*, 112 Nev. at 1417–20, 930 P.2d at 696–98) was reasonable within the meaning of 28 U.S.C. §2254(d). *See* discussion at Part III.G.13., *infra*.

ECF No. 59 at 245; *see also id*. at 173 (Claim 2, incorporating Claim 9 by reference); *id*. at 412 (Claim 35, incorporating Claim 9 by reference). Moore asserted these claims of ineffective assistance of trial and appellate counsel, regarding counsel's handling of alleged prosecutorial misconduct in guilt-phase arguments, on his first appeal in his first state habeas action. ECF No. 17-2 at 32–41. The Nevada Supreme Court denied relief. ECF No. 17-7 at 11–13. Affording the Nevada Supreme Court the deference required under 28 U.S.C. § 2254(d), this Court determines that the Nevada Supreme Court's ruling was reasonable and denies relief on these ineffective assistance of counsel claims.

b.    Prosecution Arguments in Penalty Phase

In the second part of Claim 9, Moore claims that the prosecutors committed misconduct in their arguments to the jury in the penalty phase of his trial. ECF No. 59 at 245–53. Specifically, Moore claims that the prosecutors made arguments meant to inflame the passions and emotions of the jurors, *id*. at 245–46; expressed their personal opinions, *id*. at 246–48; told the jury to consider the sentences of Moore's co-defendants, *id*. at 248; misstated the law and misled the jury about important legal concepts, *id*. at 248–49; "argued that Moore should be executed to cure societal wrongs," *id*. at 249–51; and "invoked religious authority and mocked Moore's spiritual beliefs," *id*. at 252.

Moore did not assert these claims of prosecutorial misconduct on his direct appeal following his third penalty hearing. *See* ECF No. 16-10. This part of Claim 9 is procedurally defaulted, and Moore does not make any showing to overcome the procedural default; the claim is denied on that ground.

Moore also asserts—here again, in a conclusory fashion, without any analysis— related claims of ineffective assistance of trial and appellate counsel:

> To the extent that trial and/or appellate counsel should have raised these challenges to the misconduct earlier, there is a reasonable possibility that but for counsel's ineffective assistance, the result would have been different.

ECF No. 59 at 252–53; *see also id*. at 64; *id*. at 412.

Moore asserted this claim of ineffective assistance of trial counsel on his second appeal in his first state habeas action (ECF No. 2-4 at 24, 53–59), and the Nevada Supreme Court denied relief on the claim:

> As to alleged improper argument during the third penalty hearing, Moore has done nothing more than quote roughly 43 excerpts and designated them as improper argument, providing absolutely no legal authority or analysis to support any of his allegations. Although we are not obligated to consider claims presented in this manner, *see* [*Jones v. State*, 113 Nev. 454, 468, 937 P.2d 55, 64 (1997)] (summarily rejecting claim unsupported by argument or legal authority); *Sheriff v. Gleave*, 104 Nev. 496, 498, 761 P.2d 416, 418 (1988) (observing that "[t]his court need not consider assignments of error that are not supported by relevant legal authority"), we have reviewed the challenged arguments and conclude that counsel's failure to object to them was not deficient or, if deficient, not prejudicial.

ECF No. 18 at 11. Applying 28 U.S.C. § 2254(d), this Court determines that the Nevada Supreme Court's ruling was reasonable, and the Court denies relief.

On his second appeal in his first state habeas action, Moore asserted his claim of ineffective assistance of appellate counsel relative to alleged prosecutorial misconduct in arguments in the penalty phase. ECF No. 2-4 at 27–28, 53–59. The Nevada Supreme Court denied relief. ECF No. 18 at 15–16. Here too, applying the AEDPA standard, this Court denies relief.

          10.    Claim 10

In Claim 10, Moore asserts that his federal constitutional rights were violated in the guilt phase of his trial because the prosecutor, and counsel for one of his co-defendants, commented on his silence. ECF No. 59 at 254.[38]

---

[38] Moore does not assert a claim of ineffective assistance of trial counsel specifically related to the prosecutorial misconduct alleged in Claim 10. *See* ECF No. 59 at 254. To the extent that Moore asserts ineffective assistance of trial counsel claims regarding, generally, Moore's counsel's handling of prosecutorial misconduct in opening statements and closing arguments in the guilt phase (*see id.* at 245, 412), those claims are addressed in the discussion in Part III.G.9., *supra*. Regarding his appellate counsel, Moore claims that "[w]here counsel did raise issue on appeal, counsel was deficient in failing to adequately support those arguments," and he "incorporates by reference" the allegations in Claim 10. *Id.* at 413–14. There is no showing that Moore ever properly raised this claim of ineffective assistance of counsel in state court; it is procedurally defaulted and the Court denies the claim on that ground.

Moore points to the following comment made by a prosecutor in closing argument:

No one has taken the stand in this case that I remember, no one has taken the stand and said, "Wait a minute. Those people are lying. Those meetings didn't take place."

ECF No. 86-1 at 26. In its larger context, the comment was as follows:

[Mr. Seaton (prosecutor):]  And then most importantly about November 5th is the meeting that took place later that night with everyone present. So there were many, many meetings.

Was there an agreement that took place in those meetings? Well, again, by hindsight we are able to look back, take everybody's testimony in and decide for ourselves what the agreement was.

Well, it's plain and simple what the overriding tenor of this agreement was. The agreement was that this group of people was going to go over to the Gordons' house and they were going to kill the Gordons for the inheritance.

*    *    *

And there were many people who testified about that. This isn't something I am just dreaming up or trying to rely on one of the State's witnesses to convince the 12 of you who ill deliberate the case.

A lot of people said it. There were four people who were present when these things were talked about, who sat on that stand right there and they told you that they heard these things.

Rusty Havens who was going to be one of them, but for the grace of God he is sitting at that table. For some reason, they didn't get ahold of him and bring him back into this thing.

Tom Akers, John Lucas and one of our defendants, Johnny Ray Luckett. They all sat on the stand and they all told you the same story.

*    *    *

So we have four people who were there and heard the words spoken. Actually, a fifth, Dale Flanagan, as told through the sixth, Angela Saldana.

Now, this is where I want to throw in a little bit of interjection. I want to talk about people and perceptions. I want to talk about people and perceptions and credibility and believability and there is an instruction and you can rest assured that the defense attorneys are going to stand before you and they are going to slander to the best of their ability every one of those witnesses who testified against their interests.

*    *    *

> But the point I want to make to you is that for all the slander that will be thrown out at various witnesses, remember one thing, they are consistent in many respects.
>
> This agreement is one of them. They all said the same thing. Did all of these people meet down the hallway here in another conspiracy and say, "Look, we got to get these guys and so let's get together and make our stories straight"?
>
> That was never brought out. They all told the same thing and four of them were there. And the last point to be made about whether or not conspiracies occurred is that the conspiracies, the agreements, the meetings go uncontradicted.
>
> No one has taken the stand in this case that I remember, no one has taken the stand and said, "Wait a minute. Those people are lying. Those meetings didn't take place."

*Id*. at 21–26. Moore's counsel interrupted, apparently objecting. *Id*. at 26. The judge overruled the objection (albeit inartfully: "I don't think Mr. Seaton did not indicate the defendants did not take the stand."). *Id*.

Moore also points to comments made in opening statements by counsel for one of Moore's co-defendants, Johnny Ray Luckett, telling the jury that Luckett would testify, and stating: "What I do want you to know is that you will have the chance to look him [Luckett] in the eye, and the State will have the chance to cross-examine him." ECF No. 79-3 at 42–43. Luckett's counsel added: "I would submit Akers and Luckett will be the two most credible witnesses to testify in this courtroom." *Id*. at 43.

Moore alleges that he exhausted the claims in Claim 10 in state court on his initial direct appeal. ECF No. 59 at 38.[39] Moore did in his opening brief on that appeal make a brief, one-sentence allegation that the prosecutor "commented on the failure of some defendants, including Randolph Moore, to take the stand…." ECF No. 16-2 at 39. The Nevada Supreme Court rejected that claim, stating: "We have carefully examined Moore's remaining assignments of error concerning the judgment of conviction and find

---

[39] Moore also alleges that he raised this claim on his second appeal in his first state habeas action and on his appeal in his second state habeas action. ECF No. 59 at 38. But on his second appeal in his first state habeas action, Moore did not properly raise this claim of prosecutorial misconduct. Moore properly asserted only claims of ineffective assistance of counsel on that appeal. Moore's second state habeas action was ruled procedurally barred.

them to be without merit." *Moore*, 104 Nev. at 114, 754 P.2d at 841. The Nevada Supreme Court provided no analysis specific to the claim. *See id*.

Moore argues in his reply that the Nevada Supreme Court's ruling was an unreasonable application of *Griffin v. California*, 380 U.S. 609 (1965). ECF No. 166 at 113–14. But *Griffin* involved arguments by a prosecutor to a jury commenting explicitly on the defendant's election not to testify:

> Petitioner had been seen with the deceased the evening of her death, the evidence placing him with her in the alley where her body was found. The prosecutor made much of the failure of petitioner to testify:

> *    *    *

> "These things he [the defendant/petitioner] has not seen fit to take the stand and deny or explain.

> "And in the whole world, if anybody would know, this defendant would know.

> "Essie Mae is dead, she can't tell you her side of the story. The defendant won't."

*Griffin*, 380 U.S. at 610–11. The Nevada Supreme Court could reasonably have concluded that the issue in this case is different, that the prosecutor's statements at issue here—" No one has taken the stand in this case that I remember, no one has taken the stand and said, 'Wait a minute. Those people are lying. Those meetings didn't take place.'"—were not comments on Moore's silence, but rather were comments on the testimony of witnesses who testified about the conspiracy to kill the Gordons. Applying the AEDPA standard, this Court determines that the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent. The Court denies relief on this part of Claim 10 on that ground.

The part of Claim 10 regarding comments made in opening statements by Luckett's counsel is procedurally defaulted, and Moore does not make any showing to overcome the procedural default. That part of Claim 10 is denied as procedurally defaulted.

In Claim 35, Moore asserts, by reference to Claim 10, a claim that his appellate counsel was ineffective for not effectively presenting on appeal the claim in Claim 10. Moore does not demonstrate that he ever properly presented this claim of ineffective assistance of his appellate counsel in state court. The claim is procedurally defaulted and Moore does not make a showing to overcome the procedural default. The claim is denied as procedural defaulted.

11.    Claim 11

In Claim 11, Moore claims that his federal constitutional rights were violated in the penalty phase of his trial because of prosecutorial misconduct and trial court error in admitting evidence of the life sentences received by two of Moore's co-defendants, Johnny Ray Luckett and Roy McDowell. ECF No. 59 at 255–56.[40]

Moore alleges that he exhausted this claim in state court on his direct appeal following his third penalty hearing and on the appeal in his second state habeas action. *Id*. at 38.

Moore did assert a similar claim on his direct appeal following his second penalty hearing. ECF No. 16-4 at 30–32. The Nevada Supreme Court denied relief on that claim, ruling as follows:

> Flanagan and Moore … contend that the district court's allowance of testimony regarding the sentences of the other four co-defendants violated their Eighth Amendment rights to have the jury consider their individual characters and records and the circumstances of their particular crimes. *See Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). Appellants cite authority from several other jurisdictions in support of their argument that the prosecution should not have been allowed to introduce and argue this evidence. *See, e.g., People v. Belmontes*, 45 Cal.3d 744, 248 Cal.Rptr. 126, 755 P.2d 310 (1988).
>
> At trial, the district court allowed testimony by one of the prosecutors from the original trial and penalty hearing. The prosecutor testified that co-

---

[40] Moore does not assert a claim of ineffective assistance of trial counsel related to the substantive claim in Claim 11. *See* ECF No. 59 at 255–56; *see also id*. at 45–127. Regarding his appellate counsel, In Claim 35, Moore claims that "[w]here counsel did raise issue on appeal, counsel was deficient in failing to adequately support those arguments," and he incorporates Claim 11 by reference. *Id*. at 413–14. This claim of ineffective assistance of appellate counsel is procedurally defaulted, and Moore makes no showing to overcome the procedural default; it is denied on that ground.

defendant Johnny Ray Luckett had received four consecutive sentences of life without the possibility of parole, and that co-defendant Roy McDowell had received four consecutive sentences of life with the possibility of parole.

We conclude that the district court did not err in allowing the testimony about the sentences of the other co-defendants. The evidence was admissible under NRS 175.552 as "any other matter which the court deems relevant...." Furthermore, the jury was instructed that it was not bound by the previous sentences. We believe that it was proper and helpful for the jury to consider the punishments imposed on the co-defendants. *See State v. McKinney*, 107 Idaho 180, 687 P.2d 570 (1984).

*Flanagan II*, 107 Nev. at 247–48, 810 P.2d at 761–62.

Then, before the third penalty hearing, Moore's counsel filed a motion to preclude reference to the co-defendants' sentences, challenging the authority cited by the Nevada Supreme Court in its ruling on Moore's appeal following the second penalty hearing. ECF No. 93-39. The trial court denied that motion. ECF No. 94-20 at 37–44. The evidence in question was admitted at the third penalty hearing and in closing argument the prosecution referred to the sentences received by co-defendants. ECF No. 98-1 at 111-12. The trial court instructed the jury as follows:

You have heard testimony concerning the various sentences given previously to other persons charged in connection with this crime. You should clearly understand that you are not bound in any way in your determination of the proper sentences to impose in the present matter by the decision rendered by the previous jury with respect to sentencing.

ECF No. 102-2 at 13 (Jury Instr. 12).

Moore again raised the issue on his direct appeal following the third penalty hearing. ECF No. ECF No. 16-10 at 39–42. The Nevada Supreme Court again denied relief on the claim, on law of the case grounds:

The district court denied appellants' motion to exclude evidence of their co-defendants' sentences from the third penalty hearing. The prosecutor informed the jury of the sentences received by the four other individuals involved in the murders. In closing argument, the prosecutor argued that in view of the other four individuals' involvement in the crimes and their sentences, appellants deserved the death penalty. Appellants contend that this evidence and argument was improper, but this court has already rejected this contention, concluding that "it was proper and helpful for the jury to consider the punishments imposed on the co-defendants." *Flanagan II*, 107 Nev. at 248, 810 P.2d at 762. Under the doctrine of the law of the case, we decline to revisit this issue. *Hall v. State*, 91 Nev. 314, 315–16, 535 P.2d 797, 799 (1975).

*Flanagan IV*, 112 Nev. at 1422, 930 P.2d at 699.

Moore argues that the Nevada Supreme Court's ruling was an unreasonable application of *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Woodson v. North Carolina*, 428 U.S. 280 (1976). ECF No. 166 at 113–15. In *Woodson*, the Supreme Court held unconstitutional a North Carolina statute imposing a mandatory death sentence for first-degree murder. *Woodson*, 428 U.S at 305. The Supreme Court reasoned that the North Carolina statute did not take into account "the character and record of the individual offender and the circumstances of the particular offense." *Id*. at 304. In *Lockett,* the Supreme Court held unconstitutional an Ohio statute that limited the mitigating factors that could be considered in determining whether to impose a death sentence. *Lockett*, 438 U.S. at 604–05. The Court held "that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id*. at 604 (emphasis in original) (footnotes omitted). Neither *Woodson* nor *Lockett* held any particular evidence inadmissible in a capital murder sentencing. Moore's argument, then, is not based on the particular holdings of those cases, but on a general principle underlying them: the necessity of individual consideration of the offender and the circumstances of the offense in making the death-penalty decision.

The Ninth Circuit has provided instruction about the level of generality at which Supreme Court precedent is to be applied in reviewing state court rulings under the AEDPA:

> The Supreme Court has repeatedly reminded lower courts applying AEDPA not to "fram[e] [Supreme Court] precedents at a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512, 133 S.Ct. 1990, 186 L.Ed.2d 62 (2013) (per curiam); *see also Brown v. Davenport*, [596 U.S. 118, 135–36], 142 S. Ct. 1510, 1525, 212 L.Ed.2d 463 (2022); *Woods v. Donald*, 575 U.S. 312, 318, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015). Were the rule otherwise, lower courts "could transform even the most imaginative extension of existing case law into clearly established federal law," "collapsing the distinction between 'an unreasonable application of federal

law' and what a lower court believes to be 'an incorrect or erroneous application of federal law.'" *Jackson*, 569 U.S. at 512, 133 S.Ct. 1990 (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Such an approach "would defeat the substantial deference that AEDPA requires." *Id.*

*Fauber v. Davis*, 43 F.4th 987, 1007–08 (9th Cir. 2022).

Moore does not cite any Supreme Court precedent disallowing evidence of a co-defendant's sentence in a capital sentencing, and he does not show that the Nevada Supreme Court unreasonably applied the general principle he derives from *Woodson* and *Lockett*. Fairminded jurists could conclude that under Supreme Court precedent the parts that Moore's co-defendants played in the offense, and the sentences they received, could constitutionally have been considered in determining whether to impose a death sentence. *See Beardslee v. Woodford*, 358 F.3d 560, 579 (9th Cir. 2004) ("Although *a trial court is not necessarily precluded from allowing consideration of co-defendant sentences*, a trial court does not commit constitutional error under *Lockett* by refusing to allow such evidence." (emphasis added)). Applying the AEDPA standard, the Court denies Moore relief on the substantive claim in Claim 11.

In Claim 35, Moore asserts, by reference to Claim 11, a claim that his appellate counsel was ineffective for not effectively presenting on appeal the claim in Claim 11. Moore does not demonstrate that he ever properly presented this claim of ineffective assistance of his appellate counsel in state court. The claim is procedurally defaulted, and Moore does not make a showing to overcome the procedural default. The claim is denied as procedural defaulted.

### 12.    Claim 12

In Claim 12, Moore claims that his federal constitutional rights were violated as a result of prosecutorial misconduct. ECF No. 59 at 257–302. Moore reiterates allegations of prosecutorial misconduct asserted in other more specific claims. *See id*. For example, he reiterates his allegations "that the State coerced and induced false testimony by key witnesses" (*see* Claims 6, 7 and 8, *id*. at 206–37); that "the prosecution committed misconduct throughout opening and closing arguments" (*see* Claims 9, 10 and 11, *id*. at

238–56); that "the prosecution committed misconduct by capitalizing on irrelevant Satanism evidence" (*see* Claim 13, *id*. at 303–18); and that "the prosecution committed misconduct during jury selection" (*see* Claim 42, *id*. at 471–73). [41]

Claim 12 does not set forth an independent basis for relief distinguishable from the other prosecutorial misconduct claims that it references. Rather, as the Court reads it, Claim 12 sets forth allegations in support of those other claims. *See* ECF No. 166 at 115 (Moore states in his reply: "[E]ven assuming Claim Twelve is not an independent basis for relief, it strongly supports an inference against the State's good faith, which supports Moore's other claims of prosecutorial misconduct.").[42] The Court denies relief on Claim 12.

### 13.    Claim 13

In Claim 13, Moore claims that his federal constitutional rights were violated because, in the guilt phase of his trial, the court admitted evidence that he practiced Satanism and was in a gang. ECF No. 59 at 303–18.[43]

Moore points to testimony of Wayne Wittig, a witness called by Moore's co-defendant, Johnny Ray Luckett, indicating that Moore was in a satanic "coven" (*id*. at 307–09), and to testimony of Luckett himself that Moore's nickname was "Wizard" (*id*. at

---

[41] Moore does not assert a claim of ineffective assistance of trial counsel related to the prosecutorial misconduct alleged in Claim 12. *See* ECF No. 59 at 257–302. To the extent that Moore asserts ineffective assistance of trial counsel claims regarding other, more specific, claims of prosecutorial misconduct, those claims of ineffective assistance of trial counsel are addressed in the discussions concerning those other claims. Moore does not assert a claim of ineffective assistance of appellate counsel relative to Claim 12. *See Id*. at 257–302, 413–14.

[42] Even if Claim 12 is treated as an independent claim, Moore acknowledges that the Nevada Supreme Court ruled it procedurally barred and concedes that it is subject to the procedural default doctrine. Id. So, to the extent Claim 12 could be treated as a claim independent of Moore's other claims of prosecutorial misconduct, this Court would deny the claim as procedurally defaulted.

[43] Moore moves for an evidentiary hearing regarding Claim 13. ECF No. 170. The Court denies that motion. *See* discussion at Part III.E., *supra*.

309).[44] Moore also points to the prosecution's, as well as Luckett's counsel's, use of that evidence in closing argument. *Id.* at 310–12. Regarding the evidence of gang involvement, Moore points again to testimony of Luckett, indicating that Moore and others were members of the "Aces" gang and describing that group's activities, *id.* at 314–15, and Moore also points to the use of that evidence in closing arguments by the prosecution, Luckett's counsel, and Flanagan's counsel, *id.* at 315.

Moore alleges he asserted this claim on his direct appeal following the third penalty hearing. ECF No. 59 at 39.[45] Moore did raise the issue of admission of evidence of Moore's practice of Satanism—but not gang membership—in the guilt phase of the trial in his opening brief on that appeal. *See* ECF No. 16-10 at 23–32. The Nevada Supreme Court addressed the merits of the claim and denied relief:

> The Supreme Court has held that the First Amendment prevents a state "from employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried." *Dawson v. Delaware*, 503 U.S. 159, 168, 112 S.Ct. 1093, 1099, 117 L.Ed.2d 309 (1992). In *Dawson*, the appellant belonged to a white racist prison gang, and the prosecution introduced this evidence at his sentencing for murder. The evidence, however, had no apparent relevance to the sentencing proceeding: it was not tied in any way to the murder, it did not serve to show that the appellant was a future danger to society, nor was it used to rebut any mitigating evidence. *Id.* at 166–67, 112 S.Ct. at 1098–99. The Supreme Court concluded that the evidence was not relevant character evidence because it "was employed simply because the jury would find these beliefs morally reprehensible." *Id.* at 167, 112 S.Ct. at 1098.

> At the second penalty hearing in the instant case, the State presented evidence that Moore and Flanagan held beliefs in the occult and participated in coven activities. *Flanagan III*, 109 Nev. at 52, 846 P.2d at 1055. The United States Supreme Court vacated this court's decision affirming the sentences imposed at that hearing and remanded for reconsideration in light of *Dawson*. Upon remand, this court derived the following rule from *Dawson*: "Evidence of a constitutionally protected activity

---

[44] Though not mentioned directly in Moore's second amended petition, Moore points out in his reply that Saldana also testified about occult activity on the part of Moore and others. *See* ECF No. 82-1 at 27, 40–44.

[45] Moore alleges that he asserted this claim on his direct appeal following the second penalty hearing. ECF No. 59 at 39. But on that appeal, Moore only challenged the admission of evidence of Moore's occult activity in the penalty phase. *See* ECF No. 16-4. Moore also alleges that he asserted this claim on the appeal in his second state habeas action. ECF No. 59 at 39. But the Nevada Supreme Court ruled that action procedurally barred. *Moore*, 134 Nev. 262, 417 P.3d 356 (2018).

is admissible only if it is used for something more than general character evidence." *Id*. at 53, 846 P.2d at 1056. The court stated:

> The prosecution presented evidence that appellants believed that they controlled "white magic" and "black magic," that they controlled other supernatural powers, and that they worshipped the devil. Although these beliefs are offensive to many, they are clearly religious within the broad scope of the First Amendment.

*Id*. at 54, 846 P.2d at 1057. The court concluded that "as in *Dawson*, the prosecution failed to link cult participation or beliefs with appellants' crimes." *Id*. at 55, 846 P.2d at 1057.

As in the second sentencing hearing, the State's closing argument during the guilt phase of the trial also violated appellants' First Amendment rights under *Dawson*. [Footnote: The State argues that no violation occurred because appellants' co-defendant, not the State, introduced the evidence of occult beliefs and activities and because the evidence did not simply show the bad character of Moore and Flanagan, but was presented to show the control that they held over their co-defendant. This argument may be valid as far as it goes but overlooks the fact that the State affirmatively invoked the evidence during its closing argument as general character evidence.] The evidence was irrelevant to the crimes charged, and the prosecutor improperly used it in the guilt phase simply to demonstrate the appellants' bad character. He implied that devil worship was somehow linked to the crimes, asserting that Flanagan and Moore "let their black and their white magic spill over into this conspiracy," but he never presented evidence of such a link.

However, we conclude that this error does not require automatic reversal. We decided in *Flanagan III* that under *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), "due process of law requires that the jury's decision to impose death be set aside. This requirement leaves no room for a harmless-error analysis." *Flanagan III*, 109 Nev. at 57, 846 P.2d at 1058. In regard to death sentencings, we reaffirm this holding in Flanagan III, but we decline to apply it in cases where a *Dawson* violation has occurred in the guilt phase of a trial.

A majority of the United States Supreme Court has indicated that harmless-error analysis of Dawson errors is permissible. In *Dawson*, the Court stated: "The question whether the wrongful admission of the Aryan Brotherhood evidence at sentencing was harmless error is not before us at this time, and we therefore leave it open for consideration by the Supreme Court of Delaware on remand." *Dawson*, 503 U.S. at 168–69, 112 S.Ct. at 1099. In *Pope v. Illinois*, 481 U.S. 497, 504, 107 S.Ct. 1918, 1923, 95 L.Ed.2d 439 (1987), the Court vacated a state court judgment and remanded a criminal obscenity case to the state court to determine whether a jury instruction which violated the First Amendment was harmless error. The Court saw "no reason* to require a retrial if it can be said beyond a reasonable doubt that the jury's verdict in this case was not affected by the erroneous instruction." *Id*. at 502, 107 S.Ct. at 1922.

In his concurrence in *Dawson*, Justice Blackmun suggested that harmless-error review of an error violating First Amendment protections was not appropriate "[b]ecause of the potential chilling effect that

consideration of First Amendment activity at sentencing might have." *Dawson*, 503 U.S. at 169, 112 S.Ct. at 1100 (Blackmun, J., concurring). In *Flanagan III*, we in effect followed Justice Blackmun's suggestion in regard to capital sentencings. Of course, admission of irrelevant evidence of constitutionally protected First Amendment activities is also erroneous during a trial's guilt phase, but in light of *Pope* and the majority opinion in *Dawson*, we conclude that such error does not and should not require automatic reversal. The character of the defendant is usually a relevant, in fact a primary, issue during the sentencing phase, and there is a tremendous risk that improperly admitted character evidence will influence a jury in setting a punishment for a convicted defendant. This risk is unacceptably high when the defendant has been convicted of murder and faces the death penalty. *See Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976) (plurality opinion) (there is a heightened need for reliability in the determination that death is the appropriate punishment in a case). On the other hand, we believe that a jury may not be influenced by improper character evidence during the guilt phase, where a defendant's character is not relevant except in expressly restricted circumstances, and therefore conclude that harmless-error review of guilt-phase Dawson errors is appropriate.

This does not mean that the State has an easy task to establish harmless error and avoid reversal in such cases. The harmless-error rule places the burden on the State to demonstrate beyond a reasonable doubt that any error was harmless, i.e., that it did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

In this case, as noted above, the evidence regarding appellants' involvement with the occult was introduced by their co-defendant, Luckett. Admission of this evidence was not error because it was relevant to Luckett's defense theory, but the prosecutor's closing remarks were error because he employed the evidence simply as character evidence. We are unconvinced, however, that the jury gave these remarks much significance above and beyond the evidence of occult involvement that was properly received into evidence. The only evidentiary basis for the remarks was unimpressive testimony by one witness, a "coven" participant, regarding meetings where adolescent males indulged in fantasies of magical power and importance. The witness gave no evidence of any kind of violence or planned violence at these meetings, and his evidence offered little support for the first prosecutor's references to "devil worship" and none for finding that involvement in the occult led to the murders. In fact, the jury heard the second prosecutor question whether the subject of white and black magic even had any relevance to the case. Furthermore, the jury was instructed that "[s]tatements, arguments and opinions of counsel are not evidence in the case," that it was "to consider only the evidence in the case in reaching a verdict," and that "whatever counsel may say, you will bear in mind that it is your duty to be governed in your deliberation by the evidence as you understand it and remember it to be and by the law as given you." The jury was also aware of the self-serving nature of Luckett's evidence of occult activities and his claim that he was compelled to commit the crimes. The jury apparently looked on this evidence with skepticism or found it of little or no importance, convicting Luckett along with appellants and the fourth defendant.

1
2
3
4
5

> We characterized the evidence against Flanagan and Moore as "overwhelming" in our first opinion in this case. There is no reason to change that characterization now, nor has either appellant disputed the weight of the evidence against him. The evidence included eyewitness testimony regarding meetings held prior to the murders where appellants planned to kill the Gordons and statements made after the murders in which Flanagan admitted to killing his grandmother, Mrs. Gordon, and Moore admitted to killing Mr. Gordon. We conclude beyond a reasonable doubt that the jury looked to this evidence in convicting appellants and that the prosecutor's improper remarks did not contribute to the verdict.

6    *Flanagan IV*, 112 Nev. at 1417–20, 930 P.2d at 696–98.

7    The question is whether the Nevada Supreme Court's ruling was reasonable

8    within the meaning of 28 U.S.C. §2254(d), that is, whether fairminded jurists could

9    disagree about the correctness of the ruling. *See Harrington*, 562 U.S. at 101.

10    Moore acknowledges in his reply that the Nevada Supreme Court correctly cited

11    the *Chapman* harmless error standard, but he argues that the court did not actually apply

12    it. ECF No. 166 at 121–23. But that argument is belied by the record. The Nevada

13    Supreme Court discussed the strength of the prosecution's case, and the effect of the

14    evidence of Moore's occult activities, and ruled:

15
16

> We conclude beyond a reasonable doubt that the jury looked to this evidence [evidence properly admitted] in convicting appellants and that the prosecutor's improper remarks did not contribute to the verdict.

17    *Flanagan IV*, 112 Nev. at 1420, 930 P.2d at 698.

18    Moore also argues in his reply that the Nevada Supreme Court unreasonably

19    failed to take into consideration testimony of Angela Saldana regarding Moore's occult

20    activity. ECF No. 166 at 123–25. The Nevada Supreme Court did not discuss that

21    testimony; however, the Nevada Supreme Court did not unreasonably fail to do so.

22    Saldana's testimony about Moore's occult activity was brief, and it added little or nothing

23    to the evidence introduced by Luckett and discussed by the Nevada Supreme Court. *See*

24    ECF No. 82-1 at 27, 40–44. Moreover, the door was opened to that testimony of Saldana

25    by Moore's counsel; there was no reason for the Nevada Supreme Court to consider

26    whether it was unconstitutionally admitted. *See id*. at 27.[46]

27    _____

28    [46] Moore's claim that his trial counsel was ineffective for eliciting this testimony from Saldana is addressed, *supra*, in Part III.G.2.a.

Moore also argues in his reply that the Nevada Supreme Court's ruling was unreasonable because the evidence of Moore's occult activity was stronger than the court found it to be, while the evidence properly admitted against Moore was not overwhelming. *See* ECF 166 at 119, 125–27. But a reasonable jurist could disagree. The Nevada Supreme Court's conclusion was not unreasonable within the meaning of the AEDPA. Applying the AEDPA standard, this Court denies relief on this part of Claim 13.

Turning to Moore's claim that his federal constitutional rights were violated by the admission of evidence that he was a member of a gang, Moore has not identified any appeal in state court in which that claim was asserted and not ruled procedurally barred. Moore and the respondents appear to agree that the claim is procedurally defaulted (*see* ECF No. 158 at 84; ECF No. 166 at 127), and the Court determines that it is. Moore makes no showing to overcome the procedural default. The claim in Claim 13 that Moore's federal constitutional rights were violated by the admission of evidence that he was a member of a gang is denied as procedurally defaulted.

Moore also asserts in Claim 13 that his trial counsel was ineffective because he failed to properly object to, and prevent, or request a limiting instruction regarding, the admission of evidence of occult and gang activity. *See* ECF No. 59 at 303, 316; *see also id*. at 136–47. Moore asserted this claim on his first appeal in his first state habeas action. ECF No. ECF No. 17-2 at 2, 7–24. The Nevada Supreme Court denied relief. ECF No. 17-7. The court stated:

> … Moore contends that the district court erred in denying his claim that counsel should have prevented the admission of a codefendant's testimony regarding Moore's connection to Satanic and occult practices, or should have at least requested a limiting instruction. This evidence was admitted over counsel's objection. And in Moore's appeal after his third penalty hearing, we concluded that this evidence was properly admitted as to the guilt phase, although the prosecutor's comments on this evidence during closing argument were improper. [Footnote: *Flanagan v. State* (*Flanagan IV*), 112 Nev. 1409, 1419, 930 P.2d 691, 698 (1988).] Therefore, Moore cannot demonstrate prejudice resulting from counsel's failure to take additional steps to preclude admission of this evidence or to request a limiting instruction. Moreover, other evidence presented at trial showed that Moore and his codefendants committed the murders for financial gain, not because of Satanic or occult influences. Therefore, we conclude that the district court did not err in denying this claim.

ECF No. 17-7 at 11. Affording the state court the deference required under the AEDPA, this Court determines that the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court denies habeas corpus relief on the claim of ineffective assistance of trial counsel relative to Claim 13.

Regarding his appellate counsel, in Claim 35 Moore claims that "[w]here counsel did raise issue on appeal, counsel was deficient in failing to adequately support those arguments," and he incorporates Claim 13 by reference. ECF No. 59 at 413–14. Moore does not show that he ever asserted this claim in state court in a petition that was not procedurally barred. This claim of ineffective assistance of appellate counsel is procedurally defaulted, and Moore makes no showing to overcome the procedural default. The claim of ineffective assistance of appellate counsel is denied on that ground.

### 14.    Claim 14

In Claim 14, Moore claims that his federal constitutional rights were violated because the trial court lacked jurisdiction to conduct the third penalty phase of Moore's trial. ECF No. 59 at 319–21.

Moore alleges he asserted this claim on his direct appeal following the third penalty hearing. ECF No. 59 at 39. However, Respondents point out, and Moore concedes, that on that appeal Moore asserted the claim only as a state law claim; he did not claim a federal constitutional violation. ECF No. 158 at 85–86; ECF No. 166 at 130 (Moore conceding that "Moore presented this issue as a state law claim in his 1995 brief"); *see also* ECF No. 16-10 at 33–35. So, in fact, Moore did not assert the claim in Claim 14 on his direct appeal following the third penalty hearing.[47] Therefore, this Court determines that the substantive claim in Claim 14 is procedurally defaulted. Moore does

[47] As with most of his claims, Moore alleges that he also exhausted this claim on the appeal in his second state habeas action. ECF No. 59 at 37–42. But the Nevada Supreme Court ruled that action procedurally barred. *Moore*, 134 Nev. 262, 417 P.3d 356 (2018).

not make any showing to overcome the procedural default. The claim is denied as procedurally defaulted.

Moore does not assert a claim of ineffective assistance of trial counsel relative to Claim 14. *See* ECF No. 59 at 45–189, 319–21.

Regarding his appellate counsel, in Claim 35, Moore claims that his appellate counsel was ineffective for failing to adequately support his argument regarding the claim in Claim 14. ECF No. 59 at 413–14. Moore does not show that he ever asserted this claim in state court in a petition that was not procedurally barred. This claim of ineffective assistance of appellate counsel is procedurally defaulted, and Moore makes no showing to overcome the procedural default. The claim of ineffective assistance of appellate counsel relative to Claim 14 is denied on that ground.

15.    Claim 15

In Claim 15, Moore claims that his federal constitutional rights were violated because one of the jurors at his third penalty hearing was unable to understand English. ECF No. 59 at 322–25. Moore also claims that his trial counsel "was ineffective for failing to remedy this situation." *Id.* at 325; *see also id.* at 65. And, in Claim 35, Moore asserts, by reference, a claim of ineffective assistance of his appellate counsel for not raising the substantive claim in Claim 15 on appeal. *Id.* at 413.[48]

Without distinguishing among the substantive claim and the two claims of ineffective assistance of counsel, Moore alleges he exhausted Claim 15 on the appeal in his second state habeas action. *Id.* at 39. But the Nevada Supreme Court ruled that action procedurally barred. *Moore*, 134 Nev. 262, 417 P.3d 356 (2018). This Court determines that all three claims in Claim 15 are subject to the procedural default doctrine. The Court further determines that Moore has not made a showing sufficient to overcome the procedural default of any of the three claims.

---

[48] Moore moves for an evidentiary hearing regarding Claim 15. ECF No. 170. The Court denies that motion. *See* discussion at Part III.E., *supra*.

With respect to the claim of ineffective assistance of trial counsel, Moore asserts that he can overcome the procedural default under *Martinez*, on account of ineffective assistance of his state post-conviction counsel for not raising the claim in his first state habeas action. ECF No. 166 at 133. However, Moore provides no analysis or argument specific to his assertion that his state post-conviction counsel was ineffective, or specific to his claim that his trial counsel was ineffective; both are presented in a wholly conclusory manner. *See id*. Moreover, any argument that Moore could make as to either would rely on the declaration of Gladys Guerra, the wife of the juror in question (ECF No. 20-11 at 22), and the declaration of Tena S. Francis, an investigator, regarding interviews of jurors (ECF No. 20-12 at 5–6). *See* ECF No. 59 at 322–25. But both of those declarations are inadmissible under 28 U.S.C. § 2254(e)(2) and *Ramirez*. *See* Part III.D., *supra*. The Court determines that, in view of the lack of any real argument from Moore, and putting aside the two inadmissible declarations, Moore's claim of ineffective assistance of trial counsel in Claim 15 is insubstantial within the meaning of *Martinez*, and Moore does not show that his post-conviction counsel was ineffective for not asserting the claim in his first state habeas action.

The substantive claim in Claim 15, as well as the related claims of ineffective assistance of trial and appellate counsel, are denied as procedurally defaulted.

### 16.    Claim 16

In Claim 16, Moore claims that his federal constitutional rights were violated because, at his third penalty hearing, the trial court inquired into the jurors' religious beliefs. ECF No. 59 at 326–28. Moore also claims that his trial counsel was ineffective "for failing to object to the court's inquiry into the potential juror[s'] religious practices." *Id*. at 328; *see also id*. at 65. And, in Claim 35, Moore asserts, by reference, a claim of ineffective assistance of his appellate counsel for not raising the substantive claim in Claim 16 on appeal. *Id*. at 413.

During the trial court's voir dire of prospective jurors at the third penalty hearing, the trial court asked essentially the same two questions of each juror regarding their religion. The following is an example:

THE COURT:  What is your religious preference?

PROSPECTIVE JUROR NO. 432:  I'm Catholic.

THE COURT:  Do you attend mass regularly?

PROSPECTIVE JUROR NO. 432:  Yes, sir.

ECF No. 95-7 at 37. And another example:

THE COURT:  What is your religious preference?

PROSPECTIVE JUROR NO. 1:  I am a Muslim.

THE COURT:  Do you attend the mosque regularly?

PROSPECTIVE JUROR NO. 1:  When I can, yes, I do.

*Id*. at 60. It is this questioning of the prospective jurors by the trial court, and Moore's trial and appellate attorneys' handling of that questioning, that Moore challenges in Claim 16.

Without distinguishing among the substantive claim and the two claims of ineffective assistance of counsel, Moore alleges he exhausted Claim 16 on his second appeal in his first state habeas action. ECF No. 59 at 39. On that appeal, Moore's claims regarding the trial court's questioning of prospective jurors about their religious beliefs were claims of ineffective assistance of trial and appellate counsel. *See* ECF No. 2-4 at 24, 28–29. Moore did not, on that appeal—or in any other state court petition or appeal that was not procedurally barred—assert the substantive claim that is the primary claim in Claim 16. *See* ECF No. 2-4. That substantive claim is therefore procedurally defaulted, and Moore makes no showing to overcome the procedural default. The Court denies the substantive claim in Claim 16 as procedurally defaulted.

Regarding Moore's claim of ineffective assistance of trial counsel, the Nevada Supreme Court ruled:

Moore first argues that trial counsel should have objected when the district court asked veniremembers about their religious affiliations and whether they regularly attended religious services. In the context of a

68

> capital prosecution, we have recognized that a juror's personal beliefs and convictions, including religious beliefs, are highly relevant in empaneling a jury. *Bean v. State*, 86 Nev. 80, 87–88, 465 P.2d 133, 138 (1970) (observing that juror's religious or personal convictions is ground for removal for cause where beliefs are so "fixed that he is unable to return the death penalty under any case"), *holding limited on other grounds by Browning v. State*, 124 Nev. 517, 530–31, 188 P.3d 60, 70 (2008). Nothing in the trial transcript suggests that the challenged inquiry was undertaken for an improper purpose and therefore counsel's omission was not deficient or prejudicial.

ECF No. 18 at 6. Moore does not show this ruling of the Nevada Supreme Court to be unreasonable within the meaning of the 28 U.S.C. § 2254(d).

In his reply, Moore argues that "questioning of the jurors as to their religious belief is contrary to *Witherspoon v. Illinois*, 391 U.S. 510, 520 (1968), which held that when a prosecutor "swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality." ECF No. 166 at 133. But that argument turns *Witherspoon* on its head. In fact, *Witherspoon* appears to compel questioning of prospective jurors about their religious beliefs. Nowhere in *Witherspoon* did the Supreme Court hold that a trial court's questioning of jurors about their religious beliefs violated the United States Constitution or deprived the capital defendant of a fair trial. Rather, the Court in *Witherspoon* held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty *or expressed conscientious or religious scruples against its infliction*." *Witherspoon*, 391 U.S. at 522 (emphasis added). The Court held that "general objections" to the death penalty based upon religious concerns cannot constitute a basis for exclusion from a capital jury. The Court explained:

> If the State had excluded only those prospective jurors who stated in advance of trial that they would not even consider returning a verdict of death, it could argue that the resulting jury was simply "neutral" with respect to penalty. But when it swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality. In its quest for a jury capable of imposing the death penalty, the State produced a jury uncommonly willing to condemn a man to die.

*Id*. at 520–21 (footnotes omitted). The Supreme Court, therefore, drew a line between prospective jurors who could constitutionally be excluded from a jury because of religious beliefs and those who could not; inquiry into the religious beliefs of prospective jurors is necessary to determine which side of the line each prospective juror is on.

Still, Moore argues that the questioning of the prospective jurors in his case was contrary to the holding of *Witherspoon* because "the questions here were not linked to ascertaining the jurors' beliefs about the death penalty, and were simply about what type of religion jurors ascribed to and how often they attended services." ECF No. 166 at 134. But the sort of general questions asked by the court in this case could reasonably be considered an inevitable and legitimate part of the inquiry mandated by *Witherspoon*. Moore does not cite any legal authority—much less Supreme Court precedent—holding that the inquiry seemingly sanctioned by *Witherspoon* may not include questions about prospective jurors' religious preferences and about their attendance at religious services. In short, Moore does not show the Nevada Supreme Court's ruling on the ineffective assistance of trial counsel claim to be contrary to, or an unreasonable application of, Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard of review, the Court denies the claim of ineffective assistance of trial counsel in Claim 16.

On Moore's second appeal in his first state habeas action, the Nevada Supreme Court also denied relief on the claim of ineffective assistance of appellate counsel in Claim 16. ECF No. 18 at 15–16. For the reasons discussed above regarding the ineffective assistance of trial counsel claim, Moore does not show the Nevada Supreme Court's ruling denying relief on his ineffective assistance of appellate counsel claim to be contrary to, or an unreasonable application of, Supreme Court precedent, or to be based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on this claim as well.

17.    Claim 17

In Claim 17, Moore claims that his federal constitutional rights were violated because, at his third penalty hearing, the trial court "informed potential jurors that they must 'equally consider' the death penalty along with other available sentences." ECF No. 59 at 329–34. Moore also claims that his trial counsel was ineffective "for failing to object to the trial court's and opposing counsel's use of the 'equally consider' language." *Id*. at 334; *see also id*. at 65. And, in Claim 35, Moore asserts, by reference, a claim of ineffective assistance of his appellate counsel for not raising the substantive claim in Claim 17 on appeal. *Id*. at 413.

During the trial court's voir dire of prospective jurors at the third penalty hearing, the trial court asked prospective jurors whether they could consider equally all three possible forms of punishment of Moore: the death penalty, life in prison without the possibility of parole, or life in prison with the possibility of parole. The following is an example:

> THE COURT:  In your present state of mind, can you, if you are selected as a juror, consider equally all three possible forms of punishment and then select the one that you feel is most appropriate?
>
> PROSPECTIVE JUROR NO. 432:  Yes, sir.

ECF No. 95-7 at 36; *see also, e.g.*, *id*. at 102. Moore points out that "[i]n one instance, a juror was immediately excused for cause after answering 'no' to this question." ECF No. 59 at 331 (citing ECF No. 98-1 at 14–15). Moore also points out that Flanagan's counsel asked a prospective juror: "Because that's the law you'll be able to consider all three [possible forms of punishment] equally after you've heard the evidence?" ECF No. 59 at 331 (citing ECF No. 95-7 at 174). Moore claims that asking these questions of the prospective jurors violated his federal constitutional rights.

Without distinguishing among the substantive claim and the two claims of ineffective assistance of counsel, Moore alleges he exhausted Claim 17 on his second appeal in his first state habeas action. ECF No. 59 at 39. But Moore did not properly assert that substantive claim on that appeal; Moore properly asserted only claims of

ineffective assistance of counsel. The substantive claim in Claim 17 is procedurally defaulted, and Moore makes no showing to overcome the procedural default. The Court denies the substantive claim in Claim 17 as procedurally defaulted.

Regarding Moore's claim of ineffective assistance of trial counsel, on Moore's second appeal in his first state habeas action the Nevada Supreme Court ruled:

> … Moore argues that counsel should have objected to erroneous instructions to the jurors and disqualifications of the jurors based upon whether they could equally consider the three possible sentencing options: death or life with or without parole. Our first pronouncement that equal consideration by the jury of three possible punishments in death penalty cases was not required came in *Leonard v. State*, 117 Nev. 53, 65, 17 P.3d 397, 405 (2001), which was decided six years after Moore's third penalty hearing. It also appears that the "equal consideration" inquiry was not uncommon at the time of the third penalty hearing. Given those circumstances, counsel's omission was not deficient, and, even assuming any deficiency, Moore failed to show prejudice.

ECF No. 18 at 8. Focusing on the deficient performance part of the *Strickland* analysis, Moore does not show this ruling of the Nevada Supreme Court to be unreasonable within the meaning of the 28 U.S.C. § 2254(d). In particular, Moore does not explain what authority—state or federal—Moore's trial counsel should have cited in objecting to the "equal consideration" instructions. Moore does not show the Nevada Supreme Court's ruling on this ineffective assistance of trial counsel claim to be contrary to, or an unreasonable application of, Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard of review, the Court denies the claim of ineffective assistance of trial counsel in Claim 17.

On Moore's second appeal in his first state habeas action, the Nevada Supreme Court also denied relief on the claim of ineffective assistance of appellate counsel in Claim 17. ECF No. 18 at 15–16. For the reasons discussed above regarding the ineffective assistance of trial counsel claim, Moore does not show the Nevada Supreme Court's ruling denying relief on his ineffective assistance of appellate counsel claim to be contrary to, or an unreasonable application of, Supreme Court precedent, or to be based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on this claim as well.

18.    Claim 18

In Claim 18, Moore claims that his federal constitutional rights were violated because the trial court "failed to conduct sufficient inquiry regarding potential juror misconduct during the third penalty phase." ECF No. 59 at 335–37. Moore alleges:

> During jury selection, the trial court examined potential juror Pearlstein outside the presence of the other jurors. The trial court stated that it had received a note from Pearlstein stating that Pearlstein had information about the sentencing trial that might contaminate other prospective jurors. Juror Pearlstein worked for the detention center. He knew the case had been reversed on appeal, that the defendants had previously been given the death penalty, and that the sentence was reversed for something to do with "religious beliefs." He knew that the case was reversed twice and knew that it was because of evidence of "devil worship." Pearlstein also had information about how Moore and Flanagan behaved in jail. He did not believe that he could be fair and impartial.
>
> Moore's counsel inquired as to whether Pearlstein had discussed this information with any of the other jurors. Pearlstein responded ambivalently:
>
>> Generally, no. A lot of things have been said out there, and I don't really remember saying anything. I had mentioned, I thought that this was a retrial, and somebody had said to me that, 'No, how could they put us into a trial without hearing all the evidence,' and I just let it drop at that.
>
> Pearlstein also said he did not remember anyone mentioning that the previous sentence had been the death penalty and did not remember anyone mentioning devil worship as the basis for reversal. He did not believe that he told that to anyone. That Pearlstein stated it was a retrial tainted the jury, causing biased jurors to serve. *See Estrada v. Scribner*, 512 F.3d 1227, 1239 (9th Cir. 2008) (citing cases).
>
> Pearlstein was dismissed for cause but no further inquiry was made of the other potential jurors.

*Id*. at 335–36 (citations to trial transcript, ECF No. 96-1 at 11–13, omitted). Moore also claims that his "trial counsel was deficient for failing to make additional inquiries of the remaining jurors, and direct appeal counsel was deficient for failing to raise this issue on appeal." *Id*. at 337; *see also id*. at 65, 413.

Without distinguishing among the substantive claim and the claims of ineffective assistance of counsel, Moore alleges he exhausted Claim 18 on his second appeal in his first state habeas action. ECF No. 59 at 39. However, Moore did not properly assert the substantive claim in Claim 18 in that action; he properly asserted only claims of

73

1   ineffective assistance of counsel. The substantive claim is procedurally defaulted, and

2   Moore makes no showing to overcome the procedural default. The Court denies the

3   substantive claim in Claim 18 as procedurally defaulted.

4       Regarding Moore's claim of ineffective assistance of trial counsel, the Nevada

5   Supreme Court ruled:

6           … Moore argues that counsel should have requested further inquiry
            into an instance of potential juror misconduct where a veniremember
7           informed the trial court that he knew that the case was a second retrial and
            had mentioned that to other veniremembers and he was aware of Moore's
8           conduct in prison through his employment at the detention center. The
            veniremember was excused, but Moore complains that counsel should
9           have questioned other veniremembers about the matter. However, the
            venire already was aware that the penalty hearing was a retrial, as that
10          subject surfaced during voir dire, and there is no indication that the
            veniremember detailed to the others the bases for retrial. Therefore, we
11          conclude that counsel's omission was not objectively unreasonable.

12  ECF No. 18 at 7–8. Moore does not show this ruling to be unreasonable. The

13  fundamental shortcoming of Moore's claim, both here and in state court, is that the claim

14  is based on trial counsel's failure to further investigate the prospective juror's alleged

15  misconduct or bias, but Moore does not show what any further investigation would have

16  shown. As the Nevada Supreme Court stated, "the venire already was aware that the

17  penalty hearing was a retrial, as that subject surfaced during voir dire, and there is no

18  indication that the veniremember detailed to the others the bases for retrial" (*id*); Moore

19  does not show that to be inaccurate. Moore does not show the Nevada Supreme Court's

20  ruling to be contrary to, or an unreasonable application of, Supreme Court precedent, or

21  based on an unreasonable determination of the facts in light of the evidence. Applying

22  the AEDPA standard of review, the Court denies the claim of ineffective assistance of trial

23  counsel in Claim 18.

24      The Nevada Supreme Court also denied relief on Moore's claim of ineffective

25  assistance of appellate counsel in Claim 18. ECF No. 18 at 15–16. Moore fails to show

26  the Nevada Supreme Court's ruling on that claim to be contrary to, or an unreasonable

27  application of, Supreme Court precedent, or to be based on an unreasonable

28

determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on that claim as well.

### 19.    Claim 19

In Claim 19, Moore claims that his federal constitutional rights were violated because "the trial court and Moore's trial counsel failed to remove a biased juror from Moore's penalty trial." ECF No. 59 at 338–43. Moore focuses on four prospective jurors. Two of them—Pangburn and Seckinger—were not challenged for cause, but peremptory challenges were used to dismiss them; one of them—Rehman—was challenged for cause, but the challenge was denied, and a peremptory challenge was used to dismiss him; the fourth—Neitsch—was not challenged for cause or with a peremptory challenge and she was seated on the jury "without objection." *Id*. at 338–40. Moore claims that juror Neitsch was biased. *Id*. Moore points to the following exchange, which was part of the much longer complete voir dire of juror Neitsch:

> Q:    You've heard some of the facts in this case. Do you think that the death penalty is an appropriate punishment in this case?
>
> A:    I think it's an option.
>
> Q:    Is life with the possibility of parole an option?
>
> A:    Yes
>
> Q:    Is it an option that you're going to consider?
>
> A:    No.

*Id*. at 338 (quoting trial transcript at ECF No. 97-1 at 187). Moore also claims that his trial counsel was ineffective because he did not conduct a meaningful voir dire, did not challenge biased jurors for cause, did not effectively argue in favor of the challenges for cause that he did make, and did not use peremptory challenges in a meaningful way. *Id*. at 341–42; *see also id*. at 65. And, in Claim 35, Moore claims that his appellate counsel was ineffective for failing to "adequately support … arguments" in support of this claim on appeal. *Id*. at 413–14.

Beyond the voir dire of Neitsch quoted by Moore (and set out above), her voir dire also included the following:

> THE COURT:    In your present state of mind, can you, if selected as a juror, consider equally all three possible forms of punishment and then select the one that you feel is most appropriate?
>
> PROSPECTIVE JUROR NO. 6:   Yes.
>
>                    *    *    *
>
> THE COURT:    If you were either of the Defendants, would you want twelve people in your present state of mind to sit and judge your case?
>
> PROSPECTIVE JUROR NO. 6:   Yes, I would.
>
> THE COURT:    Do you know of any reason whatsoever, whether I've asked you or not, why you could not sit as a fair and impartial juror in this case?
>
> PROSPECTIVE JUROR NO. 6:   No.
>
>                    *    *    *
>
> MR. SCHIECK [Moore's counsel]:    Why would you want twelve persons in the same frame of mind that you're in to sit on your jury?
>
> PROSPECTIVE JUROR NO. 6:   I'm a very fair person. Before I make decisions, I consider all the issues or facts; and based on those I make a decision, and I would want people to do the same thing if I was sitting in their seats.
>
>                    *    *    *
>
> MR. SCHIECK:    Do you have any objection or aversion to life without the possibility of parole as a punishment?
>
> PROSPECTIVE JUROR NO. 6:   No, I don't.
>
>                    *    *    *
>
> MS. MOUNTS [Flanagan's counsel]:    It certainly sounds like you appreciate the enormity of the decision that you may have to make in this case?
>
> PROSPECTIVE JUROR NO. 6:   Yes.
>
> MS. MOUNTS:    Is that something that you're—I don't know if "comfortable" is the right word. Let me ask you: How do you feel about making that decision?
>
> PROSPECTIVE JUROR NO. 6:   Well, when the Judge asked if I would want somebody in my state of mind sitting here, because of the

enormity of the case and what's at stake is these two gentlemen's life, I think that everything needs to be considered. The panel needs to be very open-minded and come to a decision.

MS. MOUNTS:      So you would be willing to listen to all of the testimony and then determine which punishment may be appropriate?

PROSPECTIVE JUROR NO. 6:   Yes, I would.

*   *   *

MS. MOUNTS:      Do you feel that you could be completely fair to both sides?

PROSPECTIVE JUROR NO. 6:   Yes, I do.

ECF No. 97-1 at 187–93.

The federal constitution guarantees a criminal defendant the right to trial by an impartial jury. *See* U.S. Const. amend. VI. This means a trial in which jurors set aside their preconceptions and render a verdict "based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961); *see also Smith v. Phillips*, 455 U.S. 209 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it."). The *Irvin* Court explained:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Id*. Contradictory testimony of a prospective juror, which is not unusual on voir dire, is not enough to demonstrate bias; "the question is whether there is fair support in the record for the state courts' conclusion that the jurors … would be impartial." *Patton v. Yount*, 467 U.S. 1025, 1038-39 (1984). A state court's finding regarding the impartiality of a juror is entitled to a presumption of correctness, rebuttable only upon a showing of clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); *Patton*, 467 U.S. at 1038; *Murray v. Schriro*, 882 F.3d 778, 803 (9th Cir. 2018) (federal habeas courts "must give deference to the trial court's assessment of the impartiality of potential jurors").

Without distinguishing among the substantive claim and the two claims of ineffective assistance of counsel, Moore alleges he exhausted Claim 19 on his second

1    appeal in his first state habeas action. ECF No. 59 at 39. But, here again, Moore did not

2    properly assert this substantive claim in that action. The substantive claim in Claim 19 is

3    procedurally defaulted, and Moore makes no showing to overcome the procedural

4    default. The Court denies the substantive claim in Claim 19 as procedurally defaulted.

5            Regarding Moore's claim of ineffective assistance of trial counsel, the Nevada

6    Supreme Court ruled:

7            … Moore argues that counsel should have challenged four
     veniremembers on various grounds, including … (4) a juror's refusal to
8    consider a sentence that would allow parole. After reviewing the relevant
     voir dire, we conclude that even assuming counsel was deficient Moore has
9    not shown prejudice because the first three jurors were excused by
     peremptory challenges and his claim of prejudice related to the fourth juror
10   is speculative.

11   ECF No. 18 at 7. Moore does not show this ruling to be unreasonable. While juror

12   Neitsch said she would not consider a verdict of life with the possibility of parole, she

13   also—somewhat inconsistently—stated that she would consider equally all three possible

14   forms of punishment and select the one that she feels is most appropriate; that she could

15   sit as a fair and impartial juror; that she is a very fair person; that before she makes

16   decisions she considers all the issues or facts; that the jury needs to be very open

17   minded; that she would be willing to listen to all the testimony and then determine which

18   punishment would be appropriate; and that she could be completely fair to both sides.

19   Given the entirety of juror Neitsch's voir dire, it was not unreasonable for Moore's trial

20   counsel to not challenge her for cause, and Moore was not prejudiced by him not doing

21   so. Moore does not show the Nevada Supreme Court's ruling to be contrary to, or an

22   unreasonable application of, Supreme Court precedent, or based on an unreasonable

23   determination of the facts in light of the evidence. Applying the AEDPA standard of

24   review, the Court denies the claim of ineffective assistance of trial counsel in Claim 19.

25           The Nevada Supreme Court also denied relief on Moore's claim of ineffective

26   assistance of appellate counsel in Claim 19. ECF No. 18 at 15–16. Moore fails to show

27   the Nevada Supreme Court's ruling on that claim to be contrary to, or an unreasonable

28   application of, Supreme Court precedent, or to be based on an unreasonable

determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on this claim as well.

20.    Claim 20

In Claim 20, Moore claims that at his first trial, in 1985, his federal constitutional rights were violated on account of ineffective assistance of his trial counsel "because of the ineffective voir dire of a prospective juror based on his views concerning the death penalty." ECF No. 59 at 343–45. Moore refers to the voir dire of prospective juror Kinkenon, in which Kinkenon stated that he did not believe in the death penalty; that he could only render a verdict imposing the death penalty "if it is the worst crime I could imagine and I can't tell you exactly what that would be;" and that he "would definitely lean away from the capital punishment." *Id*. Moore goes on to allege:

> Defense counsel did not ask any further questions to rehabilitate Kinkenon. Later, Kinkenon was removed via a peremptory strike, but the record is not explicitly clear on who used it.

*Id*. at 345, citing page 387 of the September 27, 1985, trial transcript (ECF No. 78-1 at 167).

Moore asserted this claim of ineffective assistance of counsel on his second appeal in his first state habeas action. ECF No. 2-4 at 29–31. The Nevada Supreme Court denied relief on the claim. ECF No. 18 at 6–7.

The Nevada Supreme Court's ruling, though, was apparently based on two misconceptions regarding the factual basis of the claim. First, it appears that the Nevada Supreme Court erroneously believed that the prospective juror in question was dismissed from the jury at Moore's third penalty hearing. *See id*. at 5 ("Moore raises several claims of ineffective assistance of trial counsel at the third penalty hearing…."). But that was not the case; prospective juror Kinkenon was dismissed from the jury at Moore's first trial, in 1985. ECF No. 97-1 at 187–93. Second, the Nevada Supreme Court erroneously stated that Kinkenon was dismissed for cause. *See* ECF No. 18 at 6 ("… Moore argues that counsel should have objected to the removal for cause of a veniremember based on his views on the death penalty."); *id*. at 6–7 ("Because the record supports the trial court's

decision to remove the juror for cause…."). But he was not; as is alleged by Moore, Kinkenon was dismissed upon a peremptory challenge. *See* ECF No. 59 at 345, ECF No. 178-1 at 167.[49] Because the Nevada Supreme Court's ruling was based on an unreasonable determination of the facts, this Court addresses the claim *de novo*. *See* 28 U.S.C. § 2254(d).

Addressing the claim *de* novo, the Court determines that it is wholly without merit. Prospective juror Kinkenon was dismissed with a peremptory challenge, and Moore does not make any showing—or for that matter any allegation—what his trial counsel could have done to prevent the peremptory challenge. Furthermore, Kinkenon was dismissed from the jury in Moore's original trial in 1985, but Moore received a retrial of the penalty phase of his trial, before a different jury; Moore does not make any argument about how Kinkenon's dismissal could have caused him any prejudice. The Court denies the claim of ineffective assistance of trial counsel in Claim 20.

In Claim 35, Moore claims that his appellate counsel was ineffective for failing to "adequately support … arguments" regarding the claim in Claim 20. ECF No. 59 at 413–14. The Nevada Supreme Court denied relief on this claim as well. ECF No. 18 at 15–16. But here too, it appears that the Nevada Supreme Court understood Moore to be claiming ineffectiveness of his appellate counsel on the appeal following the third penalty hearing, as opposed to the appeal following Moore's 1985 trial. So, because the Nevada Supreme Court's ruling was based on an unreasonable determination of the facts, this Court addresses the claim *de novo*. The Court determines that the claim of ineffective assistance of appellate counsel in Claim 35, regarding Claim 20, is meritless. A claim of ineffective assistance of trial counsel generally cannot be asserted on direct appeal in Nevada. Moore does not provide any substantive argument regarding the claim; he does not show his appellate counsel to have unreasonably failed to assert the claim of

---

[49] Both misconceptions are understandable, given Moore's briefing of the claim before the Nevada Supreme Court. Moore did not make clear that the claim concerned a prospective juror at his 1985 trial, and Moore represented that the prospective juror at issue was removed for cause. *See* ECF No. 2-4 at 29–31.

ineffective assistance of trial counsel in Claim 20 on his first direct appeal. The Court denies the claim of ineffective assistance of appellate counsel in Claim 35 regarding Claim 20.

21.    Claim 21

In Claim 21, Moore claims that his federal constitutional rights were violated because "the aggravating factors were not charged in the Information, there was no finding of probable cause, and he was given insufficient notice of the State's charges of the aggravating factors." ECF No. 59 at 346–47. Moore claims further: "Trial counsel failed to raise this issue in the district court and appellate counsel failed to pursue this issue on direct appeal; counsel were ineffective for failing to do so." *Id*. at 346; *see also id*. at 64, 413.

Without distinguishing among the substantive claim and the two claims of ineffective assistance of counsel, Moore alleges he exhausted Claim 21 on his initial direct appeal and on the second appeal in his first state habeas action. *Id*. at 39. But Moore does not show where in his briefing on his initial direct appeal he raised any of the claims in Claim 21; the Court determines that he did not there raise any such claims. *See* ECF No. 16-2. On the second appeal in his first state habeas action, Moore asserted only claims of ineffective assistance of counsel. Generally, in Nevada, substantive claims of constitution violations must be asserted on a direct appeal. *See* ECF No. 17-7 at 19–20 (Nevada Supreme Court, on Moore's first appeal in his first state habeas action, ruling that Moore did not show cause and prejudice for failing to raise direct appeal claims earlier).

The substantive claim in Claim 21 is procedurally defaulted, and Moore does not make a showing to overcome the procedural default. The Court denies the substantive claim in Claim 21 on the ground of procedural default.

On his second appeal in his first state habeas action, Moore asserted the claim of ineffective assistance of trial counsel in Claim 21. ECF No. 2-4 at 23, 69–70. The Nevada Supreme Court ruled:

1
2
3
4

> Moore argues that counsel should have challenged the information because it did not charge the aggravating circumstances and there was no pretrial probable cause finding for the aggravating circumstances. Nothing in the United States or Nevada Constitutions mandates that aggravating circumstances be charged in an indictment or information and subjected to a pretrial probable cause determination. Therefore, counsel's omission was not objectively unreasonable.

5   ECF No. 18 at 9. This ruling was reasonable. Moore did not in state court—and he does

6   not in this case—cite any authority holding that aggravating circumstances must be

7   charged in an information or indictment and subjected to a pretrial probable cause

8   determination. His trial counsel did not perform unreasonably in not raising this issue.

9   Applying the AEDPA standard of review, the Court denies this claim of ineffective

10  assistance of trial counsel.

11      The Nevada Supreme Court also denied relief on Moore's claim of ineffective

12  assistance of appellate counsel in Claim 21. ECF No. 18 at 15–16. Moore fails to show

13  the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of,

14  Supreme Court precedent, or to be based on an unreasonable determination of the facts

15  in light of the evidence. Applying the AEDPA standard, the Court denies relief on the

16  ineffective assistance of appellate counsel claim in Claim 21 as well.

17              22.    Claim 22

18      In Claim 22, Moore claims that the "great risk of death" aggravating

19  circumstance—that the murders were committed by a person who "knowingly created a

20  great risk of death to more than one person by means of a weapon, device or course of

21  action that would normally be hazardous to the lives of more than one person"—as

22  applied to him, was unsupported by sufficient evidence and violated his federal

23  constitutional rights. ECF No. 59 at 348–51. Moore claims, further, that "[t]o the extent

24  that previous counsel failed to present and preserve this issue, Moore's constitutional

25  rights to the effective assistance of counsel were violated." *Id*. at 350; *see also id*. at

26  413–14.

27
28

Without distinguishing among the substantive claim and the ineffective assistance of counsel claims, Moore alleges he exhausted Claim 22 on the direct appeal following his third penalty hearing. *Id*. at 40.

With regard to the substantive claim, on the direct appeal following his third penalty hearing Moore challenged the validity of the great risk of death aggravator only as a matter of state law; his claim was that, under state law, there was insufficient evidence to support the aggravator. ECF No. 16-10 at 51–54. Moore's only citations to federal authority concerned the question whether the appellate court could reweigh the aggravating and mitigating circumstances if the great risk of death aggravator was found to be supported by insufficient evidence. *Id*. at 53–54. The Nevada Supreme Court ruled:

> *Whether sufficient evidence existed to sustain the aggravating circumstance of creating great risk of death to more than one person*
>
> Pursuant to NRS 200.033(3), the State alleged and the jury found the aggravating circumstance that in committing the murders, appellants "knowingly created a great risk of death to more than one person by means of a weapon, device or course of action which would normally be hazardous to the lives of more than one person." Appellants contend that there was insufficient evidence to find this circumstance.
>
> Appellants cite *Jimenez v. State*, 105 Nev. 337, 775 P.2d 694 (1989), where this court determined there was no factual basis for finding creation of a great risk of death to more than one person. However, the murder weapons in *Jimenez* were knives, and the court concluded: "Stabbing two persons with two different knives, even if Jimenez did both stabbings, does not make either knife a weapon or device that is *normally* dangerous to a multiplicity of persons." *Id*. at 342, 775 P.2d at 697. Appellants also cite *Moran v. State*, 103 Nev. 138, 734 P.2d 712 (1987). However, in *Moran* no other persons were present in the apartment when Moran shot the victim, and there was no evidence that any neighbor was at an immediate risk of death or that Moran knew of any other person in close proximity. *Id*. at 142, 734 P.2d at 714.
>
> In the case at bar, Flanagan shot his grandmother knowing that his grandfather was upstairs, and Moore shot the grandfather as he came downstairs. They planned to kill both grandparents. This court held in *Hogan v. State*, 103 Nev. 21, 24–25, 732 P.2d 422, 424 (1987) (*Hogan I*), that NRS 200.033(3) "includes a 'course of action' consisting of two intentional shootings closely related in time and place...." *See also Hogan v. Warden*, 109 Nev. 952, 959, 860 P.2d 710, 715 (1993) (*Hogan II*) ("Obviously, one who intends to commit multiple murders within a closely related time and place engages in a course of conduct inherently hazardous to the life of more than one person.").

Appellants point out that in 1993 the Legislature added the aggravating circumstance of conviction, in the immediate proceeding, of more than one offense of murder in the first or second degree. NRS 200.033(12); 1993 Nev.Stat., ch. 44, § 1 at 77. This amendment does not apply to murders committed before October 1, 1993. 1993 Nev.Stat., ch. 44, § 2 at 77. Appellants contend that this shows that the Legislature did not intend to include cases such as theirs, where only intended victims were murdered, within the ambit of NRS 200.033(3), undermining the holding in *Hogan I* and *Hogan II*.

However, we conclude that under *Hogan I* the aggravator in question was valid in appellants' case. The legislative amendment apparently requires that for murders committed after October 1, 1993, the aggravator set forth in NRS 200.033(12), rather than the one in NRS 200.033(3), be applied to cases such as this one. But this does not mean that NRS 200.033(3) was improperly applied to appellants' case, where the murders occurred in 1984. We conclude that substantial evidence existed to support the finding that appellants knowingly created a great risk of death to more than one person by means of a weapon and course of action which would normally be hazardous to the lives of more than one person.

*Flanagan IV*, 112 Nev. at 1420–21, 930 P.2d at 698–99 (emphasis in original). This ruling plainly turned upon construction of Nevada law—that was to be expected as Moore's argument was made purely on state-law grounds.

Because Moore did not assert on that appeal the substantive federal constitutional claim that he asserts in Claim 22, the substantive part of Claim 22 is procedurally defaulted. Moore does not make any showing to overcome the procedural default. The substantive claim in Claim 22 is denied on that ground.[50]

On his second appeal in his first state habeas action, Moore asserted a claim of ineffective assistance of appellate counsel relative to the issue in Claim 22. ECF No. 2-4 at 28, 59-61. The Nevada Supreme Court ruled:

Moore argues that appellate counsel should have challenged the great-risk-of-death aggravating circumstance. His claim fails because appellate counsel challenged the aggravating circumstance on the same grounds that he now advances, *Flanagan IV*, 112 Nev. at 1420–21, 930 P.2d at 698–99, and he does not explain what additional or different

---

[50] On the appeal in his second state habeas action, Moore argued that application of the great risk of death aggravator to him was a miscarriage of justice, that he is actually innocent of the death penalty, and that he can therefore overcome the procedural default of his second state habeas petition. ECF No. 60-1 at 7, 132–38. The Nevada Supreme Court rejected that argument. *Moore*, 134 Nev. at 268–69, 417 P.3d at 362–63. Moore does not show that ruling to be contrary to, or an unreasonable application of, Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence.

argument appellate counsel could have provided to secure relief on this claim.

ECF No. 18 at 16. This ruling was reasonable. Applying the AEDPA standard of review, the Court denies the claim of ineffective assistance of appellate counsel in Claim 22.

Moore did not, on his second appeal in his first state habeas action, assert a claim of ineffective assistance of trial counsel. *See* ECF No. 2-4. Moore does not explain where in his opening brief on that appeal he asserted any such claim. *See* ECF No. 59 at 40, 348–51; ECF No. 166 at 147–51. This claim of ineffective assistance of trial counsel is procedurally defaulted. And, under *Martinez*, Moore does not show the claim to be substantial. This Court denies relief on the claim of ineffective assistance of trial counsel in Claim 22 on the ground that it is procedurally defaulted.

### 23.    Claim 23

In Claim 23, relying primarily upon *Hurst v. Florida*, 577 U.S. 92 (2016), Moore claims that his federal constitutional rights were violated because the Nevada Supreme Court reweighed aggravating and mitigating circumstances, leading to his ultimate resentencing to death, after ruling invalid two of the aggravating circumstances found by a jury. ECF No. 59 at 352–66. Here again—with no elucidation—Moore claims: "To the extent that previous counsel failed to present and preserve this issue, Moore's constitutional rights to the effective assistance of counsel were violated." *Id*. at 365; *see also id*. at 413.

Without distinguishing among the substantive claim and the ineffective assistance of counsel claims, Moore alleges he exhausted Claim 23 on his second appeal in his first state habeas action. *Id*. at 40.

In Moore's first state habeas action, the state district court ruled two of the aggravating circumstances found by the jury—murder committed during a burglary and murder committed during a robbery—to be invalid under *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004) (holding it impermissible to base aggravating circumstances on felonies on which felony murder theory predicated), and granted Moore a new penalty hearing. ECF No. 104-16. On Moore's first appeal in that action, the Nevada Supreme

Court reversed the district court and remanded for further proceedings, directing the district court "to enter detailed findings as to whether the jury's consideration of the erroneous aggravating circumstances was harmless beyond a reasonable doubt." ECF No. 17-7 at 2–23. On remand, the district court denied Moore's petition. ECF No.17-13 at 2–13. Regarding the two invalid aggravators, the district court ruled:

> … [T]his Court finds it clear beyond a reasonable doubt that absent the invalid burglary and robbery aggravators the jury still would have imposed a sentence of death as to Moore for this brutal double murder. Because the error was harmless, Moore can show no prejudice and this Court finds he is not entitled to relief under *McConnell*.

*Id*. at 4. Moore appealed again (his second appeal in his first state habeas action), and the Nevada Supreme Court affirmed. ECF No. 18 at 2–21. The court ruled:

> After invalidating the felony aggravating circumstances, two aggravating circumstances remain—(1) Moore created a great risk of death to more than one person under NRS 200.033(3) and (2) he committed the murders for pecuniary gain under NRS 200.033(6). The evidence regarding the facts and circumstances of the crimes support these aggravating circumstances. In mitigation, Moore presented several witnesses who testified to his good character, his abusive childhood, and his rehabilitation since his incarceration. The remaining aggravating circumstances are the most compelling of the original circumstances found by the jury—Moore killed two people for pecuniary gain. And the mitigating circumstances are not particularly compelling given the overwhelming evidence that Moore and his cohorts meticulously and callously planned and carried out the execution of an elderly couple for the sole purpose of getting a little money. We conclude that the jury would have found Moore death eligible and sentenced him to death absent the two invalid aggravating circumstances. Therefore, the jury's consideration of those aggravating circumstances was harmless. *Clemons v. Mississippi*, 494 U.S. 738, 741 (1990); *State v. Haberstroh*, 119 Nev. 173, 183, 69 P.3d 676, 682-83 (2003).

*Id*. at 18–19 (footnote omitted). The Nevada Supreme Court's ruling was reasonable.

In *Clemons v. Mississippi*, 494 U.S. 738 (1990), the United States Supreme Court held that the federal constitution "does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review." *Clemons*, 494 U.S. at 741. In this case, after ruling two aggravators invalid, the state courts employed the second analysis approved in *Clemons*, harmless error review. *See* ECF No. 17-13 at 4; ECF No. 18 at 18–19. Because the state

courts conducted a harmless-error review, Moore's argument that the state courts violated his rights by reweighing aggravating and mitigating circumstances is inapposite.

Even if this were a case involving a reweighing instead of a harmless-error review, Moore's argument would be meritless. "[*Ring v. Arizona*, 536 U.S. 584 (2002)] and *Hurst* did not require jury weighing of aggravating and mitigating circumstances, and *Ring* and *Hurst* did not overrule *Clemons* so as to prohibit appellate reweighing of aggravating and mitigating circumstances." *McKinney v. Arizona*, 589 U.S. 139, 145 (2020). Moreover, "*Ring* and *Hurst* do not apply retroactively on collateral review." *Id*., citing *Schiro v. Summerlin*, 542 U.S. 348, 358 (2004); *see also* ECF No. 158 at 154 ("Moore acknowledges this binding precedent that is contrary to his argument, but raises the argument nonetheless to preserve the issue.").

So, the Court determines that the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the substantive claim in Claim 23.

Moore's claims of ineffective assistance of counsel relative to Claim 23 are procedurally defaulted. Moore did not raise any such claim on the second appeal in his first state habeas action. *See* ECF No. 2-4. Moore does not explain where in his opening brief on that appeal he asserted any such claim. *See* ECF No. 59 at 40, 352–66; ECF No. 166 at 147–51. Under *Martinez*, Moore does not show the claim of ineffective assistance of trial counsel to be substantial. This Court denies relief on the claims of ineffective assistance of trial and appellate counsel in Claim 23 on the ground that they are procedurally defaulted.

24. Claim 24

In Claim 24, Moore claims that his federal constitutional rights were violated because, in the guilt phase of his trial, the trial court gave the jury erroneous first-degree

murder instructions. ECF No. 59 at 367–74. Specifically, Moore claims that the trial court violated his federal constitutional rights by giving the "*Kazalyn* instruction,"[51] which stated:

> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of killing.
>
> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes, from the evidence, that the act constituting the killing has been preceded by and, has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated murder.

*Id*. at 367–68; *see* ECF No. 18-3 at 181 (Jury Instr. 18). Moore argues that the instruction misstated Nevada law and violated his federal constitutional rights, by omitting the element of deliberation and thereby eliminating the requirement that the jury find that element of first-degree murder beyond a reasonable doubt.

The question of the constitutionality of the *Kazalyn* instruction has a somewhat complicated history, which was recently summarized by this Court:

> The Nevada statutes define first degree murder, in relevant part, as a "willful, deliberate and premeditated killing." Nev. Rev. Stat. § 200.030(1)(a). The use of the foregoing instruction was condoned by the Nevada Supreme Court in *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992), and is commonly referred to as the *Kazalyn* instruction. Shortly thereafter, the Nevada Supreme Court confirmed "that the terms deliberate, premeditated and willful are a single phrase, meaning simply that the actor intended to commit the act and intended death to result." *Powell v. State*, 838 P.2d 921, 927 (Nev. 1992). Eight years later, however, the Nevada Supreme Court ruled, in *Byford v. State*, 994 P.2d 700 (Nev. 2000), that the *Kazalyn* instruction was deficient because it defined only premeditation and failed to provide an independent definition for deliberation. *See Byford*, 994 P.2d at 713.
>
> In *Polk v. Sandoval*, 503 F. 3d 903 (9th Cir. 2007), the court held that the *Kazalyn* instruction violates due process because it relieves the State "of its burden of proving every element of first-degree murder beyond a reasonable doubt." *Polk*, 503 F. 3d at 909. In *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013), however, the court determined that its holding in *Polk* regarding the constitutionality of the *Kazalyn* instruction was no longer good law in light of the intervening Nevada Supreme Court decision in *Nika v. State*, 198 P.3d 839 (Nev. 2008), which explained "that *Byford* represented a change in, rather than a clarification of, [Nevada] law." *Babb*, 719 F.3d at 1029. Thus, in cases in which the conviction was final prior to the *Byford* decision, due process did not require independent definitions for

---

[51] The instruction is commonly referred to by the name of a Nevada Supreme Court case in which it was discussed, *Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992). In this case the instruction was given before the *Kazalyn* case was decided.

premeditation and deliberation because, prior to *Byford*, they were not separate elements of the mens rea necessary for first degree murder. *See id*.

In a subsequent case, however, the Ninth Circuit determined that, prior to *Powell*, "deliberation was a discrete element of first-degree murder in Nevada." *Riley v. McDaniel*, 786 F.3d 719, 723 (9th Cir. 2015) ("*Riley I*"). Having so determined, the court held that the use of the *Kazalyn* instruction at Riley's trial in 1990 (i.e., pre-*Powell*) violated his right to due process under the United States Constitution. *Id*. at 724. The court also concluded that Riley was entitled to habeas relief because the error was not harmless based on the "uncontested facts" in his case. *Id*. at 725.

\*   \*   \*

This court has questioned the Ninth Circuit's analysis of Nevada law in *Riley I*. *See* [*Howard v. Gittere*, 392 F. Supp. 3d 1205, 1212–13 2019)]. And, as noted in *Howard*, the Nevada Supreme Court has also stated its disagreement with *Riley I*. *See Leavitt v. State*, 386 P.3d 620, 620–21 (Nev. 2016). Even so, the Ninth Circuit has stood by its holding that "before and after *Powell*, the Nevada Supreme Court interpreted its first-degree murder statute to include three distinct mens rea elements." *See Riley v. Filson*, 933 F.3d 1068, 1074 (9th Cir. 2019) ("*Riley II*"). The court in *Riley II* distinguished between Nevada law requiring "separate *definitions* of the statutory mens rea elements" and "Nevada law concerning whether the mens rea terms were separate *elements*." *Riley II*, 933 F.3d at 1073 (emphasis in the original). The court held that only the latter is relevant to its decision in *Riley I*. *Id*.

*Emil v. Gittere*, No. 3:00-cv-0654-KJD-CLB, 2024 WL 1554367 (D.Nev., April 10, 2024) at *26–27 (emphasis in original).

The upshot is that the Ninth Circuit held, in *Riley I* and *Riley II*, that in pre-*Powell* trials, such as Moore's,[52] the Nevada courts' use of the *Kazalyn* instruction was unconstitutional.[53]

Moore asserted this claim on his first appeal in his first state habeas action (ECF No. 17-3 at 2–4), and the Nevada Supreme Court denied relief on the claim:

Moore also argued that he was prejudiced by the district court's instruction to the jury on premeditation and deliberation, commonly known as the *Kazalyn* instruction. [Footnote omitted.] This instruction was later determined in *Byford v. State* to inadequately explain the distinction between first- and second-degree murder. [Footnote omitted.] Moore contends that *Polk v. Sandoval*, [footnote omitted] a recent decision by the United States Court of Appeals for the Ninth Circuit, mandates reversal of

---

[52] Powell was decided on September 3, 1992; Moore's trial was in 1985.

[53] The Court questions the conclusion on this issue in *Riley I* and *Riley II*, which appears to be contrary to the construction of Nevada law by the Nevada Supreme Court. However, the Court follows *Riley I* and *Riley II*.

his first-degree murder conviction. In sum, *Polk* concluded that in reviewing the *Kazalyn* instruction in *Byford* and concluding that the decision was not retroactive in *Garner v. State*, [footnote: 116 Nev. 770, 6 P.3d 1013 (2000), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56 P.3d 868 (2002)] this court ignored clearly established federal law holding that an instruction omitting an element of a crime and relieving the prosecution of its burden of proof violates the federal Constitution. [Footnote: *Polk*, 503 F.3d at 911.] The *Polk* court concluded that given the "State's exceptionally weak evidence of deliberation," it could not conclude that the instructional error was harmless in that case. [Footnote: *Id*. at 913.] We conclude, however, that the evidence adduced at Moore's trial overwhelmingly established that he and his cohorts methodically planned the murders for pecuniary gain. Considering *Polk*, we nonetheless conclude that any error in the challenged instruction was harmless beyond a reasonable doubt. [Footnote omitted.]

ECF No. 17-7 at 20–21. Affording the Nevada Supreme Court's ruling the deference required under 28 U.S.C. § 2254(d), the Court determines that it is arguable by fairminded jurists that, considering the evidence of Moore's guilt presented at trial, any error on the part of the trial court in giving the *Kazalyn* instruction was harmless beyond a reasonable doubt. The evidence that Moore deliberated and premeditated the Gordons' killings and acted deliberately and with premeditation in the course of those killings was overwhelming. *See*, *e.g.*, ECF No. 79-1 at 17–33 (testimony of Havens); ECF No. 80-1 (testimony of Akers); ECF No. 81-1 at 5–44 (testimony of Lucas); ECF No. 81-1 at 154–66, 180–88 (testimony of Saldana). Applying the AEDPA standard of review, the Court denies relief on the substantive claim in Claim 24.

Moore also asserts claims of ineffective assistance of trial and appellate counsel relative to Claim 24; he does so, by reference only, in Claims 2 and 35. ECF No. 59 at 173, 412–13. He provides no cogent explanation or argument regarding either claim. *See id*. Moore asserted those claims of ineffective assistance of counsel on his first appeal in his first state habeas action (ECF No. 17-3 at 2–4, 21–22), and the Nevada Supreme Court denied relief. ECF No. 17-7 at 18–21. Moore does not show the Nevada Supreme Court's rulings to be contrary to, or an unreasonable application of, Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard of review, the Court denies the claims of ineffective assistance of trial and appellate counsel relative to Claim 24.

25.    Claim 25

In Claim 25, Moore claims that his federal constitutional rights were violated because, in the penalty phase of his trial, "the court instructed the jury on the possibility of commutation or sentence modification. ECF No. 59 at 375–78. The instruction Moore challenges was the following:

> 1.  Life imprisonment with the possibility of parole is a sentence of life imprisonment which provides that a defendant would be eligible for parole after a period of ten years. This does not mean that he would be paroled after ten years, but only that he would be eligible after that period of time.

> 2.  Life imprisonment without the possibility of parole means exactly what it says, that a defendant shall not be eligible for parole.

> 3.  Although under certain circumstances and conditions the State Board of Pardons Commissioners has the power to modify sentences, you are instructed that you may not speculate as to whether the sentence you imposed may be changed at a later date.

> 4.  If you sentence a defendant to death, you must assume that the sentence will be carried out.

> 5.  Any sentence you impose will be doubled because of the defendant's use of a deadly weapon during the commission of the crime.

*Id.*; *see* ECF No. 102-2 at 6 (Jury Instr.5).[54]

Moore asserted this claim on his direct appeal following his third penalty hearing. ECF No. 16-10, 55–60. The Nevada Supreme Court denied Moore relief on the claim:

> Appellants also argue that the district court provided an erroneous jury instruction on parole and possible modification of sentences. However, they did not object to the instruction. Failure to object or to request an instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect a defendant's right to a fair trial. *Ross v. State*, 106 Nev. 924, 928, 803 P.2d 1104, 1106 (1990). No patently prejudicial error occurred here since the instruction given is prescribed by *Petrocelli v. State*, 101 Nev. 46, 56, 692 P.2d 503, 511 (1985). [Footnote: Appellants argue also that NRS 213.085(1), effective July 1, 1995, rendered the instruction on parole and sentence modification inaccurate and misleading. The statute prohibits the Board of Pardons Commissioners in cases of first degree murder from commuting a sentence

---

[54] Paragraphs 3 and 4 of the instruction—the parts primarily at issue in this claim—were prescribed by the Nevada Supreme Court in 1985 and were in use until superseded by statute in 1995, after Moore's third penalty hearing. *See Petrocelli v. State*, 101 Nev. 46, 56, 692 P.2d 503, 511 (1985); Nev. Rev. Stat. § 213.085; *see also Thomas v. State*, 120 Nev. 37, 44–45, 83 P.3d 818, 823–24 (2004).

of death or life imprisonment without the possibility of parole to a sentence allowing parole. However, we have concluded that retroactive application of NRS 213.085(1) is unconstitutional. *Miller v. Warden*, 112 Nev. 930, 921 P.2d 882 (1996). Therefore, the statute has no effect on appellants' cases.]

*Flanagan IV*, 112 Nev. at 1423, 930 P.2d at 700. This ruling by the Nevada Supreme Court turned, in large part, on that court's construction of Nevada law; this federal habeas court does not review state supreme court rulings on matters of state law. *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68. And, beyond that, Moore makes no showing that this ruling by the Nevada Supreme Court was contrary to, or an unreasonable application of Supreme Court precedent, or that it was based on an unreasonable determination of the facts in light of the evidence. The Court denies Moore habeas corpus relief on this substantive claim.

In Claim 25, Moore also claims that his trial counsel was ineffective for failing to object to the commutation instruction, and that his appellate counsel provided ineffective assistance of counsel "insofar as appellate counsel failed to fully raise the claim." ECF No. 59 at 378; *see also id*. at 64–65, 412–13. Moore asserted such claims of ineffective assistance of counsel on his second appeal in his first state habeas action. ECF No. 2-4 at 65–67. The Nevada Supreme Court denied relief:

> … Moore argues that counsel should have challenged an instruction informing the jury that although the Board of Pardons Commissioners has the power to modify sentences, it may not speculate on any possible sentence modification, because the instruction failed to apprise the jury that his changes for executive clemency were remote. However, the instruction was correct at the relevant time and was not misleading. *See Flanagan v. State* (*Flanagan IV*), 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996) (concluding that no patently prejudicial error occurred in instruction regarding parole and possible modification of sentences because instruction given was prescribed by *Petrocelli v. State*, 101 Nev. 46, 56, 692 P.2d 503, 511 (1985)). We conclude that counsel's omission was not deficient.

ECF No. 18 at 13–14. This ruling by the Nevada Supreme Court was reasonable. It was not contrary to, or an unreasonable application of *Strickland* or any other Supreme Court precedent, nor was based on an unreasonable determination of the facts in light of the evidence. The Court denies Moore habeas corpus relief on the claims of ineffective assistance of counsel in Claim 25.

26.    Claim 26

In Claim 26, Moore claims that his federal constitutional rights were violated because, in both the guilt and penalty phases of his trial, the trial court gave an "anti-sympathy jury instruction." ECF No. 59 at 379–80. The instruction that Moore challenges was as follows:

> A verdict may never be influenced by sympathy, prejudice or public opinion. Your decision should be the product of sincere judgment and sound discretion in accordance with these rules of law.

ECF No. 18-3 at 206 (guilt phase, Jury Instr. 43); ECF No. 102-2 at 18 (penalty phase, Jury Instr. 17). Moore argues:

> The flaw in this instruction is that it did not limit its prohibition to the jury's consideration of "mere sympathy"—that is, the sort of sympathy that would be totally divorced from the evidence adduced during the sentencing phase—but rather precluded consideration of all sympathy, including any sympathy warranted by the evidence. Because the jury in this case was instructed not to consider any sympathy—rather than "mere" sympathy— Moore's jury likely understood that when making a moral judgment about his culpability, it was forbidden to take into account any evidence which evoked a sympathetic response. Thus the "anti-sympathy" instruction had a substantial and injurious influence on the jury verdict because it substantially rendered Moore's sentence fundamentally unfair.

ECF No. 59 at 380. Moore also asserts related claims of ineffective assistance of trial and appellate counsel with respect to both the guilt and penalty phases of his trial. *Id*.; *see also id*. at 64, 412–13.[55]

Without distinguishing among the six distinct claims in Claim 26, Moore alleges that he presented Claim 26 to the Nevada Supreme Court on the direct appeal following his third penalty hearing. *Id*. at 40.

Moore does not show that he ever raised in state court any of the three claims in Claim 26 regarding the guilt phase of his trial. Those claims are procedurally defaulted, and Moore makes no showing to overcome the procedural defaults. The substantive

---

[55] So, in two pages of his second amended petition, without citing any authority besides the federal constitution itself, Moore makes six claims: the substantive claim and claims of ineffective assistance of trial and appellate counsel with respect to the guilt phase of his trial, and the substantive claim and claims of ineffective assistance of trial and appellate counsel with respect to the penalty phase. *See id*. at 379–80.

claim and claims of ineffective assistance of trial and appellate counsel in the guilt phase

of his trial are denied as procedurally defaulted.

On his direct appeal following his third penalty hearing, Moore asserted the

substantive claim in Claim 26 regarding the penalty phase of his trial. ECF No. 16-10 at

48–50. The Nevada Supreme Court denied relief on the claim, ruling as follows:

> Rejecting an alternative instruction offered by appellants, the district
> court instructed the jury: "A verdict may never be influenced by sympathy,
> prejudice or public opinion." The jury was also instructed that murder of the
> first degree could be mitigated by three enumerated circumstances and
> "[a]ny other mitigating circumstances." Appellants argue that precluding the
> jury from considering sympathy violated the constitutional requirement that
> a jury consider all mitigating evidence. This court has already rejected
> appellants' argument and upheld the antisympathy instruction, holding that
> "because the penalty jury was properly instructed to consider any mitigating
> circumstances, the district court did not err in instructing the jury that it
> should not be influenced by sympathy, prejudice or public opinion."
> *Flanagan II*, 107 Nev. at 248, 810 P.2d at 762. Again, under the doctrine of
> the law of the case, we decline to revisit this issue. [*Hall v. State*, 91 Nev.
> 314, 315–16, 535 P.2d 797, 799 (1975)].

*Flanagan IV*, 112 Nev. at 1422, 930 P.2d at 699. The Supreme Court referred to its

opinion on the direct appeal following Moore's second penalty hearing; in that opinion,

the Nevada Supreme Court ruled on a claim regarding the same jury instruction, as

follows:

> We have upheld virtually identical instructions in several other cases.
> *See Howard v. State*, 102 Nev. 572, 729 P.2d 1341 (1986); *Nevius v. State*,
> 101 Nev. 238, 699 P.2d 1053 (1985); *Biondi v. State*, 101 Nev. 252, 699
> P.2d 1062 (1985); *Milligan v. State*, 101 Nev. 627, 708 P.2d 289 (1985). In
> upholding a similar instruction in *Nevius*, we determined that the jury was
> fully advised "regarding the range of mitigating circumstances" it could
> consider. *Nevius*, 101 Nev. at 250, 699 P.2d at 1061.
>
> As in *Nevius*, we hold that, because the penalty jury was properly
> instructed to consider any mitigating circumstances, the district court did not
> err in instructing the jury that it should not be influenced by sympathy,
> prejudice or public opinion. *See Nevius*, 101 Nev. at 251, 699 P.2d at 1061.
> Although appellants evidently urge this court to depart from our earlier
> decisions in *Howard*, *Nevius*, *Biondi*, and *Milligan*, we decline to do so.

*Flanagan II*, 107 Nev. at 248, 810 P.2d at 762. Moore does not show the Nevada

Supreme Court's ruling to be contrary to, or an unreasonable application of, any Supreme

Court precedent, or to be based on an unreasonable determination of the facts. Applying

the AEDPA standard of review, the Court denies Moore relief on the substantive claim in

Claim 26 regarding the penalty phase of his trial.

Turning to the claims of ineffective assistance of counsel regarding the penalty

phase of his trial, Moore asserted those claims in the second appeal in his first state

habeas action, ECF No. 2-4 at 61–62, and the Nevada Supreme Court ruled:

> … Moore's argument that counsel should have challenged the anti-sympathy instruction lacks merit because we have repeatedly upheld this instruction where the trial court, as here, also instructed the jury to consider mitigating factors. *See*, *e.g.*, *Byford v. State*, 116 Nev. 215, 233, 994 P.2d 700, 712 (2000); *Wesley v. State*, 112 Nev. at 519, 916 P.2d at 804; *Lay v. State*, 110 Nev. 1189, 1195, 886 P.2d 448, 451-52 (1994)

ECF No. 18 at 12; *see also id*. at 15–16. This ruling was reasonable. Moore does not

show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable

application of, any Supreme Court precedent, or to be based on an unreasonable

determination of the facts.[56] Applying the AEDPA standard of review, the Court denies

relief on these claims of ineffective assistance of counsel.

27.    Claim 27

In Claim 27, Moore claims that his federal constitutional rights were violated

because "the Nevada death penalty sentencing scheme allowed for the jury to find Moore

eligible for the death penalty without being instructed that it must find beyond a

reasonable doubt that there are no mitigating circumstances sufficient to outweigh the

aggravating circumstances." ECF No. 59 at 381–87. Moore explains his claim:

> The Nevada death penalty statute provides that, after the jury has found the defendant guilty of first-degree murder and determined a statutory aggravating circumstance exists beyond a reasonable doubt, the same jury must make additional findings prior to imposing a death sentence: "The jury may impose a sentence of death only if it finds at least one aggravating circumstance and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found." Nev. Rev. Stat. § 175.554. The statute does not clarify the appropriate standard of proof for determining the relative weight of

---

[56] Notably, Moore alleges that his trial counsel failed to object to the instruction and that his appellate counsel failed to identify and raise the issue on direct appeal (ECF No. 59 at 380); those allegations appear to contradict Moore's presentation of the claim in state court. *See* ECF No. 16-10 at 48–50 ("Over objection …").

aggravating and mitigating circumstances. Moore's jury was not told a burden of proof with which to make this determination. *See* [ECF No. 102-2 at 7] (Inst. 6).

*Id.* at 381. Moore bases the substantive claim primarily on *Hurst v. Florida*, 577 U.S. 92 (2016).[57] With no explanation and in a completely conclusory manner, Moore also asserts claims of ineffective assistance of trial and appellate counsel relative to Claim 27. ECF No. 59 at 387 ("Trial counsel and appellate counsel were deficient in failing to raise and litigate this issue."); *see also id.* at 64.

The jury instruction at issue here is Instruction 6 at Moore's third penalty hearing:

The State has alleged that aggravating circumstances are present in this case.

The defendants have alleged that certain mitigating circumstances are present in this case.

It shall be your duty to determine:

(a) Whether an aggravating circumstance or circumstances are found to exist; and

(b) Whether a mitigating circumstance or circumstances are found to exist; and

(c) Based upon these findings, whether a defendant should be sentenced to life imprisonment or death.

The jury may impose a sentence of death only if it finds at least one aggravating circumstance has been established beyond a reasonable doubt and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstances or circumstance found.

Otherwise, the punishment imposed shall be imprisonment in the State Prison for life with or without the possibility of parole.

ECF No. 102-2 at 7.

Moore claims that he exhausted Claim 27—again, without distinguishing among the substantive claim and the claims of ineffective assistance of counsel—"in his 2015 Opening Brief," that is, in his opening brief on the appeal in his second state habeas

---

[57] The Ninth Circuit Court of Appeals has held that *Hurst*—like the two Supreme Court cases it built upon, *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000)—does not apply retroactively. *Ybarra v. Filson*, 869 F.3d 1016, 1032–33 (9th Cir. 2017).

action. *See id*. at 40. But not only was his second state habeas action procedurally barred in state court, his opening brief on the appeal was filed the year before *Hurst* was decided by the Supreme Court. So, the Court determines that the substantive claim in Claim 27 is procedurally defaulted, and that Moore makes no showing to overcome that procedural default; the substantive claim in Claim 27 is denied as procedurally defaulted.

The Court determines that the ineffective assistance of counsel claims in Claim 27 are barred by the statute of limitations and are procedurally defaulted; those claims are denied on those grounds.

### 28.    Claim 28

In Claim 28, Moore claims that his federal constitutional rights were violated because "because Nevada's weighing equation is unconstitutional." ECF No. 59 at 388–89. Moore points to the following paragraph in Instruction 6, given to the jury at his third penalty hearing:

> The jury may impose a sentence of death only if it finds at least one aggravating circumstance has been established beyond a reasonable doubt and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstances or circumstance found.

ECF No. 102-2 at 7.[58] Moore argues—without citing any support for the proposition—"This equation violates the federal constitutional prohibition against cruel and unusual punishment and the guarantees of due process because it allows a sentence of death when aggravating and mitigating circumstances are found to be in equal balance." ECF No. 59 at 388. Moore claims further: "Trial counsel were deficient in failing to object to this instruction; appellate counsel was deficient in failing to raise this issue on appeal." *Id*. at 389; *see also id*. at 64, 412–13.

Without distinguishing among the substantive claim and the claims of ineffective assistance of counsel, Moore alleges he exhausted Claim 28 on the second appeal in his first state habeas action. *Id*. at 40. On that appeal, Moore asserted only the claims of

---

[58] Instruction 6 is quoted in full in Part III.G.27, *supra*.

ineffective assistance of counsel. ECF No. 2-4 at 68–69. The Nevada Supreme Court rejected those claims, ruling:

> [Moore] also argues that counsel should have challenged the weighing equation set forth in NRS 200.030(4) and instruction 6 as unconstitutional because they allow a sentence of death when aggravating and mitigating circumstances are found to be in equal balance. However, he has identified no constitutional proscription against such a scheme and therefore has failed to show that counsel's omission was deficient.

ECF No. 18 at 14. That ruling was reasonable. Moore does not cite any Supreme Court precedent in support of his claim. The Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of counsel in Claim 28.

As for the substantive claim in Claim 28, Moore does not point to any state court proceeding in which he properly—without a state procedural bar—presented that claim on appeal. The substantive claim in Claim 28 is procedurally defaulted, and Moore does not make any showing to overcome the procedural default. The Court denies relief on the substantive claim in Claim 28 on procedural default grounds.

### 29.    Claim 29

In Claim 29, Moore claims that his federal constitutional rights were violated because of the jury instruction defining "reasonable doubt" given in both the guilt and penalty phases of his trial. ECF No. 59 at 390–92. The instruction was as follows:

> A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, not mere possibility or speculation.

ECF No. 18-3 at 198 (guilt phase, Jury Instr. 35); ECF No. 102-2 at 14 (penalty phase, Jury Instr. 13).[59] Moore also claims, without further explanation or argument: "Trial counsel were deficient in failing to object to this instruction during both the guilt and penalty phases; additionally, appellate counsel was deficient for failing to challenge this instruction on appeal." ECF No. 59 at 392; *see also id*. at 412–13.

Without distinguishing among the six distinct claims in Claim 29, Moore alleges that he presented Claim 29 to the Nevada Supreme Court on his first appeal in his first state habeas action (in his "2006 Opening Brief"). *Id*. at 40. On that appeal, Moore asserted the claims of ineffective assistance of counsel in Claim 29; he did not assert the substantive claims. ECF No. 17-2 at 41; ECF No. 17-3 at 2, 21–22. The Nevada Supreme Court rejected the ineffective assistance of counsel claims, ruling that the instruction "comported with statutory and case law," and that Moore "failed to demonstrate … a reasonable probability of success" had counsel asserted the claim on appeal. ECF No. 17-7 at 15, 17. Moore does not show these rulings to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of counsel in Claim 30.

The substantive claims in Claim 30 are procedurally defaulted. Moore makes no showing to overcome those procedural defaults. Those claims are denied on that ground.

### 30.    Claim 30

In Claim 30, Moore claims that his federal constitutional rights were violated because, in the guilt phase of his trial, the jury was given the following instruction:

> Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.

---

[59] The instruction as given in the penalty phase differed slightly: a comma was added after "possible doubt" in the first sentence, and "and substantial," was removed from the last sentence. *See* ECF No. 102-2 at 14. Moore does not make this distinction. *See* ECF Nos. 59 at 390–92; ECF No. 166 at 169–70.

> Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

ECF No. 59 at 393–95; ECF No. 18-3 at 180 (guilt phase, Jury Instr. 17).[60] Here again, without explanation or argument, Moore also claims: ""Trial counsel were deficient in failing to object to this instruction during both the guilt and penalty phases; additionally, appellate counsel was deficient for failing to challenge this instruction on appeal." ECF No. 59 at 395; *see also id*. at 412–13.

Without distinguishing among the substantive claim and the ineffective assistance of counsel claims, Moore alleges that he presented Claim 30 to the Nevada Supreme Court on his first appeal in his first state habeas action. *Id*. at 40. On that appeal, Moore asserted the claims of ineffective assistance of trial and appellate counsel in Claim 30; he did not assert the substantive claim. ECF No. 17-2 at 41; ECF No. 17-3 at 5–6, 21–22. The Nevada Supreme Court rejected the ineffective assistance of counsel claims, ruling that the instruction "comported with statutory and case law," and that Moore "failed to demonstrate … a reasonable probability of success" had counsel asserted the claim on appeal. ECF No. 17-7 at 15, 17. Moore does not show these rulings to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of counsel in Claim 30.

The substantive claim in Claim 30 is procedurally defaulted, and Moore makes no showing to overcome the procedural default. That claim is denied on that ground.

### 31.    Claim 31

In Claim 31, Moore claims that his federal constitutional rights were violated because, in the guilt phase of his trial, the jury was given the following instruction:

---

[60] Moore misquotes the instruction, replacing "abandoned *and* malignant heart" with "abandoned *or* malignant heart." *Compare* ECF No. 59 at 393–94 with ECF No. 18-3 at 180 (emphasis added).

1
2
3
4

Now you will listen to the arguments of counsel who will endeavor to aid you to reach a proper verdict by refreshing in your minds the evidence and by showing the application thereof to the law; but, whatever counsel may say, you will bear in mind that it is your duty to be governed in your deliberation by the evidence as you understand it and remember it to be and by the law as given you in these instructions, with the sole, fixed and steadfast purpose of doing equal and exact justice between the defendants and the State of Nevada.

5   ECF No. 59 at 396–97; ECF No. 18-3 at 210 (guilt phase, Jury Instr. 47). And here again,

6   Moore claims: "Trial counsel were deficient in failing to object to this instruction;

7   additionally, appellate counsel was deficient for failing to challenge this instruction on

8   appeal." ECF No. 59 at 397; *see also id*. at 412–13.

9       Without distinguishing among the substantive claim and the two ineffective

10  assistance of counsel claims, Moore alleges that he presented Claim 31 to the Nevada

11  Supreme Court on his first appeal in his first state habeas action. *Id*. at 41. On that

12  appeal, Moore asserted the claims of ineffective assistance of trial and appellate counsel

13  in Claim 31; he did not assert the substantive claim. ECF No. 17-2 at 41; ECF No. 17-3 at

14  6–7, 21–22. The Nevada Supreme Court rejected the ineffective assistance of counsel

15  claims, ruling that the instruction "comported with statutory and case law,"[61] and that

16  Moore "failed to demonstrate … a reasonable probability of success" had counsel

17  asserted the claim on appeal. ECF No. 17-7 at 15, 17. Moore does not show these

18  rulings to be contrary to, or an unreasonable application of, *Strickland* or any other

19  Supreme Court precedent, or based on an unreasonable determination of the facts in

20  light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims

21  of ineffective assistance of counsel in Claim 31.

22      The substantive claim in Claim 31 is procedurally defaulted, and Moore makes no

23  showing to overcome the procedural default. That claim is denied on that ground.

24

25

26

27

28

[61] Moore conceded that the Nevada Supreme Court "has found this instruction to be permissible." ECF No. 17-3 at 7 (citing *Leonard v. State*, 117 Nev. 53, 78, 17 P.3d 397, 413 (2001)); *see also* ECF No. 166 at 175 (in his reply in this case, conceding that he "is aware that the Nevada Supreme Court rejected similar challenges to this instruction") (citing *Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998), and *Daniel v. State*, 119 Nev. 498, 522, 78 P.3d 890, 906 (2003))).

1

2        32.    Claim 32

In Claim 32, Moore claims that his federal constitutional rights were violated

3 because, in the guilt phase of his trial, "[t]he trial judge's 'guilt or innocence of any other

4 person' instruction improperly minimized the state's burden of proof, and tacitly endorsed

5 a conviction on the theory of 'guilt by association.'" ECF No. 59 at 398–400. The jury

6 instruction Moore challenges was as follows:

7                You are here to determine the guilt or innocence of the Defendants
from the evidence in the case. You are not called upon to return a verdict as
8                to the guilt or innocence of any other person. So, if the evidence in the case
convinces you beyond a reasonable doubt of the guilt of a Defendant, you
9                should so find, even though you may believe one or more other persons are
also guilty.

10

11 ECF No. 18-3 at 199 (guilt phase, Jury Instr. 36).[62] Moore includes his *pro forma* claims

12 of ineffective assistance of counsel: "Trial counsel were deficient in failing to object to this

13 instruction; additionally, appellate counsel was deficient for failing to challenge this

14 instruction on appeal." ECF No. 59 at 399–400; *see also id*. at 412–13.

15       Here again, without distinguishing among the substantive claim and the two

16 ineffective assistance of counsel claims, Moore alleges that he presented Claim 32 to the

17 Nevada Supreme Court on his first appeal in his first state habeas action. *Id*. at 41. On

18 that appeal, Moore asserted the claims of ineffective assistance of trial and appellate

19 counsel in Claim 32; he did not assert the substantive claim. ECF No. 17-2 at 41; ECF

20 No. 17-3 at 8–9, 21–22. The Nevada Supreme Court rejected the ineffective assistance

21 of counsel claims, ruling that Moore "failed to adequately explain why the challenged

22 instruction was improper or cite any relevant authority supporting his contention," and that

23 Moore "failed to demonstrate … a reasonable probability of success" had counsel

24 asserted the claim on appeal. ECF No. 17-7 at 15, 17. Moore does not show these

25 rulings to be contrary to, or an unreasonable application of, *Strickland* or any other

26 Supreme Court precedent, or based on an unreasonable determination of the facts in

27

28 [62] In his petition, Moore misquotes the instruction, replacing "the Defendants" in the first
sentence with "the defendant." Compare ECF No. 59 at 398 with ECF No. 18-3 at 199.

light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of counsel in Claim 32.

The substantive claim in Claim 32 is procedurally defaulted, and Moore makes no showing to overcome the procedural default. That claim is denied on that ground.

### 33.    Claim 33

Moore's substantive claim in Claim 33 is, in its entirety, as follows:

> The court failed to give an instruction that prior [in]consistent statements were admissible as substantive evidence. This instruction was important because Akers gave two prior statements to the police that were inconsistent with his testimony at trial. [Citing ECF No. 80-2 at 74–78 (October 1, 1985, transcript); ECF No. 17-37 (August 29, 1985, transcript).] Moreover, the court failed to give limiting instructions on the use of character evidence, bad act evidence, and hearsay evidence that should not be considered by the jury in determining whether prosecutors met their burden of proof as to Moore. This rendered Moore's trial fundamentally unfair.

ECF No. 59 at 401–02.[63] [64] Moore again includes his *pro forma* claims of ineffective assistance of counsel:

> Additionally, trial counsel was ineffective based upon his failure to offer jury instructions favorable to the defense. [Citing ECF No. 85-2 at 4 (October 9, 1985, transcript).] Trial counsel failed to request, and did not obtain, these instructions. This was deficient. Appellate counsel was deficient for failing to raise these issues on appeal.

*Id.; see also id.* at 412–13.

Without distinguishing among the substantive claim and the two ineffective assistance of counsel claims, Moore alleges that he presented Claim 33 to the Nevada Supreme Court on his first appeal in his first state habeas action. *Id.* at 41. On that appeal, Moore asserted the claims of ineffective assistance of trial and appellate counsel

---

[63] In his petition, in the first sentence of this paragraph, Moore actually states: "The court failed to give an instruction that prior *consistent* statements were admissible as substantive evidence;" but, in context, it appears that Moore meant to complain that the trial court failed to give an instruction that prior *inconsistent* statements were admissible as substantive evidence. *See* ECF No. 59 at 401–02; *see also* ECF No. 158 at 158 (Respondents, in their answer, interpreting the claim as the Court does).

[64] In his petition, Moore does not specify whether this claim relates to the guilt phase or the penalty phase of his trial, or both; but, in context, it appears that it relates only to the guilt phase.

in Claim 33; he did not assert the substantive claim. ECF No. 17-2 at 41; ECF No. 17-3 at 9, 21–22. The Nevada Supreme Court rejected the ineffective assistance of counsel claims, ruling as follows:

> Moore also claimed that counsel was ineffective for not requesting instructions on the admissibility of prior inconsistent statements as substantive evidence, the limited use of prior bad act and character evidence, and the admissibility of hearsay. However, he did not adequately explain why these instructions were necessary or demonstrate a reasonable probability that the outcome of his trial would have been different but for counsel's failure to request the instructions.

ECF No. 17-7 at 17. Moore does not show this ruling to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of counsel in Claim 33.

The substantive claim in Claim 33 is procedurally defaulted, and Moore makes no showing to overcome the procedural default. That claim is denied on that ground.

### 34. Claim 34

In Claim 34, Moore claims that his federal constitutional rights were violated because, in the guilt phase of his trial, "[t]he jury instructions … lessened the State's burden of proof by not requiring the State to establish the scienter element of the offense of first degree murder or burglary." ECF No. 59 at 405; *see also, generally, id*. at 403–06. The jury instructions Moore challenges here were as follows:

> Where several parties join together in a common design to commit any unlawful act, each is criminally responsible for the acts of his confederates committed in furtherance of the common design. In contemplation of law, the act of one is the act of all.
>
> *     *     *
>
> Every person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in the commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a crime, is a principal, and shall be proceeded against and punished as such.
>
> *     *     *

To aid and abet is to assist or support the efforts of another in the commission of a crime.

\*   \*   \*

You are instructed that presence, companionship, and conduct before, during and after the offense are circumstances from which one's participation in the criminal intent may be inferred.

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

ECF No. 18-3 at 169, 194–96 (guilt phase, Jury Instr. 6, 31, 32, 33). Moore again includes his *pro forma* claims of ineffective assistance of counsel: "[T]rial counsel were deficient in failing to object to the improper instructions. Appellate counsel was deficient in failing to raise this issue on appeal." ECF No. 59 at 405–06; *see also id*. at 412–13.

Moore asserted these claims—the substantive claim and the two claims of ineffective assistance of counsel in the supplemental brief he filed on the first appeal in his first state habeas action (his "2007 Supplemental Brief"). ECF No. 17-4 at 117–25. The Nevada Supreme Court ruled as follows:

Moore further argued that counsel was ineffective for failing to object to the aiding and abetting instructions on the ground that they failed to clearly inform the jury of the specific intent necessary to hold him liable as an aider and abettor in Colleen Gordon's murder based on the reasoning this court later developed in *Sharma v. State*. [Footnote: 118 Nev. 648, 655, 56 P.3d 868, 872 (2002); *see Mitchell v. State*, 122 Nev. [1269, 1276–77], 149 P.3d 33, 38 (2006) (holding that *Sharma* clarified existing law).] However, even assuming counsel should have objected to the challenged instructions, Moore cannot demonstrate prejudice here. The State presented overwhelming evidence that Moore and five other men planned and executed the murders expressly so that Flanagan would receive life insurance and inheritance proceeds. Murdering both Carl and Colleen was necessary to effectuate this objective. Moore, Flanagan, and the others planned the murders at least one month prior to the killings, discussing in detail who would shoot Carl and Colleen and in what manner, how the men would gain entry into the Gordon residence, and the types of weapons to be used. The men also agreed that the murders would be made to look like a burglary or robbery gone wrong. The evidence overwhelmingly supports a finding that Moore had the intent necessary to be held liable for Colleen's murder under an aiding or abetting theory of liability. Consequently, we conclude that Moore did not demonstrate a reasonable probability that the result of his trial would have been different had counsel objected to the aiding and abetting instructions. [Footnote: To the extent Moore argues that the district court's instructions respecting aiding and abetting do not comport with *Sharma*, we conclude that this claim is procedurally barred

absent a showing of good cause and actual prejudice, which Moore has failed to demonstrate. *See* NRS 34.810(1)(b), (3).] Therefore, we conclude that the district court did not err in denying this claim.

\* \* \*

For the foregoing reasons, we conclude that the district court did not err in denying Moore's claim that counsel was ineffective respecting any matter related to jury instructions. [Footnote: To the extent Moore contends that his appellate counsel were ineffective for not raising these matters on direct appeal, we conclude that he failed to demonstrate that they had a reasonable probability of success. *See Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996).]

ECF No. 17-7 at 16–17.

Moore does not show the Nevada Supreme Court's rulings to be contrary to, or an unreasonable application of, Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims in Claim 34.

35.    Claim 35 – Ineffective Assistance of Appellate Counsel

In Claim 35, Moore claims that his federal constitutional rights were violated because his appellate counsel was ineffective. ECF No. 59 at 407–14. Here, Moore asserts several distinct claims of ineffective assistance of his appellate counsel, for the most part by referring to substantive claims or claims of ineffective assistance of trial counsel asserted elsewhere in his second amended petition and alleging that his appellate counsel either failed to assert the claim on appeal or failed to do so in an effective manner. Each of the claims of ineffective assistance of appellate counsel in Claim 35 is addressed in conjunction with the discussion of the related substantive claim or claim of ineffective assistance of trial counsel.[65]

---

[65] The claims of ineffective assistance of appellate counsel in Claim 35, and the related substantive claims or claims of ineffective assistance of trial counsel, are the following: failure to assert claim that trial counsel's hearing loss made him ineffective, related claim is in Claim 2; failure to assert claim that the trial court erred by failing to hold a hearing regarding Moore's motion to dismiss his trial counsel, related claim is in Claim 2; failure to assert claim that the trial court erred by failing to grant a change of venue, related claim is Claim 40; failure to assert claim that the trial court erred by allowing irrelevant and prejudicial testimony, related claim is in Claim 2; failure to assert claim that the district court erroneously failed to give limiting instructions concerning the jury's consideration of

irrelevant and prejudicial testimony, related claims are Claims 2 and 33; failure to assert claim regarding the payment of witness funds to secure testimony, related claim is Claim 7; failure to assert claim regarding the disclosure to the jury of the trial court's finding that a conspiracy existed, related claim is in Claim 2; failure to effectively assert claim that the trial court violated Moore's right to be present at, and have recorded, all proceedings, related claim is Claim 41; failure to assert claims of prosecutorial misconduct, related claims are Claims 9 and 12; failure to assert claims regarding jury instructions, related claims are Claims 24, 25, 26, 28, 29, 30, 31, 32, 33 and 34; failure to effectively assert claim that the trial court erroneously denied motion to sever, related claim is Claim 3; failure to assert claim that the trial court prevented Moore from confronting Johnny Ray Luckett, related claim is Claim 5; failure to assert claim that one of the jurors at the third penalty hearing was unable to understand English, related claim is Claim 15; failure to assert claim that, at the third penalty hearing, the trial court erroneously inquired into the jurors' religious beliefs, related claim is Claim 16; failure to assert claim that, at the third penalty hearing, the trial court informed potential jurors that they must "equally consider" death penalty along with other available sentences, related claim is Claim 17; failure to assert claim that the trial court failed to conduct sufficient inquiry regarding potential juror misconduct during the third penalty hearing, related claim is Claim 18; failure to assert claim that the aggravating factors were not charged in the Information, there was no finding of probable cause, and Moore was given insufficient notice of the charged aggravating factors, related claim is Claim 21; failure to assert claim that the Nevada Supreme Court erroneously reweighed aggravating and mitigating circumstances, related claim is Claim 23; failure to effectively assert claim that the State improperly elicited testimony of John Lucas suggesting he was intimidated because of his testimony, related claim is Claim 8; failure to effectively assert claim that the prosecutors committed misconduct in arguments, related claim is Claim 9; failure to effectively assert claim that the prosecutor, and counsel for one of Moore's co-defendants, commented on Moore's silence, related claim is Claim 10; failure to effectively assert claims of prosecutorial misconduct and trial court error regarding admission of evidence of the life sentences received by Johnny Ray Luckett and Roy McDowell, related claim is Claim 11; failure to effectively assert claim that the trial court erroneously admitted evidence that Moore practiced Satanism and was in a gang, related claim is Claim 13; failure to effectively assert claim that the trial court lacked jurisdiction to conduct the third penalty hearing, related claim is Claim 14; failure to effectively assert claim that the trial court and Moore's trial counsel failed to remove a biased juror at third penalty hearing, related claim is Claim 19; failure to effectively assert claim of ineffective assistance of trial counsel because of ineffective voir dire of a prospective juror based on his views concerning the death penalty, related claim is Claim 20; failure to effectively assert claim that the "great risk of death" aggravating circumstance was unsupported by sufficient evidence, related claim is Claim 22; failure to assert claims regarding Nevada's death penalty scheme, related claims are Claims 36, 43 and 45; failure to assert claim regarding elected judges, related claim is Claim 37; failure to assert claim regarding photographs admitted into evidence, related claim is Claim 38; failure to assert claim regarding biased judges, related claim is Claim 39; failure to assert claim that black jurors were wrongfully excluded from jury, related claim is Claim 42; failure to assert claim regarding Nevada's clemency procedure, related claim is Claim 44; failure to assert claim that regarding the multiplicity of proceedings and elapsed time, related claim is Claim 46.

1

2              36.    Claim 36

3        In Claim 36, Moore claims that Nevada's death penalty is unconstitutional. ECF

4  No. 59 at 415–42. Specifically, Moore claims that lethal injection as a method of

5  execution is unconstitutional in all circumstances. *Id*. at 415–29, 440–41. And Moore

6  claims that lethal injection as it would be carried out in Nevada is unconstitutional. *Id*. at

7  429–35. Moore asserts that his trial and appellate counsel were ineffective for failing to

8  raise these claims in his prior proceedings. *Id*. at 442; *see also id*. at 64, 414.[66] [67] [68]

9        Without distinguishing among the various claims in Claim 36, Moore claims he

10  exhausted Claim 36 on his second appeal in his first state habeas action. *Id*. at 41.

11  There, Moore asserted the claims of ineffective assistance of counsel in Claim 36. *See*

12  ECF No. 2-4 at 23, 28, 74–78. The Nevada Supreme Court rejected those claims, ruling:

>        Moore complains that counsel should have challenged the
>        constitutionality of Nevada's death penalty scheme on the grounds that it …
>        (2) is cruel and unusual…. We have resoundingly rejected similar
>        challenges…. However, he has identified no constitutional proscription
>        against such a scheme and therefore has failed to show that counsel's
>        omission was deficient.
>
>                          *    *    *
>
>        Moore contends that appellate counsel should have raised nearly all
>        of the substantive trial errors underlying his ineffective assistance-of-trial-
>        counsel claims discussed above. We disagree. All of the underlying trial
>        errors would have been reviewed for plain error and because he failed to
>        demonstrate ineffective assistance of trial counsel, appellate counsel's
>        performance cannot be said to have been deficient for failing to raise
>        unpreserved error. Nor does it appear that any of those underlying claims
>        could be considered plain error.

---

[66] In Claim 36, Moore also claims that the death penalty, in general, is in all
circumstances unconstitutional. ECF No. 59 at 440–41. Moore asserts the same claim in
Claim 43. The Court addresses the claim in the discussion at Part III.G.43, *infra*.
[67] In Claim 36, Moore also claims that Nevada's death penalty scheme is unconstitutional
because executive clemency is, in effect, unavailable. ECF No. 59 at 441–42. Moore
asserts the same claim in Claim 44. The Court addresses the claim in the discussion at
Part III.G.44., *infra*.
[68] In Claim 36, Moore also claims that Nevada's death penalty scheme operates in an
arbitrary and capricious manner and does not narrow the class of persons eligible for the
death penalty. ECF No. 59 at 439–40, 442. Moore asserts the same claim in Claim 45.
The Court addresses the claim at Part III.G.45, *infra*.

ECF No. 18 at 14–16. Moore does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of counsel in Claim 36.

Moore does not show that he ever properly raised in state court the substantive claim that lethal injection as a method of execution is unconstitutional in all circumstances, or the substantive claim that lethal injection as it would be carried out in Nevada is unconstitutional. Those substantive claims are procedurally defaulted, and Moore does not make any showing to overcome the procedural defaults. The Court denies Moore relief on those claims on the ground that they are procedurally defaulted.

37.    Claim 37

In Claim 37, Moore claims that his federal constitutional rights were violated because his "capital trial, sentencing, and review on direct appeal were conducted before state judicial officers whose tenure in office was not dependent on good behavior but was rather dependent on popular election, and who failed to conduct fair and adequate appellate review." ECF No. 59 at 443; *see also*, *generally, id*. at 443–48. Moore also claims that his trial and appellate counsel were ineffective for failing to assert the substantive claims in Claim 37. *Id*. at 445, 448; *see also id*. at 64, 414.

Without distinguishing among the substantive claims and the claims of ineffective assistance of counsel in Claim 37, Moore claims he exhausted Claim 37 on his second appeal in his first state habeas action. *Id*. at 41. There, Moore asserted the claim of ineffective assistance of appellate counsel in Claim 37. *See* ECF No. 2-4 at 28, 89–90. The Nevada Supreme Court rejected that claim, ruling:

> Moore argues that appellate counsel should have argued that his conviction and death sentence are unconstitutional due to unfair tribunals of elected judges. Once again, the bulk of his argument focuses on Judge Mosley, who presided over the original trial and second penalty hearing. Claims related to those proceedings are irrelevant here. To the extent he raises a general claim of bias regarding elected judges who preside over capital proceedings, we have rejected similar claims, *McConnell v. State*,

125 Nev. 243, 256, 212 P.3d 307, 316 (2009). Therefore, appellate counsel's omission was not objectively unreasonable.

ECF No. 18 at 17. Moore does not show the Nevada Supreme Court's ruling on the ineffective assistance of appellate counsel claim in Claim 37 to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claim of ineffective assistance of appellate counsel in Claim 37.

Moore does not show that he ever properly raised in state court the substantive claim or the claim of ineffective assistance of trial counsel in Claim 37. Those claims are procedurally defaulted, and Moore does not make any showing to overcome the procedural defaults. The Court denies Moore relief on those claims on the ground that they are procedurally defaulted.

### 38. Claim 38

In Claim 38, Moore claims that his federal constitutional rights were violated "due to the admission of gruesome, prejudicial and inflammatory photographs. ECF No. 59 at 449. In Claim 35, Moore asserts—by reference to Claim 38, and without any explanation or argument—a claim that his appellate counsel was ineffective for failing to assert the claim in Claim 38. *Id*. at 414.

The photographic evidence Moore points to is that at ECF No. 21-5 at 1–45. *See* ECF No. 59 at 449; *see also* ECF No. 166 at 196 (In his reply, Moore refers to the statement of Claim 38 in his second amended petition, and states: "… Moore cited to the admitted photos in question."). Those exhibits are all dated June 22, 1995. *See* ECF No. 21-5 at 1–45. Therefore, Claim 38 apparently concerns the admission of those photos into evidence at Moore's third penalty hearing, which was in June 1995.

Moore asserts that he exhausted in state court the claims in Claim 38 in his 1987 brief, that is, his opening brief on his first direct appeal. ECF No. 59 at 41. But that cannot

be; it was not until 1995, at his third penalty hearing, when the photographic evidence at issue in Claim 38 was admitted. *See* ECF No. 21-5 at 1–45.[69]

Moore does not show that he ever properly raised in state court either the substantive claim in Claim 38 or the claim of ineffective assistance of appellate counsel relative to Claim 38. Both are procedurally defaulted. Moore does not make any showing to overcome the procedural defaults. The Court denies Moore relief on the claims in Claim 38 on the grounds that both are procedurally defaulted.

### 39.    Claim 39

In Claim 39, Moore claims that his federal constitutional rights were violated because he "was [not] tried by an impartial tribunal." ECF No. 59 at 450; *see also*, *generally*, *id*. at 450–52. He claims that both Judge Mosley, who presided over the guilt phase of his trial, and Judge Guy, who presided over his third penalty hearing, were biased against him. *Id*. at 450–52. In Claim 1, referring to Claim 39, and without providing any further explanation, Moore claims that his trial counsel was ineffective for failing to object to "a biased judge." *Id*. at 64–65. And, in Claim 35, referring to Claim 39, and without providing any further explanation, Moore claims that his appellate counsel was ineffective or failing to challenge "biased judges." *Id*. at 414.

Without distinguishing among the substantive claims and the claims of ineffective assistance of counsel in Claim 39, Moore alleges that he exhausted Claim 39 in his 2010 brief, that is, on the second appeal in his first state habeas action. *Id*. at 41. On that appeal, Moore asserted the claim of ineffective assistance of appellate counsel. *See* ECF No. 2-4 at 28, 89–90. The Nevada Supreme Court rejected that claim, ruling:

> Moore argues that appellate counsel should have argued that his conviction and death sentence are unconstitutional due to the lack of a fair tribunal. Moore's complaints about the fairness of the tribunal are focused on two judges—Judge Donald Mosley, who presided over the original trial and the second penalty hearing, and Judge Addeliar Guy, who presided

---

[69] In his 1987 brief, Moore asserted a claim that the admission of photographic evidence at his 1985 trial was "improper" under state law; he did not there claim that the admission of any photographic evidence violated his federal constitutional rights. *See* ECF No. 16-2 at 37–38.

over the third penalty hearing. The bulk of Moore's argument is aimed at Judge Mosley. As this appeal concerns counsel's performance related to the third penalty hearing, Judge Mosley's actions are irrelevant, and Moore fails to adequately explain how Judge Mosley's actions affected the third penalty hearing. As to Judge Guy, Moore's claims of bias are either unsupported by the record or do not show bias such that appellate counsel should have challenged Judge Guy's impartiality.

ECF No. 18 at 16–17.

Regarding his appellate counsel not asserting a claim regarding alleged bias of Judge Guy, Moore does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on that claim of ineffective assistance of appellate counsel in Claim 39.

Regarding appellate counsel not asserting a claim regarding alleged bias of Judge Mosely, the Nevada Supreme Court's ruling was that Moore did not properly present that claim in his 2010 brief. *See* ECF No. 18 at 16–17. That part of Claim 39 is procedurally defaulted, and Moore does not make a showing to overcome the procedural default. Therefore, applying the procedural default doctrine, the Court denies Moore relief on his claim that his appellate counsel was ineffective for not asserting a claim that Judge Mosely was biased.

Moore does not show that he ever properly presented in state court the substantive claims in Claim 39, or the claim that his trial counsel was ineffective for not raising the substantive claims in Claim 39. Those claims are procedurally defaulted, and Moore does not make a showing to overcome the procedural defaults. Therefore, applying the procedural default doctrine, the Court denies Moore relief on the substantive claims in Claim 39 and the claim that his trial counsel was ineffective for not raising the substantive claims in Claim 39.

40.    Claim 40

In Claim 40, Moore claims that his federal constitutional rights were violated because of "the trial court's failure to change the venue of his trial." ECF No. 59 at 453;

see also, generally, id. at 453–64. Moore claims that venue should have been changed for both the guilt phase of his trial and his third penalty hearing. Id. at 453–64. Moore acknowledges that, before the guilt phase of his trial, his trial counsel joined his co-defendants' motion to change venue, but nevertheless claims counsel was ineffective "for failing to press for a change of venue," for failing to "articulate Moore's individual interests," and for failing to "join in the renewed motion during voir dire." Id. at 460. Regarding venue at the third penalty hearing, Moore claims that his trial counsel was ineffective for not "press[ing] for a change of venue following the penalty phase voir dire." Id. at 464. In Claim 35, referring to Claim 40, and without providing any further explanation, Moore claims that his appellate counsel was ineffective or failing to challenge venue. Id. at 414.

Without distinguishing among the substantive claims and the claims of ineffective assistance of counsel in Claim 40, Moore alleges that he exhausted Claim 40 in his 2006 brief, that is, on the first appeal in his first state habeas action. Id. at 41.

In his 2006 brief, Moore asserted the claim that, at the guilt phase of his trial, his trial counsel was ineffective for not "articulat[ing] Moore's individual interests" in a change of venue, for not "join[ing] in the renewed motion during voir dire," and for not "press[ing] for a change of venue following voir dire." ECF No. 17-2 at 4. On that appeal, Moore also asserted the claim that his appellate counsel was ineffective for not asserting a claim regarding venue at the guilt phase of the trial. ECF No. 17-3 at 18. The Nevada Supreme Court denied relief. On the claim of ineffective assistance of trial counsel, the Nevada Supreme Court ruled that "even if counsel's performance was deficient … Moore failed to demonstrate that the result of his trial would have been different." ECF No. 17-7 at 10. Regarding Moore's claim of ineffective assistance of appellate counsel, the Nevada Supreme Court ruled that Moore "failed to demonstrate … a reasonable probability of success." Id. at 10 n. 15 (citing Kirksey, 112 Nev. at 998, 923 P.2d at 1114). Moore does not show the Nevada Supreme Court's rulings to be contrary to, or an unreasonable application of, Strickland or any other Supreme Court precedent, or based on an

unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of trial and appellate counsel relative to venue at the guilt phase of the trial in Claim 40.

In a footnote in his 2006 brief, Moore asserted the substantive claim in Claim 40 relative to the guilt phase of his trial. ECF No. 17-2 at 4 n. 11. But the Nevada Supreme Court ruled that Moore failed to show cause and prejudice for failing to assert direct-appeal claims earlier. ECF No. 17-7 at 19–20. Therefore, the Nevada Supreme Court ruled that claim procedurally barred on the first appeal in Moore's first state habeas action.

Moore does not show that he ever properly raised in state court the Claim 40 substantive claims or claims of ineffective assistance of counsel relative to his third penalty hearing. Those claims are procedurally defaulted, and Moore does not make a showing to overcome the procedural defaults; the Court denies those claims on that ground.

### 41.    Claim 41

In Claim 41, Moore claims that his federal constitutional rights were violated, in both the guilt and penalty phases of his trial, "due to unrecorded bench conferences and his absence during critical stages in the proceedings." ECF No. 59 at 465; *see also, generally, id*. at 465–70. Moore also claims that his trial counsel were ineffective for failing to object to the unrecorded bench conferences. *Id*. at 470; *see also id*. at 64–65, 183–84. And, in Claim 35, referring to Claim 41, Moore claims that his appellate counsel was ineffective for failing "to raise an issue concerning the district court's failure to permit Moore's presence at bench conferences and meetings in chambers, and the district court's failure to record these same proceedings." *Id*. at 412.

Without distinguishing among the substantive claims and the claims of ineffective assistance of counsel in Claim 41, Moore alleges that he exhausted Claim 41 in his 2006 brief, that is, on the first appeal in his first state habeas action. *Id*. at 42.

In his 2006 brief, Moore asserted the claim that, at the guilt phase of his trial, his trial counsel was ineffective for not objecting to Moore's absence from proceedings held at the bench and in chambers, and for failing to object to unrecorded bench conferences and meetings in chambers. ECF No. 17-2 at 27–29. On that appeal, Moore also asserted the claim that his appellate counsel was ineffective for failing to raise an issue concerning the trial court's failure to permit Moore's presence at bench conferences and meetings in chambers and failure to record those proceedings. ECF No. 17-3 at 20. The Nevada Supreme Court denied relief. On the claim of ineffective assistance of trial counsel, the Nevada Supreme Court ruled:

> … Moore asserted that the district court erred in denying his claim that counsel was ineffective for not securing a complete record of bench conferences and chamber hearings and for failing to ensure his presence at all proceedings, specifically several pretrial chamber conferences. Moore further complained that because several bench conferences and chambers hearings were held out of public hearing and view, he was denied a public trial. A capital defendant does not have an absolute right to have trial proceedings recorded [Footnote: *Archanian v. State*, 122 Nev. [1019, 1031–34], 145 P.3d 1008, 1018–19 (2006) (quoting *Daniel v. State*, 119 Nev. 498, 507, 78 P.3d 809, 897 (2003))] or an unlimited right to be present at every trial proceeding. [Footnote: *Gallegos v. State*, 117 Nev. 348, 367, 23 P.3d 227, 240 (2001)] Here, Moore failed to adequately explain how he was prejudiced by the omission of any recording from a bench conference or chamber hearing or his absence from any pretrial hearing. Further, Moore failed to adequately explain how conducting several bench conferences and chambers hearings out of the public view denied him his right to a public trial. Therefore, we conclude that the district court did not err in denying these claims. [Footnote: To the extent Moore contends that his appellate counsel were ineffective for not raising these matters on direct appeal, we conclude that he failed to demonstrate that they had a reasonable probability of success. *See Kirksey*, 112 Nev. at 998, 923 P.2d at 1114.]

ECF No. 17-7 at 14–15. Moore does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of trial and appellate counsel relative to the guilt phase of the trial in Claim 41.

In a footnote in his 2006 brief, Moore asserted the substantive claim in Claim 41 relative to the guilt phase of his trial. ECF No. 17-2 at 17 n. 32. But the Nevada Supreme

Court ruled that Moore failed to show cause and prejudice for failing to assert direct-appeal claims earlier. ECF No. 17-7 at 19–20. Therefore, the Nevada Supreme Court ruled the claim procedurally barred.

Moore does not show that he ever properly raised in state court the Claim 41 substantive claims or claims of ineffective assistance of counsel relative to his third penalty hearing. Those claims are procedurally defaulted and Moore does not make a showing to overcome the procedural defaults; the Court denies those claims on that ground.

42.    Claim 42

In Claim 42, Moore claims that his federal constitutional rights were violated because, in the guilt phase of his trial, he was "convicted by an all-White jury from which Black jurors were systematically excluded and unrepresented." ECF No. 59 at 471; *see also*, *generally, id*. at 471–73. The factual basis for his claim, in its entirety—and without citation to any evidentiary support—is as follows:

> Clark County has systematically excluded and under-represented Black jurors, especially in criminal cases. According to the 1990 Census, Black Americans—a distinctive group for purposes of constitutional analysis—make up approximately 8.3 percent of the population in Clark County, Nevada. Thus, a representative jury would be expected to contain a similar proportion of Black jurors. But Moore's guilt-phase jury was 100% White, and there were no Black jurors present in the venire. A prima facie case of systematic under-representation is established because, by any standard, an all-White jury and an all-White venire in a community with 8.3 percent Black Americans cannot be said to be reasonably representative of the community as a whole.

*Id*. at 471–72. Moore claims that his trial counsel and appellate counsel were ineffective for failing to investigate and raise this issue. *Id*. at 472; *see also id*. at 189, 414.

Moore alleges that he exhausted Claim 42 in his 2010 brief—on the second appeal in his first state habeas action. *Id*. at 42. But, as with most of his allegations regarding exhaustion of his claims, Moore does not distinguish among the substantive claim, the claim of ineffective assistance of trial counsel, and the claim of ineffective assistance of appellate counsel. *See id*.

On the second appeal in his first state habeas action, Moore asserted the claims of ineffective trial and appellate counsel in Claim 42. ECF No. 2-4 at 36–39. The Nevada Supreme Court rejected the claim of ineffective assistance of trial counsel, ruling:

> … Moore argues that counsel should have challenged the jury panel because it was not selected from a fair cross section of the community as evidenced by the fact that he was sentenced by an all-white jury from which African Americans were systematically excluded. His claim lacks citations, supporting documents, or relevant legal authority and is supported only by general statements regarding Clark County's racial makeup and the jury pool selection process. Moore's bare allegation is wholly insufficient to support his ineffective-assistance claim.

ECF No. 18 at 8. The Nevada Supreme Court rejected the claim of ineffective assistance of appellate counsel on the same grounds. *See id*. at 15–16. Moore does not show those rulings to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of counsel in Claim 42.

Moore does not show that he ever properly raised in state court the substantive claim in Claim 42. That claim is procedurally defaulted, and Moore does not make a showing to overcome the procedural default. The Court denies the substantive claim in Claim 42 as procedurally defaulted.

### 43.    Claim 43

In Claim 43, Moore claims that his conviction and sentence are invalid under the federal constitution "because the death penalty is cruel and unusual punishment in all circumstances." ECF No. 59 at 474; *see also*, *generally, id*. at 474–76. Moore claims that his trial counsel and appellate counsel were ineffective for failing to raise this issue. *Id*. at 475–76; *see also id*. at 189, 414.

As an initial matter, all the claims in Claim 43 are foreclosed by Supreme Court precedent holding that capital punishment is not *per se* unconstitutional. *See*, *e.g.*, *Glossip v. Gross*, 576 US 863, 880–81 (2015); *Baze v. Rees*, 553 U.S. 35, 47 (2008); *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) ("We hold that the death penalty is not a

form of punishment that may never be imposed, regardless of the circumstances of the offense, regardless of the character of the offender, and regardless of the procedure followed in reaching the decision to impose it."). Moore recognizes as much, but "asserts and preserves the argument that the death penalty is in all circumstances cruel and unusual punishment under the Eighth Amendment." ECF No. 59 at 474.

Without distinguishing among the three distinct claims in Claim 43, Moore alleges that he exhausted Claim 43 in his 2010 brief, that is, the second appeal in his first state habeas action. *Id*. at 42. On that appeal, Moore asserted the claims of ineffective trial and appellate counsel in Claim 43. ECF No. 2-4 at 77–78. The Nevada Supreme Court rejected those claims. ECF No. 18 at 14, 15–16. Moore does not show those rulings to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of trial and appellate counsel in Claim 43.

Moore does not show that he ever properly raised in state court the substantive claim in Claim 43. That claim is procedurally defaulted, and Moore does not make a showing to overcome the procedural default. The Court denies the substantive claim in Claim 43 as procedurally defaulted.

44.    Claim 44

In Claim 44, Moore claims his conviction and sentence are invalid under the federal constitution "because Nevada effectively has no mechanism to provide for clemency in capital cases." ECF No. 59 at 477; *see also, generally, id*. at 477–79. Moore claims that Nevada's clemency process does not provide constitutionally required due process of law, and that, as a practical matter, Nevada does not grant clemency to individuals sentenced to death. *Id*. at 477–79. In Claim 1, by reference, and without any argument or explanation, Moore asserts a claim that his trial counsel was ineffective for not asserting this claim. *Id*. at 64–65. And in Claim 35, by reference, and without any

argument or explanation, Moore asserts a claim that his appellate counsel was ineffective for not asserting this claim on appeal. *Id*. at 414.

Without distinguishing among the three distinct claims in Claim 43, Moore claims that he exhausted Claim 44 on his second appeal in his first state habeas action. ECF No. 59 at 42. On that appeal, Moore asserted the claims of ineffective assistance of counsel. ECF No. 2-4 at 84–86. The Nevada Supreme Court rejected those claims:

> Moore complains that counsel should have challenged Nevada's clemency procedures because they violate due process and clemency does not exist in Nevada as a practical matter because it is rarely granted. As this court has observed, a defendant has no due process right to clemency, *Niergarth v. State*, 105 Nev. 26, 28, 768 P.2d 882, 883 (1989); rather, clemency is merely an act of grace and not a matter of constitutional dimension, *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 280–81 (1998). Because Moore failed to articulate a legitimate basis upon which counsel reasonably could have challenged Nevada's clemency procedures, his ineffective-assistance claim fails.

ECF No. 18 at 14–15; *see also id*. at 15–16. Moore does not show this ruling to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of trial and appellate counsel relative to Claim 44.

Moore does not show that he ever properly raised in state court the substantive claim in Claim 44. That claim is procedurally defaulted, and Moore does not make a showing to overcome the procedural default. The Court denies the substantive claim in Claim 44 as procedurally defaulted.

### 45.    Claim 45

In Claim 45, Moore claims his conviction and sentence are invalid under the federal constitution "because the Nevada capital punishment system operates in an arbitrary and capricious manner." ECF No. 59 at 480; *see also*, *generally*, *id*. at 480–83. Moore claims that Nevada's capital punishment system does not adequately narrow the class of persons convicted of murder eligible for the death penalty. *Id*. at 480–82. Moore claims the alleged arbitrary nature of Nevada's capital punishment system is exacerbated

by "plea bargaining practices," "untrammeled power of the sentencer," Nevada's evidentiary rules, "under-funding of trial counsel," "lack of a fair and adequate appellate review process," and "the pervasive effects of race." *Id*. at 481–83. Moore claims that his trial and appellate counsel were ineffective for failing to assert this claim. *Id*. at 483; *see also id*. at 64, 189, 414.

Without distinguishing among the subclaims in Claim 45, Moore alleges that he exhausted Claim 45 in his 2010 brief, on the second appeal in his first state habeas action. *Id*. at 42. In that brief, Moore asserted the claims of ineffective assistance of counsel. ECF No. 2-4 at 70–74. The Nevada Supreme Court rejected those claims. ECF No. 18 at 14, 15–16. Moore does not show that court's ruling to be contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the claims of ineffective assistance of trial and appellate counsel relative to Claim 45.

Moore does not show that he ever properly raised in state court the substantive claim in Claim 45. That claim is procedurally defaulted, and Moore does not make a showing to overcome the procedural default. The Court denies the substantive claim in Claim 45 as procedurally defaulted.

46.    Claim 46

In Claim 46, Moore claims that his federal constitutional rights have been violated as a result of the "multiplicity of proceedings" in his case, and the time that has elapsed—and that elapsed before his third penalty hearing—after his conviction. ECF No. 59 at 484–89. In Claim 1, by reference to Claim 46, and without any argument or explanation, Moore claims that his trial counsel was ineffective for failing to assert—or properly assert—an objection to the multiplicity of proceedings in his case. *Id*. at 64–65. Similarly, by reference to Claim 46, and without any argument or explanation, Moore claims that his appellate counsel was ineffective for failing to raise a challenge to the multiplicity of proceedings in his case. *Id*. at 414.

Without distinguishing among the three distinct claims in Claim 45, Moore alleges that he exhausted Claim 45 in his 1995 brief, which was his opening brief on his direct appeal following the third penalty hearing. *Id*. at 42. In that brief, Moore claimed he was denied a fair penalty hearing because of the time—about ten years—that passed between his first trial and his third penalty hearing. ECF No. 16-10 at 43–47. The Nevada Supreme Court rejected the claim, ruling that it was "without merit." *Flanagan IV*, 112 Nev. at 1423, 930 P.2d at 700. The Court applies the AEDPA standard here. *See Ceja v. Stewart*, 134 F.3d 1368, 1369 (9th Cir. 1998) (ruling such a claim subject to AEDPA). Moore does not point to any Supreme Court precedent holding a delay between conviction and sentencing caused by proceedings on appeal to render a capital sentencing proceeding unfair in violation of the federal constitution. Moore does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of any Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Applying the AEDPA standard, the Court denies relief on the part of the substantive claim in Claim 46 asserted on his direct appeal following his third penalty hearing. With respect to the remainder of the substantive claim—based on the further time that has passed from the third penalty to the present—Moore points to no legal authority supporting his claim. *See Creech v. Richardson*, 59 F.4th 372, 394 (9th Cir. 2023) ("… [W]e note that neither the Supreme Court nor the Ninth Circuit has ever held that the duration of a death row inmate's confinement prior to execution amounts to cruel and unusual punishment. *Smith v. Mahoney*, 611 F.3d 978, 998 (9th Cir. 2010) (collecting cases)."). The Court denies relief on the substantive claim in Claim 46.

Turning to Moore's ineffective assistance of counsel claims relative to Claim 46, Moore does not show that he ever properly asserted those claims in state court. Both claims are procedurally defaulted—and both are wholly insubstantial at any rate. Moore does not make a showing to overcome the procedural defaults. The claims of ineffective assistance of trial and appellate counsel relative to Claim 46 are denied as procedurally defaulted.

47.   Claim 47

Moore's Claim 17 is a cumulative error claim. Moore claims that his federal constitutional rights were violated as a result of the cumulative effect of the errors he alleges. ECF No. 59 at 490–97. Specifically, in Claim 47, Moore points to the following claims of federal constitutional error, which were resolved by the Nevada Supreme Court, wholly or in part, on harmless error grounds, and which are, in turn, resolved in this order, wholly or in part, on harmless error grounds:

Guilt Phase

-   Claim 34 - ineffective assistance of trial counsel for failing to object to jury instructions on aiding and abetting
-   Claim 13 - admission of evidence of occult activities, and the prosecution's use of that evidence in closing arguments
-   Claim 24 - jury instructions defining first-degree murder (the *Kazalyn* instruction)

Penalty Phase

-   Claim 23 – invalid aggravators

*See id.*

The Court considers cumulatively the effect of these errors, and determines that, whether considered singly or cumulatively, the errors were harmless, as discussed in the discussions of the particular claims. The Court denies Moore relief on Claim 47.

48.   Claim 48

In Claim 48, Moore claims that his federal constitutional rights were violated because the trial court "failed to instruct the jury that robbery that occurred as an afterthought cannot support felony-murder." ECF No. 59 at 498; *see also*, *generally*, *id.* at 498–99. In the ruling on Respondents' motion to dismiss, the Court dismissed Claim 48 as barred by the statute of limitations. ECF No. 139 at 13–14, 24.

49.   Claim 49

In Claim 49, Moore claims that his federal constitutional rights were violated because his "penalty phase counsel suffered from a conflict of interest." ECF No. 59 at

500; *see also, generally*, *id*. at 500–02. Moore claims that his counsel in his second and

third penalty hearings, David Schieck, represented Moore's mother, Lindy Moore, "on at

least three prior occasions while Moore's litigation was ongoing." *Id*. at 501; *see also,*

*generally*, *id*. at 501–02. Specifically, Moore claims that Schieck represented Lindy Moore

in "divorce litigation, litigation over failure to pay her bills, and litigation surrounding her

home." *Id*. at 501. Moore claims that as a result of Schieck's alleged dual representation,

and alleged conflict of interest, he failed to conduct an investigation of Lindy Moore and

Moore's social history. *Id*. at 500–02.

Moore acknowledges that the only state court proceeding in which he raised this

issue was his procedurally barred second state habeas action. *Id*. at 42. Claim 49 is

procedurally defaulted, and Moore makes no showing to overcome the procedural

default. The claim is denied on procedural default grounds.

50.    Claim 50

In Claim 50, Moore claims that his federal constitutional rights were violated

"because the State failed to provide notice that it was proceeding with a willful,

premeditated, and deliberate theory of first-degree murder." ECF No. 59 at 503; *see also*,

*generally*, *id*. at 503–07. In the ruling on Respondents' motion to dismiss, the Court

dismissed Claim 48 as barred by the statute of limitations. ECF No. 139 at 14–15, 24.

51.    Claim 51

In Claim 51, Moore claims that his federal constitutional rights were violated

"because the court incorrectly instructed the jurors about coconspirator liability." ECF No.

59 at 508; *see also*, *generally*, *id*. at 508–09. And Moore claims: "Trial counsel were

deficient in failing to object to this instruction; appellate counsel was deficient in failing to

raise this issue on appeal." *Id*. at 509.

Moore appears to concede that he has never asserted any of the three claims in

Claim 51 in state court. *See id*. at 42; *see also* ECF No. 166 at 219. All three claims are

procedurally defaulted. With respect to the substantive claim and the claim of ineffective

assistance of appellate counsel, Moore makes no argument that he can overcome the procedural default. *See* ECF No. 166 at 219.

Apparently with respect to the claim of ineffective assistance of trial counsel—that's the only claim the argument could apply to—Moore argues that he can overcome the procedural default under *Martinez*. *Id*. His entire argument in this regard is as follows:

> However, post-conviction counsel was ineffective in failing to raise this claim, and because it is meritorious the result of Moore's proceedings would have been different had it been raised. *See* § B(2) below.

*Id*.[70] Moore makes no argument specific to the claim of ineffective assistance of trial counsel in Claim 51. Both the argument that trial counsel was ineffective for not raising the substantive claim in Claim 51 and the argument that post-conviction counsel was ineffective for not asserting the claim of ineffective assistance of trial counsel are conclusory and insubstantial. Moore does not make a showing under *Martinez* to excuse the procedural default of the claim of ineffective assistance of trial counsel.

All the claims in Claim 51 are denied as procedurally defaulted.

52.    Claim 52

In Claim 52, Moore claims that his federal constitutional rights were violated "because, during the guilt phase, the court required defense counsel to object off the record." ECF No. 59 at 510; *see also*, *generally*, *id*. at 510–12. In the ruling on Respondents' motion to dismiss, the Court dismissed Claim 52 as barred by the statute of limitations. ECF No. 139 at 15, 24.

53.    Claim 53

In Claim 53, Moore claims that his federal constitutional rights were violated "because, during the penalty phase, the court allowed the jury to consider and find the pecuniary gain aggravating circumstance." ECF No. 59 at 513; *see also*, *generally*, *id*. at 513–14.

---

[70] Section B(2) is a general discussion of the holding of *Martinez*. *See* ECF No. 166 at 228–33. There is no argument there specific to any of the claims in Claim 51.

This claim is both barred by the statute of limitations and procedurally defaulted. *See* ECF No. 139 at 15–16 (on motion to dismiss, the Court ruled the claim untimely under the statute of limitations, but reserved the question whether Moore can overcome the statute of limitations bar based on a showing of actual innocence of the death penalty); *see also* ECF No. 59 at 42 (Moore does not allege that he exhausted the claim in state court); ECF No. 166 at 220 (Moore, in his reply, conceding that claim was not adjudicated on its merits in state court, and arguing that "procedural default does not block consideration of this claim because failure to consider it will result in a miscarriage of justice").

The Court determines that Moore does not make a showing that failure to consider Claim 53 and Claim 22 (challenging the great risk of death aggravator) would result in a miscarriage of justice. Moore has never made a substantial argument, in either state or federal court, to show that either aggravator was invalid as to him as a matter of federal law. His arguments as to both have always been matters of state law. Moreover, with respect to his arguments in Claim 53, challenging the pecuniary gain aggravating circumstance under state law, citing *Hildago v. Eighth Judicial Dist. Court*, 124 Nev. 330, 184 P.3d 369 (2008), and *Lane v. State*, 114 Nev. 299, 956 P.2d 88 (1998), the Court finds those arguments to be without merit. The Court determines that Moore does not show that failure to consider Claims 53 and 22 on their merits would result in a miscarriage of justice.

Claim 53 is denied as barred by the statute of limitations and procedurally defaulted.

IV.    Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

Applying the standard articulated in *Slack*, the Court finds that a certificate of appealability is warranted with respect to the following issues:

- Whether the statute of limitations bar of Nev. Rev. Stat. § 34.726, as applied by the Nevada Supreme Court to bar claims in Moore's second state habeas action, was adequate to support application of the procedural default doctrine to those barred claims in this case.

- Whether new evidence—evidence Moore did not present in state court until his second state habeas action—is admissible in support of Claims 1a, 1b, 1c, 2b and 15.

- Whether habeas corpus relief is warranted on any part of Claim 13.

Beyond that, the Court denies Moore a certificate of appealability.

V.    CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 59) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to Conduct Discovery (ECF No. 168) and Motion for Evidentiary Hearing (ECF No. 170) are **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is granted a certificate of appealability with respect to the following issues:

- Whether the statute of limitations bar of Nev. Rev. Stat. § 34.726, as applied by the Nevada Supreme Court to bar claims in Moore's second state habeas action, was adequate to support application of the procedural default doctrine to those barred claims in this case.

- Whether new evidence—evidence Moore did not present in state court until his second state habeas action—is admissible in support of Claims 1a, 1b, 1c, 2b and 15.

- Whether habeas corpus relief is warranted on any part of Claim 13.

With respect to all other issues, the Court denies Petitioner a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d), Jeremy Bean is substituted for William Gittere as the respondent warden. The Clerk of the Court is directed to update the docket to reflect this change.


DATED August 25, 2025.


JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

127